MICHAEL LI-MING WONG, SBN 194130
    mwong@gibsondunn.com
PRIYANKA RAJAGOPALAN, SBN 278504
    prajagopalan@gibsondunn.com
JOSEPH TARTAKOVSKY, SBN 282223
    jtartakovsky@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

PERLETTE MICHÈLE JURA, SBN 242332
    pjura@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

*Attorneys for Defendant UBER TECHNOLOGIES, INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE,<br><br>                    Plaintiff,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>                    Defendant. | CASE NO. 3:15-cv-00424 (SI)<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing<br>Date:   July 10, 2015<br>Time:   9:00 a.m.<br>Place:  Courtroom 10, 19th Floor<br>            Hon. Susan Illston |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**DEFENDANT HEREBY GIVES NOTICE** that on Friday, July 10, 2015, at 9:00 a.m., or as soon thereafter as the Court may hear the matter, in the courtroom of the Honorable Susan Illston, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Uber Technologies, Inc. will, and hereby does, move this Court for an order under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing all of the claims and causes of action contained in the Complaint filed in this action by Plaintiff Jane Doe.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Michael Li-Ming Wong, the records and files in this action, any matters of which judicial notice may be taken, and on such additional papers and arguments as may be presented at or before the hearing of this matter.

Dated: April 6, 2015

MICHAEL LI-MING WONG
PERLETTE MICHÈLE JURA
PRIYANKA RAJAGOPALAN
JOSEPH TARTAKOVSKY
GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Michael Li-Ming Wong
     Michael Li-Ming Wong

*Attorneys for Defendant UBER TECHNOLOGIES, INC.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ISSUES TO BE DECIDED ................................................................................................ 2

FACTUAL BACKGROUND ............................................................................................. 2

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.      The Court Should Dismiss the Complaint Because Plaintiff Has Sued the Wrong Party ........ 5

II.     The Court Should Dismiss The Complaint Because It Seeks Improper Extraterritorial
        Application of State and Federal Law.......................................................................... 6

        A.      The Court Should Decline the Complaint's Invitation to Project Federal and
                California Law to Conduct Occurring Entirely Outside of U.S. Borders .................... 6

        B.      The Court Should Decline the Complaint's Invitation to Issue an Unworkable
                Injunction of Global Scope that Tramples U.S. and Foreign Law.............................. 9

III.    The Court Should Dismiss The Complaint's Employment-Related Claims Because
        Uber U.S. Is Not Legally Responsible for Driver Yadav's Bad Acts.................................... 12

        A.      The Complaint Does Not Allege Facts Sufficient to Demonstrate the Existence
                of an Employer-Employee Relationship ........................................................... 12

        B.      Even If Yadav Were Mischaracterized as an Employee, the Complaint's Third
                Through Sixth Causes of Action for Vicarious Tort Liability Fail for the
                Independent Reason that Uber U.S. Cannot Be Liable for Torts Outside the
                Scope of Yadav's Duty .............................................................................. 16

        C.      The Complaint's Negligent Hiring, Supervising, and Retention Claim Fails for
                the Additional Reason that Uber U.S. is Not Adequately Alleged to Have
                Knowledge that Yadav Could Not Be Trusted to Act Properly.................................. 18

        D.      Uber U.S. is Not a "Common Carrier" ............................................................ 19

IV.     The Court Should Dismiss the Complaint's Claims of Fraud and Negligence Because
        Its Allegations are Insufficient As a Matter of Law............................................................ 21

        A.      The Complaint Fails to Sufficiently Allege Fraud............................................... 21

        B.      The Complaint's Claims of Negligent Infliction of Emotional Distress and
                General Negligence Fail as a Matter of Law ..................................................... 22

V.      Amendment Would Be Futile ..................................................................................... 24

CONCLUSION ...................................................................................................................... 25

1

# TABLE OF AUTHORITIES

Page(s)

## Cases

*7735 Hollywood Blvd. Venture v. Superior Court,*
116 Cal. App. 3d 901 (1981) ........................................................................ 24

*Allstate Ins. Co. v. Hague,*
449 U.S. 302 (1981) ...................................................................................... 6

*Alma W. v. Oakland Unified Sch. Dist.,*
123 Cal. App. 3d 133 (1981) ........................................................ 16, 17, 18, 23

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................... 4

*BMW of N. Am. v. Gore,*
517 U.S. 559 (1996) ...................................................................................... 8

*Cahill v. Liberty Mut. Ins. Co.,*
80 F.3d 336 (9th Cir. 1996) .......................................................................... 24

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ...................................................................................... 10

*Castagnola v. Hewlett-Packard Co.,*
11-cv-05772-JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012) ................ 7

*City & Cnty. of San Francisco v. Superior Court (Colbert),*
31 Cal. App. 4th 45 (1994) ........................................................................... 20

*City of L.A. v. Lyons,*
461 U.S. 95 (1983) ........................................................................................ 9

*Constance B. v. California,*
178 Cal. App. 3d 200 (1986) ........................................................................ 24

*Cromwell v. L.A. Ry. Corp.,*
102 Cal. App. 499 (1929) ............................................................................. 19

*Cruz v. Dollar Tree Stores, Inc.,*
07-cv-2050, 2007 WL 2729214 (N.D. Cal. Sept. 18, 2007) ........................ 13

*Daimler AG v. Bauman,*
134 S. Ct. 746 (2014) .................................................................................... 5

*Daniels-Hall v. Nat'l Educ. Ass'n,*
629 F.3d 992 (9th Cir. 2010) ........................................................................ 4

*Dayton v. Yellow Cab Co. of S.F.,*
85 Cal. App. 2d 740 (1948) .......................................................................... 19

*Doe 1 v. City of Murrieta,*
102 Cal. App. 4th 899 (2002) ....................................................................... 17, 18

*Doe I v. Wal-Mart Stores, Inc.*,
  572 F.3d 677 (9th Cir. 2009)............................................................................. 13

*Duste v. Chevron Prods. Co.*,
  738 F. Supp. 2d 1027 (N.D. Cal. 2010)............................................................. 23

*Edgar v. MITE Corp.*,
  457 U.S. 624 (1982)............................................................................................ 6

*Elijahjuan v. Superior Court*,
  210 Cal. App. 4th 15 (2012) ........................................................................ 14, 15

*Evan F. v. Hughson United Methodist Church*,
  8 Cal. App. 4th 828 (1992) .......................................................................... 13, 23

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
  542 U.S. 155 (2004)............................................................................................ 6

*Farmers Ins. Grp. v. Cnty. of Santa Clara*,
  11 Cal. 4th 992 (1995) ................................................................................. 16, 17

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011)............................................................................. 4

*Federico v. Superior Court*,
  59 Cal. App. 4th 1207 (1997) ...................................................................... 13, 19

*Gu v. BMW of N. Am., LLC*,
  132 Cal. App. 4th 195 (2005) .......................................................................... 23

*Gustafson v. BAC Home Loans Servicing, LP*,
  11-cv-915-ANX, 2012 WL 4761733 (C.D. Cal. Apr. 12, 2012) ....................... 8

*Hartford-Empire Co. v. United States*,
  323 U.S. 386 (1945)......................................................................................... 10

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
  802 F. Supp. 2d 1070 (N.D. Cal. 2011) ............................................................. 8

*In re Glenfed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994)........................................................................... 21

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
  826 F. Supp. 2d 1180 (C.D. Cal. 2011).......................................................... 22

*Jeffrey E. v. Cent. Baptist Church*,
  197 Cal. App. 3d 718 (1988)........................................................................... 17

*John R. v. Oakland Unified Sch. Dist.*,
  48 Cal. 3d 438 (1989) ......................................................................... 16, 17, 23

*Juarez v. Boy Scouts of Am., Inc.*,
  81 Cal. App. 4th 377 (2000) ..................................................................... 18, 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

*Kiobel v. Royal Dutch Petroleum Co.*,
    133 S. Ct. 1659 (2013) ................................................................................................... 6, 10

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................................................... 4

*Koire v. Metro Car Wash*,
    40 Cal. 3d 24 (2008) ................................................................................................................ 11

*Leonberger v. Wells Fargo Bank*,
    13–cv–01114–PJH, 2013 WL 3242298 (N.D. Cal. June 25, 2013) ............................................. 22

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*,
    12 Cal. 4th 291 (1995) ........................................................................................... 16, 17, 18, 23

*Little v. L.A. Ry. Corp.*,
    94 Cal. App. 303 (1928) .......................................................................................................... 19

*Lopez v. S. Cal. Rapid Transit Dist.*,
    40 Cal. 3d 780 (1985) .............................................................................................................. 20

*Maria D. v. Westec Residential Sec., Inc.*,
    85 Cal. App. 4th 125 (2000) .................................................................................................... 17

*McCollum v. Cal. Dep't of Corr. and Rehab.*,
    647 F.3d 870 (9th Cir. 2011) ................................................................................................... 10

*Meyer v. Holley*,
    537 U.S. 280 (2003) ................................................................................................................. 12

*Mobil Oil Corp. v. Linear Films, Inc.*,
    718 F. Supp. 260 (D. Del. 1989) ............................................................................................... 5

*Myers v. Trendwest Resorts, Inc.*,
    148 Cal. App. 4th 1403 (2007) ................................................................................................ 17

*Noble v. L.A. Dodgers, Inc.*,
    168 Cal. App. 3d 912 (1985) .................................................................................................... 24

*Nola M. v. Univ. of S. Cal.*,
    16 Cal. App. 4th 421 (1993) .................................................................................................... 24

*O'Connor v. Uber Techs., Inc.*,
    13-cv-3826-EMC, 2014 WL 4382880 (N.D. Cal. 2014) ...................................................... 7, 12

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................................................................... 9

*Okun v. Morton*,
    203 Cal. App. 3d 805 (1988) .................................................................................................... 21

*Orr v. Diamond*,
    07-cv-1695, 2007 WL 1959050 (E.D. La. June 28, 2007) .................................................... 5, 7

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................................ 6, 8

Gibson, Dunn &
Crutcher LLP

iv

*Phillips v. TLC Plumbing, Inc.*,
172 Cal. App. 4th 1133 (2009) ........................................................................ 18

*Reebok Int'l Ltd. v. McLaughlin*,
49 F.3d 1387 (9th Cir. 1995)........................................................................ 9, 10

*Rita M. v. Roman Catholic Archbishop*,
187 Cal. App. 3d 1453 (1986)........................................................................ 17

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
48 Cal. 3d 341 (1989) ........................................................................ 14

*Sarhank Grp. v. Oracle Corp.*,
404 F.3d 657 (2d Cir. 2005)........................................................................ 5

*Serv. Emps. Int'l Union v. Cnty. of L.A.*,
225 Cal. App. 3d 761 (1990)........................................................................ 14

*Shaffer v. Heitner*,
433 U.S. 186 (1977)........................................................................ 6

*Shwarz v. United States*,
234 F.3d 428 (9th Cir. 2000)........................................................................ 4, 24

*Sonora Diamond Corp. v. Superior Court*,
83 Cal. App. 4th 523 (2000) ........................................................................ 5

*Squaw Valley Ski Corp. v. Superior Court*,
2 Cal. App. 4th 1499 (1992) ........................................................................ 19

*Steele v. Bulova Watch Co.*,
344 U.S. 280 (1952)........................................................................ 10

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ........................................................................ 7

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009)........................................................................ 9

*United States v. Bestfoods*,
524 U.S. 51 (1998) ........................................................................ 5

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)........................................................................ 4

*Vernon v. State*,
116 Cal. App. 4th 114 (2004) ........................................................................ 14

*Vess v. Ciba–Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)........................................................................ 21, 25

*Victoria v. Superior Court*,
40 Cal. 3d 734 (1985) ........................................................................ 17

*Warter v. Boston Sec., S.A.*,
03-cv-81026, 2004 WL 691787 (S.D. Fla. Mar. 22, 2004) ........................................ 5

Gibson, Dunn &
Crutcher LLP

*White v. Cnty. of Orange*,
    166 Cal. App. 3d 566 (1985)......................................................................... 16

*Zelig v. Cnty. of Los Angeles*,
    27 Cal. 4th 1112 (2002) ............................................................................... 12

*Zepeda v. U.S. I.N.S.*,
    753 F.2d 719 (9th Cir. 1983).......................................................................... 9

### Statutes

18 PA. CONS. STAT. ANN. § 9125 ......................................................................... 11

CAL. CIV. CODE § 2168 ...................................................................................... 20

CAL. CIV. CODE § 2174 ...................................................................................... 20

CAL. CIV. CODE § 2299 ...................................................................................... 12

HAW. REV. STAT. § 378–2.5 ............................................................................... 11

KAN. STAT. ANN. § 22–4710 .............................................................................. 11

S.F. POLICE CODE, Art. 49 .................................................................................. 11

### Constitutional Provisions

U.S. CONST. amend. XIV, § 1 ...................................................................... passim

U.S. CONST. art. I, § 8 ................................................................................. passim

U.S. CONST. art. 6, cl. 2 .............................................................................. passim

U.S. CONST. art. II ...................................................................................... passim

U.S. CONST. art. III ..................................................................................... passim

### Other Authorities

Nicole C. Baldwin, *Watch Your Back(ground Checks)!*, 24 No. 3 CAL. EMP'T L. LETTER 4
    (2014) ........................................................................................................ 11

### Rules

Fed. R. Civ. P. 10(c) ........................................................................................... 4

Fed. R. Civ. P. 12(b)(6)....................................................................................... 4

Fed. R. Evid. 201 ................................................................................................ 4

Gibson, Dunn &
Crutcher LLP

1
## MEMORANDUM OF POINTS AND AUTHORITIES

2
### INTRODUCTION

3      Plaintiff Jane Doe, a citizen of India, alleges that she was the victim of a violent crime

4   perpetrated by another Indian citizen named Shiv Kumar Yadav ("Yadav") in New Delhi, India.

5   There is no question that the alleged crime is deplorable.  No woman anywhere in the world should

6   have to endure the pain and indignity associated with a sexual assault.  Nor is there any question that

7   Plaintiff should (and does) have avenues of redress.  However, the law requires all plaintiffs to pursue

8   their claims against the *right party or parties* (those legally responsible for the harm), under the *right*

9   *laws*.  This lawsuit does neither.  Plaintiff's counsel has chosen to sue only Uber Technologies, Inc.

10   ("Uber U.S."), which never had any relationship with Yadav, the alleged assailant.  Yadav's only

11   contractual relationship with any Uber entity was with Uber B.V., a Dutch company not party to this

12   suit.  While Plaintiff undoubtedly can state a claim against her alleged assailant, she cannot state a

13   claim against Uber U.S., which is the wrong party.  Nor does California law govern a dispute

14   involving an alleged wrong committed by one Indian citizen against another Indian citizen, in India.

15   Accordingly, pursuant to Rule 12(b)(6), Uber U.S. respectfully requests that this Court dismiss the

16   Complaint on the following grounds, each of which provides an independent basis for dismissal:

17      *First*, this action is proceeding against the wrong party.  The agreements put at issue by the

18   Complaint reveal that Uber B.V.—a Netherlands-based entity with no U.S. operations—is the

19   company with whom both Plaintiff and the driver contracted to use the Uber software on the night in

20   question.  Plaintiff's Complaint hinges on the legal assertion that Yadav had a relationship with Uber

21   U.S., which is flatly incorrect and directed at the wrong party.

22      *Second*, the Complaint seeks to project California state law and federal law across the globe,

23   to conduct occurring in India, between two Indian citizens.  This constitutes an improper

24   extraterritorial application of U.S. and California law.  The Complaint also asks this Court to enter a

25   sweeping injunction that is disallowed by federal law—a worldwide order that would apply to

26   countless foreign parties not before the court and run roughshod over local laws and regulations

27   around the world.

28      *Third*, even if Plaintiff could proceed under California and federal law on claims against Uber

U.S., the Complaint still fails for a variety of independent reasons, including that there is no conceivable set of facts that would ever make Uber U.S., which has no relationship with Yadav whatsoever, his "employer."  Moreover, even if Yadav were an "employee," California law would hold the alleged perpetrator—not his alleged employer—liable for the type of acts alleged here.

## ISSUES TO BE DECIDED

1.  Whether the Complaint fails to state a claim against Uber U.S. because Uber U.S. is the wrong party.

2.  Whether California tort law and this Court's federal injunctive powers can be applied extraterritorially to the alleged assault carried out by one Indian citizen against another Indian citizen in India, and where Uber U.S. has no relationship with the alleged assailant.

3.  Whether the Complaint's employment-related claims—Claim 1 (negligent hiring, negligent supervision, and negligent retention); Claim 3 (battery); Claim 4 (assault); Claim 5 (false imprisonment); Claim 6 (IIED)—fail as a matter of law because the alleged assailant had no employment relationship with Uber U.S. and fail even if one is assumed.

4.  Whether the Complaint's claims for negligence and negligent infliction of emotional distress fail as a matter of law.

5.  Whether the Complaint's fraud claim fails as a matter of law.

6.  Whether the Complaint seeks improper injunctive and declaratory relief in requesting that the Court rewrite global policies for all the markets world-wide where Uber technology is used, irrespective of local rules or regulations.

7.  Whether amendment would be futile.

## FACTUAL BACKGROUND

Uber companies offer a cutting-edge software application (the "App"), which permits App users to request a ride from independent transportation providers through a few taps on a smartphone. (*See, e.g.*, Declaration of Michael Li-Ming Wong ("Wong Decl."), ¶¶ 3–4 Exs. 1 & 2 (collectively "User Terms"); ¶ 5 Ex. 3 ("Transportation Provider Agreement" or "TPA")).  The software routes the request to the nearest driver who has registered to use the App, who can then choose whether to provide the ride.  The transportation provider uses his or her own car to provide rides.  (*See* Exs. 1–2 (User Terms) at 1–2; *id.*, Ex. 3 (TPA) at 2.1.1)  Thus, Uber companies offer a pioneering technology platform that connects riders and independent drivers all over the world.  The Uber companies

1    operating in India do not own vehicles or employ drivers and therefore are not transportation

2    providers.  (*See* Exs. 1–3.)

3         Plaintiff Jane Doe, a "former loyal Uber customer," used the App (through a friend, Ayush

4    Dabas)[1] to arrange a ride home on December 5, 2014, near New Delhi, India.  (Compl. ¶¶ 7, 26.)

5    According to her Complaint, during that ride, the driver, Shiv Kumar Yadav ("Yadav"), sexually

6    assaulted Plaintiff before dropping her off by her house.  (Compl. ¶¶ 30–42.)  Yadav now faces

7    criminal proceedings in India in connection with the alleged assault.  (*Id.* ¶ 87.)  The Complaint

8    characterizes Uber U.S. as engaging in "negligence, fraud and other unlawful actions" and asserts not

9    only that Yadav is Uber U.S.'s "employee" (*id.* ¶¶ 55, 61, 66, 68, 126, 140, 147, 154, 162, 164), but

10   that the Court should impute Yadav's conduct to Uber U.S. under a *respondeat superior* theory.  (*Id.*

11   ¶¶ 124, 141, 148, 156, 163).

12        Contrary to Plaintiff's assertion, the *only* Uber entity with whom Yadav—an independent

13   contractor—had *any* contractual relationship was Dutch company Uber B.V., which is not a party to

14   this suit.  (Ex. 3 (TPA).)  The Transportation Provider Agreement between Yadav and Uber B.V.

15   defined their relationship.  (*See* Ex. 3 (TPA) at 1.1.1; 2.1.1; 6.3.2.)  As a condition of using the App

16   in India, Yadav agreed that when he was providing his transportation services, "a direct legal

17   relationship is created and assumed solely between the Partner and the Customer.  Uber shall not be

18   responsible or liable for the actions, omissions and behaviour of the Customer in or in relation to the

19   Partner, the Driver and the Vehicle."  (*Id.* at 2.1.1.)

20        Similarly, another Uber B.V. contract—the User Terms—is relevant to both Plaintiff's and

21   Mr. Dabas' use of the App in India.  (*See* Wong Decl. ¶ 3; Exs. 1–2 (User Terms) at 1.)  These User

22   Terms constitute an agreement with Uber B.V., not Uber U.S.  (*See* Exs. 1–2 (User Terms) at 1.)

23   With respect to liability, the User Terms specify that the "transportation services requested through

24   the use of the Application or the Service is entirely the responsibility of the Transportation Provider

25

26

27   _____

28   [1]   Ayush Dabas's identity is a matter of public record: he has testified publicly in the Indian
          criminal proceeding against Yadav and has been widely quoted in media accounts of this incident.

Gibson, Dunn &
Crutcher LLP

1   who ultimately provides such transportation services to you." (*See id.* at 2.)[2]  Riders agree to hold

2   Uber blameless for the actions of independent transportation providers who use the App.  (*Id.* at 3–4.)

3                               **LEGAL STANDARD**

4           A court must dismiss an action that fails to allege facts that state a plausible claim for relief.

5   Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court accepts as true

6   well-pleaded allegations of material fact, but not "allegations that are merely conclusory, unwarranted

7   deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

8   (9th Cir. 2010).  A court need not "assume the truth of legal conclusions merely because they are cast in

9   the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).  Finally, a

10  court need not accept as true allegations contradicted by judicially noticeable facts. *Shwarz v. United*

11  *States*, 234 F.3d 428, 435 (9th Cir. 2000).

12          This Court may consider extrinsic documents, such as contracts, when a "plaintiff's claim

13  depends on the contents of a document, the defendant attaches the document to its motion to dismiss,

14  and the parties do not dispute the authenticity of the document, even though the plaintiff does not

15  explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068,

16  1076 (9th Cir. 2005).  Plaintiff, as noted above, alleges that she is a "former loyal Uber customer"

17  (Compl. ¶ 7), and that Yadav is an "employee" of Uber U.S. (*id.* ¶ 68).  She also alleges that her

18  "friend ordered an Uber ride through the Uber app to come pick Plaintiff up." (*Id.* ¶ 26.)  Therefore,

19  her Complaint depends significantly on the Transportation Provider Agreement that governs the

20  relationship between Yadav and Uber B.V.  (*See* Ex. 3 (TPA).)  It also depends on the User Terms

21  that Uber B.V. had in place for India during the relevant time period.  (*See* Exs. 1–2 (User Terms).)

22  The Court may treat those contracts as part of the complaint and "assume that [their] contents are true

23  for purposes of a motion to dismiss." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003);

24  Fed. R. Civ. P. 10(c).  This Court may also take judicial notice of them. *See* Fed. R. Evid. 201.[3]

25

26  _____
    [2]  Uber B.V. slightly modified the User Terms contract between the time that Plaintiff and Mr.
27       Dabas each signed up from India to use the App, but in all respects material to this matter, the
         User Terms are entirely identical. (*See* Exs. 1–2 (User Terms).)
28  [3]  *See* Defendant's Request for Incorporation by Reference, or in the Alternative, Judicial Notice In
         Support of Motion to Dismiss Plaintiff's Complaint.

1

# ARGUMENT

2

## I.   THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF HAS SUED THE WRONG PARTY

3

4     Plaintiff has chosen to sue Uber U.S., and her Complaint conspicuously fails to make any

5 mention of Uber B.V.  But Uber B.V.—not Uber U.S.—is the entity that contracted with Yadav.  (Ex.

6 3 (TSA) at 3.1.1.)  Uber B.V. is likewise the Uber entity that contracts with India-based users, such as

7 Plaintiff and her friend Mr. Dabas.  (Exs. 1–2) (User Terms) at 1 ("contracting partner is Uber

8 B.V.").)  While Plaintiff has a civil claim against Yadav and may believe that she could bring a claim

9 overseas against Uber B.V. or Uber India, Uber U.S. is not the proper defendant.

10    A plaintiff cannot prevail where, as here, she has sued the wrong party.  *See, e.g., Orr v.

11 *Diamond*, 07-cv-1695, 2007 WL 1959050, at *1 (E.D. La. June 28, 2007) (granting 12(b)(6)

12 dismissal because "[w]hen a Complaint names the wrong party, the plaintiff cannot prevail against

13 that defendant under any set of facts"); *Warter v. Boston Sec., S.A.*, 03-cv-81026, 2004 WL 691787,

14 at *13 (S.D. Fla. Mar. 22, 2004) (dismissing claim against bank's holding company because "[t]he

15 holding company and the bank are not one and the same").  California and federal law adhere to the

16 "general principle of corporate law deeply ingrained in our economic and legal systems that a parent

17 corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51,

18 61 (1998) (quotation marks omitted); *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th

19 523, 538 (2000).  The U.S. Supreme Court just last year reaffirmed the importance of this principle in

20 the context of international litigation.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 750–53 (2014).

21    Courts recognize as well that a parent corporation should not be held liable "for the

22 articulation of general policies and procedures" for its subsidiaries.  *Bestfoods*, 524 U.S. at 72;

23 *Sonora Diamond Corp.*, 83 Cal. App. 4th at 542.  As the Second Circuit explained, in holding that

24 Oracle Corporation was not liable for the acts of a Cyprus subsidiary, the "practice of dealing through

25 a subsidiary is entirely appropriate and essential to our nation's conduct of foreign trade."  *Sarhank

26 Grp. v. Oracle Corp.*, 404 F.3d 657, 662 (2d Cir. 2005); *see also Mobil Oil Corp. v. Linear Films,

27 Inc.*, 718 F. Supp. 260, 264–73 (D. Del. 1989) (rejecting patent infringement claims based on the

28 manufacture of allegedly infringing products by defendant's foreign subsidiary).

Gibson, Dunn &
Crutcher LLP

1    While the Complaint simplistically characterizes "Uber" as a worldwide monolith, as a legal

2 matter, there are more than 100 distinct legal entities under the Uber brand, operating in disparate

3 geographic markets around the world, and organized under the laws of more than 55 countries.  Here,

4 Uber B.V.—*not* Uber U.S.—is the company that had the relevant contractual relationships.  (*See*

5 Wong Decl.¶¶ 3–7; Exs. 1–2 (User Terms) at 1; Ex. 3 (TPA) at 1.1.1.).  Most importantly, Plaintiff's

6 alleged assailant, Yadav, contracted with Uber B.V.  (Ex. 3 (TPA).)  He has no relationship

7 whatsoever with Uber U.S.

8    In suing Uber U.S., Plaintiff has sued a corporation with no connection to her alleged harm.

9 As a consequence, the Complaint fails to allege any facts that give rise to a plausible claim for relief

10 against the named defendant, and the Court should dismiss her Motion as to Uber U.S., leaving

11 Plaintiff free to seek recourse against the proper subject(s) of this suit.

12    **II.    THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE IT SEEKS IMPROPER EXTRATERRITORIAL APPLICATION OF STATE AND FEDERAL LAW[4]**

13    The Court should dismiss the Complaint for the independent reason that it seeks an improper

14 extraterritorial application of state and federal law in its attempt to project domestic law to conduct

15 occurring entirely in India or the Netherlands.[5]  The Court should also decline the request for it to

16 enter an improper injunction of breathtaking sweep that would essentially rewrite all safety policies

17 for all Uber entities around the globe, irrespective of local laws and requirements.

18
19    **A.    The Court Should Decline the Complaint's Invitation to Project Federal and California Law to Conduct Occurring Entirely Outside of U.S. Borders**

20    A State's extraterritorial application of its laws to conduct that takes place outside its borders

21 is unconstitutional.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 781 (1985); *Edgar v. MITE*

22 *Corp.*, 457 U.S. 624, 642–43 (1982); *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312 (1981); *Shaffer v.*

23

24 ───────────────

[4]  Concurrently with this Motion, Uber U.S. has filed a Motion explaining why California is not an

25 appropriate forum for this dispute and seeking dismissal on that separate and independent basis.
*See* Motion to Dismiss Pursuant to (1) Forum Selection Clause; (2) *Forum Non Conveniens*; (3)
Fed. R. Civ. P. 12(b)(7); and (4) Fed. R. Civ. P. 12(b)(3) ("Forum Motion").

26 [5]  Plaintiff asks this Court to use its federal injunctive and declaratory relief powers and has

27 provided no notice of application of foreign law.  Further, it would make no sense for this case to
proceed here under foreign law, when the case concerns a foreign plaintiff allegedly harmed by a
foreign national on foreign soil.  *See generally* Forum Motion.  Nonetheless, Uber U.S. reserves

28 the right to argue any choice-of-law question should it arise.

*Heitner*, 433 U.S. 186, 197 (1977).  Absent an express statutory provision otherwise, the laws of California and of the United States presumptively do not apply extraterritorially.  *See Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1664 (2013) (discussing "danger of unwarranted judicial interference" in international context); *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 165 (2004) (the presumption avoids the "serious risk of interference with a foreign nation's ability independently to regulate its own commercial affairs"); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *O'Connor v. Uber Techs., Inc.*, 13-cv-3826-EMC, 2014 WL 4382880, at *11 (N.D. Cal. 2014) (anti-extraterritoriality rule has "been consistently applied by California courts").

California and federal policies against extraterritorial application of law reflect important principles essential to guaranteeing equal treatment under the law and avoiding intrusions on foreign sovereignty.  *See Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1060 n.20 (1999).  For instance, the Complaint invokes California negligence law, which turns entirely on local standards of reasonableness.  These standards, by definition, do not account for foreign law or policy. If applied extraterritorially, a U.S. court could impose liability on a company under California law for activity that may well have complied fully with Indian law.  This would effectively not only export California laws, but preempt the domestic laws of the country where the alleged violation occurred.

This case has everything to do with India and the Netherlands, and nothing to do with the United States.  Plaintiff is an Indian citizen and resident who claims that she was assaulted in India by Yadav, another Indian citizen and resident.  (*See* Compl. ¶ 7.)  But Dutch company **Uber B.V.** contracted with Yadav for his use of the App (Ex. 3 (TPA)) and Uber B.V. is likewise the entity that contracts with India-based users for rides in India.  (*See* Ex. 3 (TPA) at 1.1.1.)  Nonetheless, Plaintiff inexplicably seeks to hold **Uber U.S.** liable under California and federal law for Yadav's conduct in India.  (Compl. ¶¶ 10, 12.)  The Complaint's vague and conclusory allegations about Uber U.S. fail to plead a specific relationship between Uber U.S. and any relevant party here, much less provide a legal justification for projecting California or federal law to the India-based conduct at issue.  All of the alleged harm and misdeeds occurred in India.  (*See* Compl. ¶¶ 25–56.)  All of Plaintiff's and Yadav's ties to any Uber entity run between India and the Netherlands.  (*See* Exs. 1–2 (User Terms) at 1; Ex. 3 (TPA) at 1.1.1.)

1    Foreign plaintiffs cannot harness California law extraterritorially through allegations that

2    some general policy or decision made in California by a corporate defendant caused the harm.  *See,*

3    *e.g.*, *Castagnola v. Hewlett-Packard Co.*, 11-cv-05772-JSW, 2012 WL 2159385, at *4 (N.D. Cal.

4    June 13, 2012) (plaintiff lacked "specific allegations" about what exactly was done in California to

5    cause harm); *Gustafson v. BAC Home Loans Servicing, LP*, 11-cv-915-ANX, 2012 WL 4761733, at

6    *6 (C.D. Cal. Apr. 12, 2012) (the "mere possibility that certain decisions related to…policies and

7    practices" were made in California does not permit extraterritorial application of California law to

8    events outside California).  Such rulings foreclose the Complaint's attempt to allege generic "safety

9    protocols" devised in California (Compl. ¶ 18) in order to overcome the presumption against

10   extraterritorial application of domestic law.

11   Extraterritorial application of California law is even less appropriate where, as here, there

12   exists an enforceable choice-of-law provision.  *In re Apple & AT&T iPad Unlimited Data Plan Litig.*,

13   802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011).  As explained in more detail in Uber U.S.'s

14   concurrently filed Forum Motion, the User Terms applicable to all India-based users contain a

15   choice-of-law provision specifying Dutch law. (*See*  Forum Motion at 5, 14.)  To the extent there is

16   any reasonable dispute about which country's law applies here, it is between Dutch and Indian law;

17   there is no basis here for applying U.S. law (or proceeding against Uber U.S.).

18    Additionally, Plaintiff's request that this Court award punitive damages against Uber U.S.

19   based on Yadav's conduct in India heightens the due process problems with this suit.  As the

20   Supreme Court has recognized, "principles of state sovereignty and comity" require "that a State may

21   not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors'

22   lawful conduct in other States."  *BMW of N. Am. v. Gore*, 517 U.S. 559, 572 (1996); *Phillips*

23   *Petroleum*, 472 U.S. at 781.

24   The Complaint fails to demonstrate a plausible basis for applying California state law or

25   federal law to an alleged harm suffered by an Indian plaintiff, in India, at the hands of an Indian

26   driver, during a ride ordered by a third Indian citizen, all three of whom contracted with a Dutch

27   company.  Nor would it make sense to proceed under foreign law here in the U.S., when the alleged

28

Gibson, Dunn &
Crutcher LLP

incident occurred overseas, where Plaintiff and the alleged perpetrator reside. The Court should dismiss the Complaint for this reason alone.

**B.    The Court Should Decline the Complaint's Invitation to Issue an Unworkable Injunction of Global Scope that Tramples U.S. and Foreign Law**

The Complaint seeks injunctive relief that is impermissible, unworkable, and unprecedented. Plaintiff asks this Court, using a single-plaintiff case as a vehicle, to order a global injunction essentially rewriting "Uber's" business policies worldwide. (Compl. ¶¶ 119–21.) Plaintiff requests an "immediate" order commanding Uber U.S. to implement a litany of "improved safety measures" of doubtful legality, unclear viability, and unproven effectiveness. (*See id.* ¶ 120.) Plaintiff lacks standing to seek such a sweeping injunction, which would trample the laws of dozens of foreign jurisdictions and apply primarily to the conduct of many overseas entities and individuals beyond the jurisdiction of the Court.

A plaintiff seeking injunctive relief must show that she is under an "actual and imminent" threat of injury that is "concrete and particularized," fairly traceable to the defendant's challenged conduct, and that an injunction would redress. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Plaintiff cannot meet these requirements. *First*, to seek an injunction, a plaintiff alleging past injury must establish "a sufficient likelihood that he will again be wronged in a similar way." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). Plaintiff describes the injury she alleges she already suffered, for which she seeks an adequate remedy at law. (*See* Compl. ¶¶ 25–42.) But the Complaint lacks any concrete allegation that Plaintiff—a self-described *former* Uber customer (*id.* ¶ 7)—will suffer similar and imminent future injury. On the contrary, Plaintiff alleges that her injury was the result of criminal conduct by Yadav. (*Id.* ¶¶ 25–42.) A claim to future similar injury presupposes a *third party*'s violation of Indian law.

*Second*, the Complaint does not establish that the injunction—commanding intrusive changes to the general business practices of an entity in California—could redress a threat of imminent future harm to her in India. A federal court "may not attempt to determine the rights of persons not before

Gibson, Dunn & Crutcher LLP

9

Memo of Pts. And Auths. ISO Uber's 12(b)(6) Mot. to Dismiss – Case No. 15-cv-00424

1   the court" and so must "tailor the injunction to affect only those persons over which it has power."

2   *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 728 (9th Cir. 1983).  This rule applies with particular force

3   where the requested injunction regulates conduct of an international entity.  *See, e.g.*, *Reebok Int'l*

4   *Ltd. v. McLaughlin*, 49 F.3d 1387, 1388 (9th Cir. 1995) (reversing contempt order against

5   international subsidiary not subject to personal jurisdiction).  Plaintiff has no relevant legal

6   relationship with Uber U.S., which deals with U.S.-based users, and she is asking for a global-scale

7   injunction that would apply to countless parties not before this court nor subject to its jurisdiction.

8       *Third*, although Plaintiff no longer herself uses the App, she seeks an injunction on behalf of

9   riders who use the App worldwide.  (*See* Compl. ¶¶ 7, 101–20.)  But Plaintiff cannot seek an

10  injunction on behalf of parties not before the Court, unless she shows "a close relationship between

11  [her]self and the parties whose rights [s]he asserts, and the inability of the parties to assert their own

12  rights."  *McCollum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 879–80 (9th Cir. 2011).  The

13  Complaint does not attempt to make such a showing, but instead enumerates a series of disconnected

14  (and largely unproven) incidents without suggesting why the parties involved could not assert their

15  rights on their own behalf.  (Compl. ¶¶ 101–18.)  Further, as the Complaint implies, Yadav is no

16  longer posing a direct threat as he is in criminal proceedings in India.  (*Id.* ¶ 87.)  Accordingly,

17  Plaintiff's request for injunctive relief is impermissible under Article III.

18      *Fourth*, the proposed worldwide injunction is staggeringly overbroad.  The Complaint asks

19  the Court to compel Uber U.S., and implicitly more than a hundred distinct Uber affiliates and others

20  beyond the Court's jurisdiction, to engage in a vast and detailed reform of business decisions and

21  safety policies.  (*See* Compl. ¶ 120.)  A federal court may not "put the whole conduct of the

22  defendants' business at the peril of a summons for contempt," *Hartford-Empire Co. v. United States*,

23  323 U.S. 386 (1945), or award relief more "burdensome to the defendant than necessary to provide

24  complete relief to the plaintiff[]."  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  Moreover, the

25  Complaint seeks such relief in the sensitive area of international affairs, where courts cannot exercise

26  equity powers when doing so would cause "interference with the sovereignty of another nation."

27  *Steele v. Bulova Watch Co.*, 344 U.S. 280, 289 (1952); *Kiobel*, 133 S. Ct. at 1664 (discussing "danger

28  of unwarranted judicial interference" in international context); *Reebok*, 49 F.3d at 1391–92 ("[T]he

1    strength of the analysis begins to crumble when a U.S. District Court seeks to reach out across the

2    Atlantic in an attempt to impose conflicting duties on another country's nationals within its own

3    borders.").

4          By its terms, the proposed injunction would usurp the sovereignty of dozens of foreign

5    nations by superimposing a remedy fashioned by this court for this litigation.  (*See* Compl. ¶ 120.)

6    For starters, the remedy would violate the laws of several U.S. states.  For instance, the Complaint

7    requests an order that Uber U.S. bar individuals with certain convictions from contracting with all

8    Uber entities (*id.* ¶ 120(j)), but by analogy, many U.S. states restrict discrimination against

9    employment applicants who have paid their debt to society.  *See, e.g.*, HAW. REV. STAT. § 378–2.5

10   (2014); KAN. STAT. ANN. § 22–4710 (2014); 18 PA. CONS. STAT. ANN. § 9125 (2014).  San

11   Francisco's own "Fair Chance Ordinance" forbids inquiries into an individual's conviction history at

12   initial hiring stages.  S.F. POLICE CODE, Art. 49; *see* Nicole C. Baldwin, *Watch Your Back(ground*

13   *Checks)!*, 24 No. 3 CAL. EMP'T L. LETTER 4 (2014).  Plaintiff's proposal to force Uber U.S. to

14   provide App users "with the option of requesting a female Uber driver" (Compl. ¶ 120(d)) would face

15   yet greater obstacles.  *See, e.g.*, *Koire v. Metro Car Wash*, 40 Cal. 3d 24 (2008) (vendor policies

16   discriminating in favor of women violate California civil rights law).  Other proposals from the

17   Complaint implicate crucial matters of public policy—like the difficult security-liberty-privacy

18   balance that surveillance cameras or car-installed GPS tracking always tests—which other nations

19   decide for themselves.  (Compl. ¶ 120(b), (c) and (e).)

20                                                    * * *

21         In summary, there is nothing about this case suggesting that this Court should apply

22   California or federal law to a tort claim—much less a claim concerning an assault that occurred

23   entirely in India, allegedly by one Indian citizen against another Indian citizen, in connection with a

24   ride that was ordered by a third Indian citizen, using a software application whose use by all three

25   Indian residents was governed by agreements with a Dutch company.

26

27

28

### III. THE COURT SHOULD DISMISS THE COMPLAINT'S EMPLOYMENT-RELATED CLAIMS BECAUSE UBER U.S. IS NOT LEGALLY RESPONSIBLE FOR DRIVER YADAV'S BAD ACTS

Even if the Court could somehow apply California or federal law to allegedly tortious conduct in India, the majority of her claims rest on the false assertion that Uber U.S. was Yadav's "employer." The Complaint seeks to hold Uber U.S. vicariously liable for Yadav's alleged battery, assault, false imprisonment, and intentional infliction of emotional distress, based on the theory of vicarious employer liability for an employee's intentional torts. (*See* Compl. ¶¶ 141 (battery), 148 (assault), 156 (false imprisonment), 163 (intentional infliction of emotional distress).) The Complaint also claims Uber U.S. is liable for breaching a duty of care in "hiring, retention and/or supervision of Yadav," an alleged employee whom Uber U.S. "knew or should have known" would endanger Indian passengers. (*See id.* ¶ 124.)

The theories for liability in the Complaint are meritless. *First*, Yadav was not an "employee" of any Uber entity, and even if he were, he was an employee of Uber B.V., not Uber U.S. Accordingly, an essential element of liability is missing for all five claims. *Second*, even if Uber U.S. were Yadav's employer, the Complaint's vicarious-liability claims still fail as a matter of law because an employer cannot be liable for the sexual misconduct alleged here. *Third*, the Complaint's negligent hiring, supervision, and retention claim fails because, even if Plaintiff adequately alleged that Yadav was Uber U.S.'s employee, Plaintiff has not plausibly pleaded that Uber U.S. was *aware* of the danger he posed.

#### A. The Complaint Does Not Allege Facts Sufficient to Demonstrate the Existence of an Employer-Employee Relationship

An employer-employee or principal-agent relationship between Uber U.S. and Yadav is required for vicarious liability. Neither exists here.[6] *See* CAL. CIV. CODE § 2299 (West 2015) ("An

---

[6] We acknowledge the order in *O'Connor v. Uber Techs.*, Inc., 13-cv-3826-EMC, 2015 WL 1069092 (N.D. Cal. Mar. 11, 2015), in which Judge Chen found that plaintiffs' status as employees of Uber U.S. under California law would be resolved by the jury. While Uber U.S. respectfully disagrees with this decision, it is inapposite in any event. *O'Connor* involved California residents who drove in California—pursuant to contract with Uber U.S.—claiming employee status under the California Labor Code. *Id.* at *1. Here, the issue is the status of Yadav, an Indian transportation provider who contracted with Uber B.V.—not Uber U.S. There is no reason California law would apply to him; nor is there any legal or factual basis to consider Yadav an employee of Uber U.S., which had no contractual or other relationship with Yadav. In fact, in *O'Connor*, Judge Chen held that drivers outside of California could not be parties to the

*(Cont'd on next page)*

Gibson, Dunn &
Crutcher LLP

1  agency is actual when the agent is really *employed* by the principal") (emphasis added); *Zelig v. Cnty.*

2  *of L.A.*, 27 Cal. 4th 1112, 1128 (2002) (vicarious liability "flows from the responsibility…for the acts

3  of its employees under the principle of respondeat superior"); *Meyer v. Holley*, 537 U.S. 280, 285

4  (2003) ("traditional vicarious liability rules ordinarily make principals or employers vicariously liable

5  for acts of their agents or employees in the scope of their authority or employment").  Likewise, an

6  employer-employee or principal-agent relationship is required to support a claim for negligent hiring,

7  retention, and supervision.  *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 837

8  (1992); *Federico v. Superior Court*, 59 Cal. App. 4th 1207, 1213–14 (1997).

9         As a preliminary matter, the Court is not required to assume that Yadav is Uber U.S.'s

10  "employee" for purposes of evaluating the complaint's sufficiency.  The Complaint simply *assumes*

11  that Yadav is an "employee" and makes no factual allegations to support that *legal* conclusion.  *Doe I*

12  *v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682 (9th Cir. 2009) (affirming 12(b)(6) dismissal of

13  plaintiffs' claim to be Wal-Mart "employees" as "conclusory allegations of law" that a court "need

14  not accept"); *Cruz v. Dollar Tree Stores, Inc.*, 07-cv-2050, 2007 WL 2729214, at *3 (N.D. Cal. Sept.

15  18, 2007) (granting 12(b)(6) motion after finding that "employee" status was "question of law").

16         To the contrary, the Court may consider contracts in evaluating the sufficiency of the

17  Complaint.  The Transportation Provider Agreement establishes that Yadav had no relationship

18  whatsoever with Uber U.S.  *First,* the Transportation Provider Agreement between Yadav and *Uber*

19  *B.V.*, which constitutes the beginning and end of Yadav's contractual relationship with *any* Uber

20  entity, makes clear that Yadav's relationship was between Yadav and Uber B.V. (not Uber U.S.).  It

21  further disclaims any employer-employee relationship with even Uber B.V.:

22      • "The Parties expressly agree that this Agreement ***cannot be regarded as an employment***
23        ***agreement or employment relationship*** and that Uber . . . exclusively provid[es] an
          intermediary service to the Partner in return for a Commission."  (Ex. 3 (TPA) at 6.3.2
24        (emphasis added).)

25      • "Partner acknowledges and agrees that ***Uber does not provide any transportation***
          ***services***, and that Uber is not a transportation or passenger carrier. . . .  The ***Partner***
26  _____

*(Cont'd from previous page)*

27
28  suit.  *See* Order Granting Defendant's Motion for Summary Judgment on the Pleadings, 2014 WL
    4382880, at *12.

*and/or the Drivers will be solely responsible* for any and all liability which results or is alleged to be as a result of the . . . transportation service, including, but not limited to personal injuries[.]"  (*Id.* at 2.1.1 (emphasis added).)

- "[T]he Partner accepts, agrees and acknowledges that *a direct legal relationship is created and assumed solely between the Partner and the Customer*."  (*Id.* (emphasis added).)

- "Uber does not and *does not intend to exercise any control* over the Driver (or the Partner's) actions or the operation or physical condition of the Vehicle—except as provided under the Agreement—and *nothing in the Agreement shall create an employment relationship between* Uber and the Partner and/or the Driver[.]"  (*Id.* at 2.2.1 (emphasis added).)

The archetypical relationship between employer and employee is that the employer pays the employee.  Here it is the opposite.  Indian drivers using the App pay *Uber B.V.* to use the software. (*See* Ex. 3 (TPA) at 1.1.1, 3.1.2, 5.2.1.)

*Second,* the User Terms separately recognize Yadav's status as an independently licensed and operating transportation provider:

- "Uber offers information and a *means* to obtain transportation services offered by *third party* transportation providers, drivers or vehicle operators[.]"  (*See* Exs. 1–2 (User Terms) at 1 (emphasis added).)

- "The quality of the transportation services requested through the use of the Application or the Service is *entirely the responsibility of the Transportation Provider* who ultimately provides such transportation services to you.  Uber *under no circumstance* accepts liability in connection with . . . any acts, actions, behaviour, conduct, and/or negligence on the part of the Transportation Provider."  (*Id.* at 2 (emphasis added).)

Even *apart from* these contracts, the Complaint fails to plead any facts supporting its allegations that Uber U.S. was Yadav's employer.  The chief factor in analyzing whether an entity is an employer is the "right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed."  *Serv. Emps. Int'l Union v. Cnty. of L.A.*, 225 Cal. App. 3d 761, 769 (1990).  The right to control requires "a comprehensive and immediate level of 'day-to-day' authority over employment decisions."  *Vernon v. State*, 116 Cal. App. 4th 114, 127–28 (2004).  Yet Plaintiff does not allege that Uber U.S. exercised *any* direction or control over Yadav. Plaintiff does not claim that Uber U.S. required Yadav to work specific hours or pick up certain passengers; that Uber U.S. paid Yadav wages, or salary, or any other compensation; that Uber U.S. provided Yadav with his vehicle; that Uber U.S. withheld Yadav's taxes or paid for his car insurance, gas, or maintenance; that Yadav worked exclusively using the Uber service; that Uber U.S. had the

1  right to discipline Yadav; or that Yadav considered himself an employee of Uber U.S.  The

2  Complaint, in short, fails to allege facts to establish *any* of the factors that determine whether an

3  employee-employer relationship exists, as set out in *S. G. Borello & Sons, Inc. v. Dep't of Indus.*

4  *Relations,* 48 Cal. 3d 341, 350–51 (1989).

5       Recent California appellate cases specifically in the driving-for-hire context confirm this

6  conclusion.  In *Elijahjuan v. Superior Court*, 210 Cal. App. 4th 15, 31–32 (2012), commercial

7  truckers who made deliveries to customers of a logistics company claimed to be "employees" of that

8  company.  The Court of Appeal rejected this, noting that many of the allegations were "contradicted

9  by the express terms of the agreements."  *Id.*  That much is true in Jane Doe's case, too.  The court

10  then described the defendant in words that apply with uncanny accuracy to the relationship between

11  Uber entities, its riders, and independent drivers: the "degree of control exercised by defendants *is*

12  *only that of a broker seeking a carrier to meet its customers' . . . needs*.  Plaintiffs owned their trucks,

13  were paid by the delivery, and were required to maintain their own permits and insurance."  *Id.* at 32

14  (emphasis added).  The court mentioned other decisive facts, strikingly similar to those here:

| *Elijahjuan v. Superior Court* | *Jane Doe v. Uber U.S.* |
|---|---|
| The contracts "permit plaintiffs to provide transportation services for other companies."  *Id.* at 31. | Plaintiff does not allege that Uber U.S. required Yadav to work exclusively for Uber U.S. |
| The contracts stated that plaintiffs "were responsible for providing labor at their own discretion and expense."  *Id.* | Plaintiff does not allege that Yadav was required to work at any particular time or manner or that Uber U.S. paid for his gas and vehicle expenses. |
| There were "flat compensation rates."  *Id.* | Plaintiff does not allege that Yadav was paid a salary or hourly rate or received any payment from Uber U.S. |
| "Title on the [vehicles] was held in plaintiffs' names."  *Id.* | Plaintiff does not allege that Uber U.S. provided Yadav with his vehicle or that Yadav did not have title. |
| "[P]laintiffs maintained their own motor carrier permits and insurance, and drove their own [vehicles]."  *Id.* | Plaintiff does not allege that Yadav did not own his own car, obtain his own permits, and carry his own insurance. |
| Defendants did not "maintain vehicles to transport property."  *Id.* at 31–32. | Plaintiff does not allege that Uber U.S. owns vehicles as a part of its alleged "transportation" business. |

| *Elijahjuan v. Superior Court* | *Jane Doe v. Uber U.S.* |
|---|---|
| Defendants did not "hire[] and train[] drivers." *Id.* at 32. | Plaintiff does not allege that Uber U.S. ever "hired" or "trained" Yadav. |
| Plaintiffs were "required to bear all expenses associated with their equipment." *Id.* | Plaintiff does not allege that Uber U.S. paid any of Yadav's expenses as a commercial driver. |
| Plaintiffs were "not paid wages, and received Internal Revenue Service 1099 forms." *Id.* | Plaintiff does not allege that Yadav received wages or other indicia of actual employment, let alone employment as defined in *California*. |
| Defendants "did not direct which route to take." *Id.* | Plaintiff does not allege the Uber U.S. had any control over the routes Yadav took. |

Because the Complaint alleges no facts sufficient to show an employee-employer relationship between Yadav and Uber U.S., nor any basis for any type of principal-agent relationship between Uber U.S. and Yadav, Plaintiff as a matter of law cannot establish any claims for vicarious liability nor a claim to negligent hiring, supervision, and retention.  Given the contracts at issue here, which establish that Plaintiff cannot plausibly allege such a relationship, amendment is futile.

**B.    Even If Yadav Were Mischaracterized as an Employee, the Complaint's Third Through Sixth Causes of Action for Vicarious Tort Liability Fail for the Independent Reason that Uber U.S. Cannot Be Liable for Torts Outside the Scope of Yadav's Duty**

Even if Uber U.S. were miscast as Yadav's "employer," Plaintiff's four vicarious-liability claims fail for the additional reason that sudden and unexpected sexual assaults by employees are outside the scope of an employee's duty and cannot support employer liability.  This is a question of law appropriately resolved on a motion to dismiss when, as here, the answer to whether an employee acted within the scope of employment can only have one answer.  *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 299 (1995); *White v. Cnty. of Orange*, 166 Cal. App. 3d 566, 570 (1985); *Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133, 138 (1981).

California law is clear that in cases of alleged sexual assault, an "employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes." *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1005 (1995).  In such cases it "clearly appears that neither directly nor indirectly could [a sexual assailant] have been serving his employer." *John R. v. Oakland Unified*

*Sch. Dist.*, 48 Cal. 3d 438, 447 (1989).  Courts hold that these acts serve only the "employees' personal gratification" without any "purpose connected to the employment."  *Farmers*, 11 Cal. 4th at 1007.  *Respondeat superior* liability against the employer is therefore "unfair."  *Id.* at 1003.

Courts uniformly reject allegations that sexual assault is within the scope of employment. *See, e.g.*, *Lisa M.*, 12 Cal. 4th at 301 ("The [ultrasound] technician's decision to engage in conscious exploitation of the patient did not *arise out of* the performance of the examination"); *Farmers*, 11 Cal. 4th at 1007 (plaintiff could not "dispute that repeated requests for sexual favors and his inappropriate touchings were motivated for strictly personal reasons unrelated to…[any] duty of a deputy sheriff"); *John R.*, 48 Cal. 3d at 452 (abuse of teacher's position "to indulge in personal, sexual misconduct is simply too attenuated to deem a sexual assault as falling within the range of risks allocable to a teacher's employer"); *Myers v. Trendwest Resorts, Inc.*, 148 Cal. App. 4th 1403, 1432 (2007) ("Damlahki's sexual conduct toward plaintiff was not typical of or broadly incidental to Trendwest's enterprise of selling timeshares"); *Maria D. v. Westec Residential Sec., Inc.,* 85 Cal. App. 4th 125, 146 (2000) ("the mere fact the security guard had an opportunity to abuse the trappings of his profession does not render Westec vicariously liable for the rape"); *Victoria v. Superior Court*, 40 Cal. 3d 734, 745 (1985) ("[the hospital orderly] is not accused of negligently failing to empty a bedpan.  He is accused of the sexual assault and rape of petitioner.  Surely it was not contemplated, let alone expected…that this sort of attack would befall petitioner while she was hospitalized under Kaiser's care"); *Jeffrey E. v. Cent. Baptist Church*, 197 Cal. App. 3d 718, 722 (1988) ("Certainly [a Sunday school teacher] was not employed to molest young boys"); *Rita M. v. Roman Catholic Archbishop*, 187 Cal. App. 3d 1453, 1461 (1986) ("Plaintiffs could not seriously contend that sexual relations with parishioners are either required by or instant to a priest's duties"); *Alma W.*, 123 Cal. App. 3d at 140 ("Sexual molestation is in no way related to mopping floors, cleaning rooms, or any of the other tasks that are required of a school custodian.").

These decisions reflect California's rule that vicarious liability can only attach to a "generally foreseeable consequence" of an employee's specific duties.  Sexual misconduct, almost always "unusual or startling," cannot lead to vicarious liability.  *Lisa M.,* 12 Cal. 4th at 299; *John R.,* 48 Cal. 3d at 450 n.9.  *Alma W.* illustrated the difference between foreseeable and "startling" misconduct:

Gibson, Dunn &
Crutcher LLP

1

> [W]hile it might be foreseeable for a school custodian to become involved in a dispute over the manner in which he swept the floors or cleaned a classroom and for the dispute to end in someone being hit with a mop, the same statement cannot be made with reference to rape. There is no aspect of a janitor's duties that would make sexual assault anything other than highly unusual and very startling.

123 Cal. App. 3d at 142–43.

That the assault occurred while Yadav was driving is irrelevant. In *Doe 1 v. City of Murrieta*, 102 Cal. App. 4th 899 (2002), a police officer's sex with minors—occurring in his patrol car, while on duty, *id.* at 905—did not change the character of his acts, undertaken solely for his "personal gratification" with "no purpose connected to [his] employment." *Id.* at 910. If an employee's tort is personal in nature, "mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior." *Lisa M.,* 12 Cal. 4th at 298 ("That the employment brought tortfeasor and victim together in time and place is not enough"); *Alma W.*, 123 Cal. App. at 140–41 (no vicarious liability for sexual assault even though its occurred at workplace).

**C.     The Complaint's Negligent Hiring, Supervising, and Retention Claim Fails for the Additional Reason that Uber U.S. is Not Adequately Alleged to Have Knowledge that Yadav Could Not Be Trusted to Act Properly**

Finally, the Complaint's employment-based negligence claim (Claim 1) likewise fails for an additional reason. There can be no liability for negligent supervision "in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised." *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 395 (2000). Likewise, with negligent hiring and retention, liability cannot exist unless that employer "knew, or should have known, that [the employee] was unfit to perform the…work for which he was hired." *Phillips v. TLC Plumbing, Inc.,* 172 Cal. App. 4th 1133, 1146 (2009).

The Complaint offers precisely one entirely insufficient allegation that Uber U.S. had "actual notice" of Yadav's unfitness: that a week before she was attacked, another passenger using the App wrote in feedback (the App solicits comments after each ride) that Yadav had been "inappropriately 'staring' at her." (Compl. ¶ 69.) From *this alone,* contends the Complaint, Uber U.S. should have

1    been on notice that Yadav would turn out to be a dangerous rapist.[6]  The Complaint does not explain

2    why, or how one comment about "staring" establishes a duty immediately to investigate and sever

3    Yadav's use of the App in order to prevent an unexpected sexual assault.

4         Instead of alleging genuine prior knowledge, the Complaint speculates that Uber U.S. *should*

5    *have known* about Yadav's alleged propensities through a background check.  (Compl. ¶ 10.)  But the

6    Complaint does not offer any allegations to suggest why Uber U.S., a California company, would

7    conduct background checks on independent drivers with whom it has no relationship, and who

8    operate exclusively in foreign countries.  Nor does the Complaint allege that Uber U.S. had any legal

9    duty to do so under Indian, Dutch, or California law.  The Complaint does concede that Uber U.S.'s

10   Indian subsidiary received what appeared to be valid government licensing materials (*id.* ¶ 58),

11   without explaining why Yadav's supposed but unspecified deception of Uber B.V. should lead to

12   liability for *Uber U.S.*  The remaining allegations in the Complaint demand acts plainly in excess of

13   the duty of care under any country's law (for example, the implication that *Uber U.S.* should have

14   been "talking to people" in Yadav's "home village" (*id.* ¶ 67)).

15        Because an employer cannot be liable for negligent hiring, retention, or supervision where

16   there is no "actual knowledge, or reason to suspect" an employee's fitness, *Federico*, 59 Cal. App.

17   4th at 1216, Uber U.S. cannot be liable, *even if* Uber U.S. is wrongly labeled Yadav's "employer."

### D.    Uber U.S. is Not a "Common Carrier"

19        Plaintiff labels Uber U.S. a "common carrier."  (Compl. ¶¶ 141, 163.)  This is yet another

20   legal conclusion cast as a factual allegation, *Squaw Valley Ski Corp. v. Superior Court*, 2 Cal. App.

21   4th 1499, 1506 (1992), and barely so: beyond the conclusory description itself, the Complaint offers

22   no allegations to suggest why Uber U.S. would be a "common carrier" under California law, much

23   less why California common-carrier law would have any applicability to conduct occurring entirely

24   in India.  Even if a "common carrier" designation somehow applied here, that legal status simply

---

[6]  The Complaint alleges that a "Ms. Shah" described Yadav, with whom she claims to have ridden, as "lecherous" and "creepy."  (Compl. ¶ 71.)  However, as the Complaint acknowledges, Ms. Shah made these comments *after* Yadav was arrested for rape, so the comments are hardly fair notice of Yadav's propensities *before* the assault.  Beyond this, Plaintiff compiles internet research describing a handful of unproven incidents, over a three-year period, entirely unrelated to this suit.  (*See* Compl. ¶¶ 101–18.)

imposes a heightened duty of care.  It does not displace the rule that an employer is not liable for employee misconduct outside the scope of employment.  *Dayton v. Yellow Cab Co. of S.F.*, 85 Cal. App. 2d 740, 741–42 (1948); *Little v. L.A. Ry. Corp.*, 94 Cal. App. 303, 311 (1928) (it is an "elementary proposition" that even with common carrier railway, a conductor's tort that "does not fall within the scope of such duties, cannot bind the defendant" railway company); *Cromwell v. L.A. Ry. Corp.*, 102 Cal. App. 499, 500–01 (1929) (railway is not liable for the torts of a conductor acting outside his scope of employment).

A seminal state case on "common carrier" liability, *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 791 (1985), arose after some passengers assaulted others on a city bus.  The court acknowledged the common carrier's heightened duty of care, but continued:

> We reiterate, however, that carriers are not insurers of their passenger's safety and will not automatically be liable, regardless of the circumstances, for any injury suffered by a passenger…. Rather, a carrier is liable for injuries resulting from an assault…only where, in the exercise of the required degree of care, the carrier has or should have knowledge from which it may reasonably be apprehended that an assault on a passenger may occur, and has the ability in the exercise of that degree of care to prevent the injury.

*Id.*  Likewise, in this case, even if Uber U.S. were somehow found to be a common carrier, it cannot be held liable for sudden criminal attacks by individuals over whom it has no control.

In *City & Cnty. of S.F. v. Superior Court*, 31 Cal. App. 4th 45, 49 (1994), a passenger was stabbed by an assailant; she alleged that the bus system, a common carrier, had a duty to prevent the attack.  The court replied that "[n]o California case has held a common carrier liable for a sudden assault which occurs with no warning."  *Id.*  Instead, the duty to protect exists only when the common carrier "knows or should know that an assault is about to occur," such as when a bus driver ignores an impending brawl.  *Id.* at 48.  Vicarious liability beyond this would make such carriers "insurers of their passengers' safety," which, the court noted, *Lopez* prohibits.  40 Cal. 3d at 785–76.  The situation here is no different: a sudden and unexpected assault, for which even a common carrier, exercising a high duty of care, cannot be held vicariously liable.

Moreover, invoking "common carrier" liability constitutes yet another attempt to project California statutes across the Pacific Ocean.  "Common carrier" is a statutory label that applies to certain entities under certain conditions that "carry" people or goods *in California*.  CAL. CIV. CODE

§ 2168.  An entity cannot be a common carrier under California law when any alleged "carrying" occurs thousands of miles away, in a foreign country, subject to foreign laws and foreign duties.[7]

### IV.   THE COURT SHOULD DISMISS THE COMPLAINT'S CLAIMS OF FRAUD AND NEGLIGENCE BECAUSE ITS ALLEGATIONS ARE INSUFFICIENT AS A MATTER OF LAW

#### A.   The Complaint Fails to Sufficiently Allege Fraud

In its second cause of action, the Complaint pleads fraud based on the allegation that Uber U.S. "knowingly mislead[s] the public about the safety and security measures employed by Uber." (Compl. ¶ 91.)  This claim fails as a matter of law.  Rule 9(b) requires that allegations of fraud "must be accompanied by the who, what, when, where, and how of the misconduct charged."  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations omitted).  A plaintiff "must set forth what is false or misleading about a statement, and why it is false."  *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).  When allegations under this heightened standard are insufficiently pled, a district court "should disregard those averments, or strip them from the claim."  *Vess*, 317 F.3d at 1105 (quotations omitted).

The Complaint offers no sufficient allegations.  Instead, it takes a confusing scattershot approach, citing undated statements alongside others that it *acknowledges* postdate the alleged assault incident.  Unraveled, they reveal that there is no basis to support a fraud claim—especially under Rule 9(b)'s heightened standard.[8]  The allegations can be grouped into a few categories:

*First*, some of the allegations in the Complaint are deceptive.  In the section on how Uber U.S. supposedly failed to meet safety standards, the Complaint appears to quote statements that were made days *after* the alleged assault.  (Compl. ¶ 74; Wong Decl. ¶ 8, Ex. 4.)  The Complaint also quotes other alleged statements that it more forthrightly admits postdate the December 5 incident.  (Compl. ¶¶ 12, 13.)  In pleading a claim for fraud, the Complain cannot rely on statements made *after* December 5 as fraudulent representations on which Plaintiff relied *before* the incident.

---

[7]   Additionally, even assuming that Uber U.S. was a common carrier in India, common carriers can nonetheless limit their liability by special contract.  *See* CAL. CIV. CODE § 2174.

[8]   Aside from the failure to satisfy federal pleading standards, in California the failure to allege any one of the elements of fraud—misrepresentation, scienter, inducement, reliance, and harm—is "fatal to recovery."  *Okun v. Morton*, 203 Cal. App. 3d 805, 828 (1988).

*Second*, some of the allegations are implausible.  The Complaint alleges that Uber U.S., "knowing" that Yadav was a threat, still made false claims about safety.  (Compl. ¶ 131.)  Plaintiff's basis for imputing this "knowledge" to Uber U.S. is the bare allegation that another rider in India submitted feedback claiming Yadav had stared at her inappropriately during a ride.  (Compl. ¶¶ 68–69.)

*Third*, some of the allegations are wholly unsupported.  Plaintiff states that Uber U.S. made misrepresentations about its driver screening and ride-tracking.  (Compl. ¶¶ 130–33.)  Yet nowhere in Complaint's factual allegations (beyond its recitations of elements) does Plaintiff offer any foundation for these representations.  Rule 9(b) requires that the Complaint allege who supposedly made these claims and when, what is false about them, and that those who made them *knew* they were false.

*Fourth*, the Complaint makes a single allegation about a statement on Uber's website that asserts Uber U.S.'s adherence to the "strictest" safety standards.  (Compl. ¶ 5.)  The Complaint fails to allege that this statement predated the events in question; that Plaintiff read it on the Uber website at some time before the lawsuit; or that Plaintiff relied on it in accepting the User Terms.

 In sum, the Complaint alleges not a *single statement* identified with particularity (date, speaker, falsity), let alone show reliance on it, to support her vague claims that Uber misled her about "safety and security measures."  (Compl. ¶ 91.)  Failure to "clearly identify" alleged misrepresentations alone requires dismissal.  *See, e.g., Leonberger v. Wells Fargo Bank*, 13–CV–01114–PJH, 2013 WL 3242298, at *2 (N.D. Cal. June 25, 2013).  Particularly on point is *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1192 (C.D. Cal. 2011), where foreign plaintiffs, as here, sought to hold California entities liable for an allegedly fraudulent "U.S.-based marketing message" disseminated abroad to them.  The Court found that the complaint failed to allege how exactly the plaintiffs relied on the supposedly fraudulent advertising.  It dismissed their attempt to attribute "worldwide impact" to "California-based decision[s]" about marketing where plaintiffs offered no sufficient link between the two.  *Id.*

## B.    The Complaint's Claims of Negligent Infliction of Emotional Distress and General Negligence Fail as a Matter of Law

The Complaint alleges that Uber U.S. should be liable for negligent infliction of emotional distress (Compl. ¶ 169), and, affording a liberal interpretation of Plaintiff's first cause of action,

1   alleges generally that Uber U.S. negligently breached its duty of care to Plaintiff.  (*Id.* ¶ 124.)

2   The claim for negligent infliction of emotional distress fails.  The Complaint does not

3   sufficiently allege that Uber U.S. committed negligence.  California law does not recognize an

4   independent duty to "avoid negligently causing emotional distress to another . . . unless the defendant

5   has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object." *Gu v.*

6   *BMW of N. Am., LLC*, 132 Cal. App. 4th 195, 204 (2005) (citations omitted); *Evan F.*, 8 Cal. App.

7   4th at 838 (in sexual-assault case alleging vicarious liability, failure of plaintiff's negligent-hiring

8   claim precludes negligent infliction of emotional distress claim).

9   The Complaint's general negligence claim also fails.  It alleges that Uber U.S. breached its

10   "duty to protect its customers."  (Compl. ¶ 12.)  This is a legal conclusion that the Court need not

11   accept; in California the "existence of a legal duty on the part of the defendant is a question of law to be

12   determined by the court." *Duste v. Chevron Prods. Co.*, 738 F. Supp. 2d 1027, 1037 (N.D. Cal. 2010).

13   Even if this allegation was considered factual, not legal, it is conclusory and for *that* reason need not be

14   accepted.  The inquiry is whether there was a "duty to protect" against the specific harm suffered.

15   *Juarez,* 81 Cal. App. 4th at 401–02.  The "critical element" is "foreseeability of harm." *Id.* at 402.  The

16   duty alleged by Plaintiff is a duty to protect a rider from a "brutal kidnap and rape."  (Compl. ¶ 12.)

17   But a long line of cases holds that sudden sexual assaults are by definition not "foreseeable"—a term

18   courts define as acts "sure to occur" in the ordinary course of a defendant's enterprise, like, say, an

19   occasional traffic accident.  Instead, sexual assaults are considered "startling" instances of some

20   combination of degeneracy and opportunism.  *Lisa M.*, 12 Cal. 4th at 299; *John R.*, 48 Cal. 3d at 450;

21   *Alma W.,* 123 Cal. App. 3d at 144.  No precedent in California holds otherwise.  The Complaint argues

22   that Yadav's action was "extreme and outrageous so as to exceed the bounds of decency in a civilized

23   society." (Compl. ¶ 162.)  Defendant agrees that this is *precisely* the sort of act that is not "foreseeable"

24   under California tort law and legally unattributable to Uber U.S.

25   Moreover, the Complaint fails to allege facts that might create an inference that a U.S.

26   corporation has a duty to control the malicious actions of a non-employee who contracted with a

27   foreign subsidiary.  (*See* Ex. 3 (TPA with Uber B.V.).)  With respect to duty, that is shaped by the

28   contract between Plaintiff and Uber B.V., which provides that Uber B.V. "under no circumstance

1  accepts liability in connection with…any acts, action, behaviour, conduct, and/or negligence on the

2  part of the Transportation Provider."  (*See* User Terms (provision entitled "Liability").)

3        Duty aside, there was also no breach or causation.  The Complaint speculates about what a

4  generic Uber entity might theoretically have done.  For instance, the Complaint suggests that Uber

5  entities might have adopted a "tracking system" to raise "alarms" about a driver's "detour."  (*Id.* ¶¶ 76–

6  78.)  But California courts reject extravagant hindsight suggestions that *might* have been taken and

7  which in turn *might* have prevented injury—never more than when the injury was caused by a third

8  party's unanticipated sexual assault.  For instance, in *Nola M. v. Univ. of S. Cal.*, 16 Cal. App. 4th 421,

9  436 & n.8 (1993), a university student's experts argued that factors leading to her rape were the

10 campus's excessive foliage, poor light, and weak security.  The court rejected this attempt to create

11 "abstract negligence," adding that to characterize a "failure to deter the wanton, mindless acts of

12 violence of a third person as the 'cause' of the victim's injuries" would make the defendant the "insurer

13 of the absolute safety of everyone."  *Id.* at 437–38.  The court said that what causes sexual assaults are

14 sexual assailants.  Judicial disapproval of post-hoc allegations is frequent in cases of third-party

15 violence.[9]  Here, the Complaint even more clearly fails to plead causation, where the User Terms

16 explicitly state that liability for the driver's actions rests with the driver—not the contracting Uber

17 entity, and the User Terms further specify that the services are provided by Uber B.V.—not Uber U.S.

18 (including statements appearing on the website).  *See* Exs. 1–2 (User Terms).

19 **V.    AMENDMENT WOULD BE FUTILE**

20       When a court grants a motion to dismiss, it should give leave to amend only if the amendment

21 would not be futile.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996).  As a matter of

22

23    [9]  *See, e.g., Constance B. v. California*, 178 Cal. App. 3d 200, 212 (1986) (in response to claim that
   better lighting might have prevented a sexual assault, court replied that "it is fanciful to speculate
24 that [the assailant's] direct path to the restroom entry might have detoured into and then out of the
   shadows"); *Noble v. L.A. Dodgers, Inc.*, 168 Cal. App. 3d 912, 917 (1985) (plaintiff cannot
25 simply "critique defendant's security measures and to compare them to some abstract standards"
   but must show that a particular defendant, under the circumstances, should be held liable for a
26 plaintiff's injury because of a failure to prevent the criminal actions of a third party"); *7735
   Hollywood Blvd. Venture v. Superior Court*, 116 Cal. App. 3d 901, 905 (1981) ("It would be
27 intolerable and grossly unfair to permit a lay jury, after the fact, to determine in any case that
   security measures were 'inadequate,' especially in light of the fact that the decision would always
28 be rendered in a case where the security had in fact proved to be inadequate").

law, Yadav was not an Uber U.S. employee.  *See* § I & III, *supra*.  This, by itself, defeats almost all

of the claims here.  And the Complaint is unable to allege facts beyond those asserted because no

such facts exist.  *See Shwarz*, 234 F.3d at 435 (affirming 12(b)(6) dismissal where allegations were

contradicted by judicially noticed facts and documents incorporated by reference).  A non-employee

cannot have been negligently "hired, supervised, or retained," nor can Plaintiff allege facts giving rise

to any plausible basis upon which Uber U.S. had a duty to her relating to the transportation services

provided by Yadav, or how Uber U.S. breached such a duty or caused the incident (first claim).

Without this negligence, Uber U.S. could not have "negligently" inflicted emotional distress (seventh

claim).  And Uber U.S. cannot be held vicariously liable for the acts of non-employee (third, fourth,

fifth, and sixth claims).  The remaining fraud allegation (second claim) fails procedurally because it

has not been pleaded with particularity and substantively because Uber U.S. made no untruthful

representations.  *Vess*, 317 F.3d at 1108.  It would be futile for Plaintiff to try to plead otherwise.

### CONCLUSION

Plaintiff alleges an assault that was perpetrated by a man named Shiv Kumar Yadav.  Yadav's

tortious conduct, if proven to be true, is deplorable, and Plaintiff may well be entitled to

compensation and redress against Yadav or another party.  However, for the foregoing reasons, Uber

U.S. had no relationship with Yadav (employment or otherwise), and is the wrong party to this

dispute.  Accordingly, the Court should dismiss the Complaint against Uber U.S. in its entirety,

without leave to amend.

Respectfully submitted, this 6th day of April 2015.

> MICHAEL LI-MING WONG
> PERLETTE MICHÈLE JURA
> PRIYANKA RAJAGOPALAN
> JOSEPH TARTAKOVSKY
> GIBSON, DUNN & CRUTCHER LLP
>
>
> By:  /s/ Michael Li-Ming Wong
>                   Michael Li-Ming Wong
>
> *Attorneys for Defendant UBER TECHNOLOGIES, INC.*