1   MICHAEL LI-MING WONG, SBN 194130
       mwong@gibsondunn.com
2   PRIYANKA RAJAGOPALAN, SBN 278504
       prajagopalan@gibsondunn.com
3   JOSEPH TARTAKOVSKY, SBN 282223
       jtartakovsky@gibsondunn.com
4   GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street, Suite 3000
5   San Francisco, CA 94105-0921
    Telephone: 415.393.8200
6   Facsimile:  415.393.8306

7   PERLETTE MICHÈLE JURA, SBN 242332
       pjura@gibsondunn.com
8   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
9   Los Angeles, CA  90071-3197
    Telephone: 213.229.7000
10  Facsimile:  213.229.7520

11  Attorneys for Defendant *UBER TECHNOLOGIES, INC.*

12

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO DIVISION

16  JANE DOE,                          CASE NO. 3:15-CV-00424 (SI)

17              Plaintiff,             **DEFENDANT UBER TECHNOLOGIES, INC.'S
                                       NOTICE OF MOTION AND MOTION TO DISMISS
18       v.                            PURSUANT TO (1) FORUM SELECTION CLAUSE;
                                       (2) *FORUM NON CONVENIENS*; (3) FED. R. CIV.
19  UBER TECHNOLOGIES, INC.,           P. 12(B)(7); AND (4) FED. R. CIV. P. 12(B)(3);
                                       SUPPORTING MEMORANDUM OF POINTS AND
20              Defendant.             AUTHORITIES**

21                                     Hearing
                                       Date:      July 10, 2015
22                                     Time:      9:00 a.m.
                                       Place:     Courtroom 10, 19th Floor
23                                                Hon. Susan Illston

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEF.'S NOTICE OF MOT. AND MOT. TO DISMISS PURSUANT TO FNC/RULE 12(B)(7)/RULE 12(B)(3)
CASE NO. 3:15-CV-00424 (SI)

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2          **DEFENDANT HEREBY GIVES NOTICE** that on Friday, July 10, 2015, at 9:00 a.m., or as

3    soon thereafter as the Court may hear the matter, in the courtroom of the Honorable Susan Illston,

4    located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Uber Technologies,

5    Inc. will, and hereby does, move this Court to dismiss the action pursuant to (1) forum-selection

6    clause; (2) *forum non conveniens*; (3) Rule 12(b)(7); and (4) Rule 12(b)(3).

7          This Motion is based upon this Notice of Motion and Motion, and the accompanying

8    Memorandum of Points and Authorities, the records and files in this action, on such additional papers

9    and arguments as may be presented at or before the hearing of this matter, and on the accompanying

10   Declarations of (1) Nakul Dewan; (2) Maarten J. Drop; (3) Bhavik Rathod; (4) Rob van der Woude;

11   (5) Jesse Lucas; and (6) Conrad Whelan.

12   Dated: April 6, 2015

13                                                    MICHAEL LI-MING WONG
                                                      PERLETTE MICHÈLE JURA
14                                                    PRIYANKA RAJAGOPALAN
                                                      JOSEPH TARTAKOVSKY
15                                                    GIBSON, DUNN & CRUTCHER LLP

16

17                                                    By:  /s/ Michael Li-Ming Wong
                                                                  Michael Li-Ming Wong
18
                                                      *Attorneys for Defendant UBER TECHNOLOGIES, INC.*
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ISSUES TO BE DECIDED ................................................................................................ 2

FACTUAL BACKGROUND .............................................................................................. 2

    A.    The Incident of December 5, 2014 ............................................................... 2

    B.    The Relevant Parties and Entities ................................................................. 3

    C.    The Applicable Agreements ........................................................................... 5

        1.    The Uber B.V. User Terms ................................................................. 6

        2.    The Uber B.V. Transportation Provider Agreement ......................... 7

ARGUMENT ....................................................................................................................... 9

I.    The Court Should Dismiss This Action Based on the Binding Agreement Selecting the Netherlands as the Proper Forum ................................................................. 9

    A.    Governing Legal Standard ............................................................................. 9

    B.    The User Terms Contain a Valid Forum-Selection Clause .......................... 10

        1.    Applicability of the User Terms ........................................................ 10

        2.    The Forum Selection Clause ............................................................. 12

    C.    The Public-Interest Factors Compel Dismissal ............................................ 13

II.    Irrespective of the Forum Selection Clause, this Court Should Dismiss this Action Pursuant to the Doctrine of *Forum Non Conveniens* ..................................... 15

    A.    Governing Legal Standard ............................................................................. 16

    B.    Either the Netherlands or India Would Constitute a Better Forum than the U.S. ........ 16

        1.    The Netherlands is An Adequate Alternative Forum ........................ 17

        2.    India is an Adequate Alternative Forum ........................................... 18

    C.    The private and public interest factors favor dismissal ................................ 18

        1.    Private factors .................................................................................... 18

        2.    Public factors .................................................................................... 21

III.    The Court Should Dismiss This Matter Pursuant to Rule 12(b)(7) ........................ 22

    A.    Governing Legal Standard ............................................................................. 22

    B.    Yadav Is a Necessary and Indispensable Party ............................................ 23

        1.    Yadav is a Necessary Party ............................................................... 23

        2.    Joining Yadav in this Action is Infeasible. ....................................... 24

1

3.      Yadav is an Indispensable Party. ...................................................................... 24

2

IV.     This Court Should Dismiss This Action Pursuant to Rule 12(b)(3) ........................................ 25

3

**CONCLUSION**............................................................................................................................... 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*Adema Techs. Inc. v. Wacker Chemie AG*,
2014 WL 3615799 (N.D. Cal. July 22, 2014)................................................ 9, 15

5

*Advanta Corp. v. Dialogic Corp.*,
2006 WL 1156385 (N.D. Cal. May 2, 2006) .......................................................... 18

6

*Albers v. PMP Access Fund Manager, LLC*,
2010 WL 2486369 (N.D. Cal. June 16, 2010) ........................................................ 24

7

*Atlantic Marine Construction Co. v. U.S. Dist. Ct. for W.D. Tex.*,
134 S. Ct. 568 (2013)............................................................................. 9, 10, 12, 15

8

*BMR & Assocs., LLP v. SFW Capital Partners, LLC*,
2015 WL 1071123 (S.D.N.Y. Mar. 10, 2015) ....................................................... 15

9

*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
918 F.2d 1446 (9th Cir. 1990)............................................................................... 21

10

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
276 F.3d 1150 (9th Cir. 2002)............................................................................... 24

11

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
375 F.3d 861 (9th Cir. 2004).................................................................................. 22

12

*EEOC. v. Peabody W. Coal Co.*,
400 F.3d 774 (9th Cir. 2005)........................................................................... 24, 25

13

*Encatto Ltd. v. Obscura Digital Inc.*,
2013 WL 394195 (N.D. Cal. Jan. 30, 2013) ...................................................  23, 25

14

*Fireman's Fund Ins. Co. v. Nat'l Bank for Coops.*,
1993 WL 341274 (N.D. Cal. Aug. 27, 1993).......................................................... 22

15

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)..................................................................... 11

16

*Gamayo v. Match.com LLC*,
2011 WL 3739542 (N.D. Cal. Aug. 24, 2011)........................................................ 25

17

*Gulf Oil*,
330 U.S. 501 (1947).................................................................................................. 21

18

*Gustafson v. BAC Home Loans Servicing, LP*,
2012 WL 4761733 (C.D. Cal. Apr. 12, 2012) ........................................................ 14

19

*In re Air Crash over the Mid-Atlantic on June 1, 2009*,
760 F. Supp. 2d 832 (N.D. Cal. 2010) .................................................................... 17

20

*In re Air Crash*,
893 F. Supp. 2d 1020 (C.D. Cal. 2011),
*amended in part on other grds*, 2011 WL 2183972 (C.D. Cal. May 16, 2011),
*aff'd*, 504 F. App'x 573 (9th Cir. 2013)................................................................. 25

21

*In re Apple iPhone Antitrust Litig.*,
874 F. Supp. 2d 889 (N.D. Cal. 2012) .................................................................... 23

22

*In re Toyota Motor Corp.*,
785 F. Supp. 2d 883 (C.D. Cal. 2011) ............................................................... 23, 24

*International Shoe Co. v. Wash.*,
   326 U.S. 310 (1945)...................................................................................................... 24

*Kiobel v. Royal Dutch Petroleum Co.*,
   133 S. Ct. 1659 (2013).................................................................................................. 14

*Lockman Found. v. Evangelical Alliance Mission*,
   930 F.2d 764 (9th Cir. 1991)......................................................................................... 17

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
   583 F.3d 656 (9th Cir. 2009)......................................................................................... 17

*Lueck v. Sundstrand*,
   236 F.3d, 1137 (9th Cir. 2001)................................................................................. passim

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)................................................................................................... 10, 13

*Manetti–Farrow v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988)................................................................................... 10, 11

*Monastiero, v. appMobi, Inc.*,
   2014 WL 1991564 (N.D.Cal. May 15, 2014) ................................................................ 9

*Neo Sack, Ltd. v. Vinmar Impex, Inc.*,
   810 F. Supp. 829 (S.D. Tex. 1993) .......................................................................... 19, 20

*Newman v. Lifeline Sys., Co.*,
   (D. Ariz. July 7, 2009) .................................................................................................. 11

*Nike, Inc. v. Comercial Iberica*,
   20 F.3d 987 (9th Cir. 1994) .......................................................................................... 24

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)................................................................................................. passim

*Potomac Capital Inc. Corp. v. Koninklijke Luchtvaapt Maatschapplij N.V.*,
   1998 WL 92416 (S.D.N.Y. Mar. 4, 1998) ................................................................... 18

*Randhawa v. Skylux Inc.*,
   2013 WL 3354453 (E.D. Cal. July 3, 2013) ................................................................ 14

*Russel v. De Los Suenos*,
   2014 WL 1028882 (S.D. Cal. Mar. 17, 2014) ............................................................. 15

*SaleBuild, Inc. v. Flexisales, Inc.*,
   2013 WL 6681498 (D. Nev. Dec. 17, 2013)................................................................ 14

*Seagal v. Vorderwuhlbecke*,
   162 F. App'x 746 (9th Cir. 2006) ................................................................................ 11

*Shields v. Barrow*,
   58 U.S. 130 (1855)........................................................................................................ 25

*Starlight Co. v. Arlington Plastics Mach., Inc.*,
   2001 WL 677908 (N.D. Cal. June 8, 2001) ................................................................. 13

*Swift v. Zynga Game Network*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011) ......................................................................... 11

*Tompkins v. 23andMe, Inc.*,
   2014 WL 2903752 (N.D. Cal. June 25, 2014) ............................................................. 11

*United States v. Bowen*,
   172 F.3d 682 (9th Cir. 1999)................................................................................... 22, 23

Gibson, Dunn &

iv

*Vivendi S.A. v. T-Mobile USA, Inc.*,
    2008 WL 2345283 (W.D. Wash. June 5, 2008), *aff'd*, 586 F.3d 689 (9th Cir. 2009) .................... 17

*Warn v. M/Y Maridome*,
    961 F. Supp. 1357 (S.D. Cal. 1997), *aff'd*, 169 F.3d 625 (9th Cir. 1999) ........................................ 17

*White v. Univ. of Calif.*,
    765 F.3d 1010 (9th Cir. 2014) .......................................................................................................... 24

## STATUTES

28 U.S.C § 1391(a) ............................................................................................................................ 25

28 U.S.C. § 1332(a) ........................................................................................................................... 24

## OTHER AUTHORITIES

Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,
    opened for signature Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 ........................................ 20

Sheila L. Birnbaum, *Foreign Plaintiffs and Forum Non Conveniens*, 16 BROOK. J. INT'L
    L. 241, 246–47 (1990) ...................................................................................................................... 13

## RULES

Fed. R. Civ. P. 12(b)(3) ....................................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. passim

Fed. R. Civ. P. 12(b)(7) ....................................................................................................................... 9

Fed. R. Civ. P. 19(a) .......................................................................................................................... 23

Fed. R. Civ. P. 45(c)(1) ..................................................................................................................... 20

## CONSTITUTIONAL PROVISIONS

CAL. CONST. art. I, § 7 ...................................................................................................................... 16

U.S. CONST. amend. XIV, § 1 ........................................................................................................... 16

Gibson, Dunn &

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3      This case is not about whether a woman who was sexually assaulted can pursue an action

4  against those who are responsible under the law.  Sexual assault, in any and all forms, is deplorable,

5  and Plaintiff has avenues of redress available to her—in the Netherlands and India—for the assault

6  she claims Shiv Kumar Yadav ("Yadav") perpetrated against her.  But this Court is not the proper

7  forum for this dispute, nor is Defendant Uber Technologies, Inc. ("Uber U.S.") the proper defendant.

8      Plaintiff Jane Doe is an Indian citizen who alleges that Yadav (another Indian citizen)

9  sexually assaulted her while he was driving her home in India, on December 5, 2014.  Plaintiff asks

10 this Court to hold Uber U.S. liable for this assault because the ride in question was arranged through

11 the Uber software application ("App").  But no one in India contracted with Uber U.S. for the

12 December 5 ride; nor does Uber U.S. have any relationship—whatsoever—with Yadav.[1]   In fact,

13 Uber U.S. does not contract with India-based drivers or riders who use the App in India.  Rather,

14 those riders and drivers explicitly contract with Dutch company, Uber B.V.

15     The B.V. User Terms specifically provide that a dispute such as this should be resolved under

16 Dutch law, in the Netherlands—not under U.S law and not in a U.S. court.  Additionally, unlike the

17 U.S. criminal process, victims of sexual assault in India can obtain civil remedies as part of the Indian

18 criminal process.  Because criminal proceedings have already started against Yadav in India, Plaintiff

19 has this additional avenue of redress available to her.  For these reasons and the many reasons set

20 forth below, a federal court in San Francisco is plainly the wrong forum for this dispute.

21 Accordingly, in addition to Uber U.S.'s concurrently filed Motion to Dismiss Pursuant to Fed. R.

22 Civ. P. 12(b)(6), Uber U.S. respectfully moves to dismiss Plaintiff's Complaint from this District on

23 the following grounds, each of which constitutes an independently sufficient basis for dismissal:

24

25

26  [1]  Yadav is not an "employee" of any Uber entity because he is a self-employed, commercially
        licensed driver operating pursuant to government-issued licenses from transport authorities in
27      Delhi and Uttar Pradesh, India.  Even if he were an employee, he most certainly is not Uber
        U.S.'s employee, as he has no contractual relationship whatsoever with Uber U.S.  Yadav's only
28      contractual tie to any Uber entity is his agreement with non-party Uber B.V.

*First,* this Court should dismiss the Complaint because there is a binding forum-selection clause requiring resolution of this dispute in the Netherlands.

*Second,* independent of the forum-selection clause, the doctrine of *forum non conveniens* requires dismissal because California is not the correct forum for this dispute.  The key witnesses and events are located overseas, as are the key parties.  Other than Plaintiff's counsel improperly naming Uber U.S. as a defendant, there is not a single witness based in the U.S. who could offer relevant testimony in a trial of this action.  The countries with the greatest interest in this litigation are the Netherlands and India, and Plaintiff can avail herself of either forum to seek redress.

*Third*, a trial in this District would be profoundly unfair, even impossible, because of the absence of a vital party—the primary alleged wrongdoer, Yadav—who is beyond the reach of U.S. jurisdiction.  Accordingly, Rule 12(b)(7) likewise compels dismissal.

*Finally*, because the only potentially proper defendants are neither named in this suit nor subject to this Court's jurisdiction, Rule 12(b)(3) requires dismissal, based on improper venue.

## ISSUES TO BE DECIDED

1.  In light of the forum-selection clause selecting the Netherlands as the forum for this dispute, and the choice-of-law provision specifying Dutch law, should the Court dismiss this action?

2.  Independent of the forum-selection clause, given that virtually all of the key parties, witnesses and evidence are located overseas, should the Court dismiss this action from the United States, based on the doctrine of *forum non conveniens*?

3.  Given that the Complaint alleges vicarious liability for torts allegedly committed by Yadav, and that Yadav is beyond this Court's jurisdiction, should the Court dismiss for failure to join a necessary and indispensable party?

4.  Should the Court dismiss pursuant to Rule 12(b)(3) based on improper venue?

## FACTUAL BACKGROUND

### A.    The Incident of December 5, 2014

This Complaint arises from alleged conduct occurring on December 5, 2014 in New Delhi, India.  (Compl. ¶ 7.)  Plaintiff alleges that, with the help of her friend Ayush Dabas,[2] she used the

---

[2]  Because of his interviews with the press and his testimony at the Indian criminal proceeding against Yadav, Dabas's identity is already a matter of public record.

Uber App to request a ride home from Yadav.  (*Id.* ¶¶ 25–27.)  She alleges that Yadav picked her up at a marketplace in New Delhi, but instead of driving her directly home, he stopped driving, sexually assaulted her, and then resumed driving and dropped her off near residence.  (*Id.* ¶¶ 7, 41.)  Indian law enforcement arrested Yadav and brought criminal charges against him.  (*Id.* ¶ 56.)

### B.    The Relevant Parties and Entities

The Uber concept encompasses a network of technology entities that license cutting-edge mobile applications connecting independent transportation providers and riders around the world. (*See* Declaration of Jesse Lucas ("Uber U.S. Decl.") ¶¶ 4, 6.)  Uber entities provide a smartphone application service used by transportation providers, or driver partners, to find riders in need of transportation, and vice versa.  (*Id.* ¶ 4; Declaration of Rob van der Woude ("Uber B.V. Decl.") ¶ 4.) Thus, via the App service, drivers are able to receive and accept (or reject) rider requests for transportation.  (Uber U.S. Decl. ¶ 4; Uber B.V. Decl. ¶ 4.)  Neither Uber U.S. nor Uber B.V. owns vehicles or employs drivers.  (Uber U.S. Decl. ¶ 14; Uber B.V. Decl. ¶ 19.)  Rather, independent third-party drivers pay a service fee to the Uber entity with whom they contract, as consideration for their use of the App to locate riders requesting transportation services.  (Uber U.S. Decl. ¶¶ 4, 15; Uber B.V. Decl. ¶ 4.)

While the Complaint misleadingly claims that "opening the Uber app and setting the pick-up location has proven to be the modern day equivalent of electronic hitchhiking," (Compl. ¶ 1), this is neither legally relevant nor accurate.  For example, Uber India performed a safety screening for Mr. Yadav before he was allowed to sign up to use the Uber platform as a driver.  (Declaration of Bhavik Rathod ("Uber India Decl.") ¶ 15.)  This required Yadav to present government-approved documentation from the relevant authorities in Delhi and Uttar Pradesh at Uber India's New Delhi office.  (*Id.*)  In fact, the UberX platform in New Delhi, India is available only to commercially licensed, professional drivers, such as Yadav.  (*Id.* ¶ 18.)

•   ***Uber U.S.,*** the sole defendant, is the parent company in a group of more than 110 related but distinct Uber entities operating around the world.  (Uber U.S. Decl. ¶ 6.)  It would be impossible for Uber U.S. to navigate the regulatory frameworks and local market peculiarities, as well as manage the day-to-day operations and protocols associated with providing the Uber platform, in the

Gibson, Dunn &
Crutcher LLP

3

Memo of Pts. And Auths. ISO Uber's FNC/12(b)(7)/Rule 12(b)(3) Mot. to Dismiss – Case No. 15-cv-00424

approximately 300 cities and more than 55 countries around the world where Uber technology is available.  (*Id.* ¶ 6; Uber B.V. Decl. ¶¶ 16, 17, 20.)  Employees of Uber U.S. are thus responsible for operations related to the App within the United States.  (Uber U.S. Decl. ¶¶ 11–13.)  Outside of the United States, Uber B.V. licenses the App and contracts with riders, livery companies, and taxi drivers who download and use the App overseas.  (Uber B.V. Decl. ¶¶ 4, 14–16.)

• ***Uber B.V.*** is a private Dutch technology company incorporated under Dutch law, with its corporate seat in Amsterdam.  (Uber B.V. Decl. ¶¶ 5–7.)  Uber B.V. has no U.S. operations.  (*Id.* ¶ 13.)  It is a partially owned indirect subsidiary of and separate legal entity from Uber U.S.,[3] and has more than 60 employees, all of whom live and work outside the United States.  (*Id.* ¶¶ 5–12.)  Uber B.V. and its affiliates manage the relationships with India-based riders and transportation providers using the App in India.  (*Id.* ¶ 15.)  Accordingly, all India-based riders who sign up to use the Uber App in India enter into user agreements with Uber B.V.—not Uber U.S. (*Id.* ¶ 22.)  Likewise, non-U.S. livery and taxi transportation service providers contract with, and pay service fees to, Uber B.V. (not Uber U.S.) to use the App to receive riders' transportation requests.  (*Id.* ¶ 15.)

• ***Uber India Systems Private Limited*** ("Uber India") is an Indian entity based in Mumbai, India, with an office in New Delhi.  (Uber India Decl. ¶¶ 2, 4.)  Uber India is responsible for marketing and support services relating to the App in India dealing with, among other things*,* rider payment processing and driver screening.  (*Id.* ¶¶ 5, 9–11.)  Uber India is also the employer of more than 50 individuals.  (*Id.* ¶ 7)[4]  Though the Complaint does not name Uber India as a defendant in this action, it alleges that the police sought information about Yadav and his whereabouts from employees at Uber's "Delhi headquarters" as part of the investigation of the alleged assault.  (Compl. ¶ 51.)  Yadav's access to the Uber platform to receive ride requests was terminated as soon as the police informed Uber India about his alleged actions.  (Uber India Decl. ¶ 19.)

---

[3]  Uber B.V. is a subsidiary of Uber International B.V., a private Dutch company incorporated in the Netherlands.  Uber International B.V. is a subsidiary of Uber International C.V., a Dutch limited partnership incorporated in Bermuda.  Uber U.S. owns the majority of Uber International C.V. partnership interests.  (Uber B.V. Decl. ¶ 5.)

[4]  This structure, where the in-country entity provides support services to Uber B.V., is consistent for all non-U.S. operations.  (Uber B.V. Decl. ¶ 16.)

• ***Shiv Kumar Yadav*** is a citizen of India and a self-employed, commercially-licensed driver who ran a professional driving business.  (Uber India. Decl. ¶¶ 14, 16, 18.)  According to the government-issued documentation given to Uber India for his safety screening, Yadav had a valid driver's license from the Registering Authority of the Taxi Unit in Uttar Pradesh and a commercial vehicle registration from the Delhi Department of Transport (which could be obtained only after the Delhi police screened and evaluated him).  (*Id.* ¶¶ 15–16.)  He had been a taxi driver for several years prior to using the Uber App.  (*Id.* ¶ 16.)  Yadav, like all drivers opening an Uber account in India, entered into an agreement with Uber B.V. making clear the absence of any employment relationship between Uber B.V. and transportation providers and making clear that transportation providers are solely responsible for claims or complaints from passengers.  (*See* Declaration of Conrad Whelan ("Whelan Decl.") ¶ 12, Ex. 5 ("Transportation Provider Agreement").)  Uber U.S. did not contract with Yadav and has never had any relationship with Yadav.  (Uber U.S. Decl. ¶ 16.)

• Plaintiff ***Jane Doe*** is also a citizen of India.  (Compl. ¶ 17.)  Plaintiff was a "loyal Uber customer" (*id.* ¶ 7), who used the App in New Delhi with her friend, Dabas, to request a ride from Yadav on December 5, 2014.  (*Id.* ¶¶ 25–26.)  Her use of the App on December 5, 2014 was governed by the Uber B.V. User Terms, which, among other things, designate the Netherlands as the forum for any dispute and contain a Dutch choice-of-law provision.  (Whelan Decl. Ex. 4.)

• ***Ayush Dabas*** is a user of the App in India.  (Whelan Decl. ¶¶ 4, 6.)  Like Jane Doe, his use December 5 use of the App was subject to Uber B.V.'s User Terms.  (*See id.* ¶¶ 4, 6, 9, Ex. 3.)

## C.    The Applicable Agreements

Before any rider or driver can access the Uber mobile platform, he or she first must consent to the User Terms or Transportation Provider Agreement, respectively.  India-based users seeking rides in India enter into a "User Terms" Agreement with Uber B.V., and they must agree to all the terms as a condition of using the App.  (Whelan Decl. ¶¶ 4–7.)  If users do not agree with the terms they do not need to complete their registration, but then cannot use the services.  (*See id.*)  Drivers in India who wish to use the App must enter into a Transportation Provider Agreement with Uber B.V., which sets forth the terms of agreement between Uber B.V. and the driver.  (*Id.* ¶ 12.)

### 1. The Uber B.V. User Terms

Plaintiff registered for the App on August 18, 2014, in New Delhi, India. (Whelan Decl. ¶ 5.) The Complaint alleges that Dabas requested the Yadav ride for Plaintiff on his phone. (Compl. ¶ 26.) Dabas registered for the App on March 29, 2014, also in India. (Whelan Decl. ¶ 6.) Like all App users, Jane Doe and Dabas were each required to consent to the User Terms as a condition of using the App. *(See id.* ¶ 7.) The Uber B.V. User Terms that were in force on the dates that Plaintiff and Dabas created their accounts are attached. (*See* Whelan Decl. ¶ 9, Exs. 4 ("Jane Doe User Terms") & 3 ("Dabas User Terms") (collectively, "User Terms").) In all material respects, these User Terms are identical, and set forth many provisions relevant here:[5]

*First*, the User Terms provide that the User Terms "apply to your visit to and your use of [the] website at www.uber.com, the Service and the Application (as defined below), as well as to all information, recommendations and/or services provided to [Plaintiff] on or through the Website, the Service and the Application." (Whelan Decl. Exs. 3 & 4 at 1.)

*Second*, the User Terms make clear that the "contract partner is Uber B.V., a private limited liability company established in the Netherlands, having its offices at Vijzelstraat 68, 1017 HL, Amsterdam, The Netherlands[.]" (*Id.*) The User Terms define "Uber" to mean "Uber B.V." (*Id.*)

*Third*, the User Terms set forth the bounds of the Uber "Service," explaining that Uber B.V. provides a means by which to obtain transportation services from third party transportation providers:

> Uber offers information and a means to obtain transportation services offered by third party transportation providers, drivers or vehicle operators (the "Transportation Provider"), which may be requested through the use of an application . . . on your single mobile device (smart phone) (the "Application"). All services provided by Uber to you by means of your use of the Application are hereafter referred to as the "Service."

---

[5] Plaintiff does not allege which User Terms she believes govern her use of the App. In an abundance of caution, we have attached the versions of the Uber B.V. User Terms in force on the dates that both Jane Doe and Dabas signed up. The User Terms in force when Jane Doe signed up on August 18, 2014, remained unmodified on December 5, 2014. To the extent that Uber B.V. modified the User Terms between the times when Plaintiff and Dabas accepted them, the terms relevant to this matter remained exactly the same. (*Compare* Whelan Decl. Ex. 3 at 1, 2, 4, 8–9 *with* Whelan Decl. Ex. 4 at 1, 2, 4, 8.) While Plaintiff has chosen to sue only Uber U.S., she does not allege that this incident occurred in the U.S. or that it is somehow governed by the Uber U.S. User Terms. If she did, the U.S. User Terms contain a binding arbitration provision and so would foreclose a lawsuit in federal court. (Uber U.S. Decl. ¶ 18.)

Gibson, Dunn & Crutcher LLP

6

Memo of Pts. And Auths. ISO Uber's FNC/12(b)(7)/Rule 12(b)(3) Mot. to Dismiss – Case No. 15-cv-00424

(*Id.*)  The User Terms further specify: "Uber itself does not provide transportation services, and Uber is not a transportation carrier. It is up to the Transportation Provider to offer transportation services, which may be requested through the use of the Application and/or the Service. Uber only acts as intermediary between you and the Transportation Provider."  (*Id.* at 2.)

*Fourth*, the User Terms make clear that "the quality of the transportation services requested through the use of the Application or the Service is entirely the responsibility of the Transportation Provider who ultimately provides such transportation services to you. Uber under no circumstance accepts liability in connection with and/or arising from the transportation services provided by the Transportation Provider or any acts, actions, behaviour, conduct, and/or negligence on the part of the Transportation Provider."  (*Id.* at 4.)

*Fifth*, the User Terms specify that the use of the App is "subject to the laws of the Netherlands."  (*Id.* at 8.)  They further provide (*id.* at 8–9):

> Any dispute, claim or controversy arising out of or relating to these User Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Website, the Service or the Application (collectively, "Disputes") will be settled exclusively by the competent court in Amsterdam, the Netherlands, unless you notify Uber within one month after Uber invoking its right pursuant to this provision to commence court proceedings in Amsterdam, the Netherlands, that you demand settlement of the dispute, claim or controversy at hand before the relevant court competent by law.

On February 3, 2015, counsel for Uber B.V. notified Plaintiff's counsel that pursuant to the User Terms, the dispute should proceed in the Netherlands.  (Uber B.V. Decl. ¶ 23, Ex. 2.)  On February 4, Plaintiff's counsel disputed this contention.  (*Id.* ¶ 24, Ex. 3.)  On February 12, counsel for Uber B.V. responded to Plaintiff and clarified that under Dutch law, the United States is neither a "relevant" nor "competent" court to hear this dispute.  (*Id.* ¶ 25, Ex. 4.)  On February 13, Plaintiff's counsel again rejected the Netherlands, "or any jurisdiction other than the Northern District of California," as the "relevant court of competent law" for this dispute.  (*Id.* ¶ 26, Ex. 5.)

## 2.    The Uber B.V. Transportation Provider Agreement

All livery and taxi drivers who wish to use the App in India must first provide proper documentation to Uber India for a safety screening and must agree to the Uber B.V. Transportation Provider Agreement.  (Uber India Decl. ¶ 11; Whelan Decl. Ex. 5.)  Yadav presented documentation

1    to Uber India on or about June 26, 2014 and agreed to the Transportation Provider Agreement on

2    June 27, 2014.  (Uber India Decl. ¶ 15; Whelan Decl. ¶ 12)  The Transportation Provider Agreement

3    contains a number of provisions highly relevant to this case:

4         *First*, consistent with the User Terms, the Transportation Provider Agreement makes clear

5    that Yadav's relationship was with Uber B.V. (not Uber U.S.).  (Whelan Decl. Ex. 5 at 1.1.1.)

6         *Second*, the Transportation Provider Agreement establishes that Uber B.V. merely provides an

7    electronic tool enabling customers seeking transportation to find independent drivers who can

8    provide them with transportation services; Uber B.V. does not itself employ drivers or transportation

9    service providers of any kind.  (*Id.* at 2.1.1, 2.2.1.)

10        *Third*, the Transportation Provider Agreement states that "Uber has no responsibility or

11   liability for any driving or transportation services provided by the Partner or the Drivers to third

12   parties (including the Customers). The Partner and/or the Drivers will be solely responsible for any

13   and all liability which results or is alleged to be as a result of the operation of the Vehicle(s) and/or

14   the driving or transportation service." (*Id.* at 2.1.1.)

15        *Fourth*, the Transportation Provider Agreement explicitly disclaims any employer-employee

16   or principal-agent relationship.  The agreement provides: "By providing the Driving Service to the

17   Customer, the Partner accepts, agrees and acknowledges *that a direct legal relationship is created*

18   *and assumed solely between the Partner and the Customer. . . .*" (*Id.* at 2.1.1 (emphasis added).)  The

19   relationship between Uber and the drivers and partners is thus strictly circumscribed: "The Parties

20   expressly agree that this Agreement cannot be regarded as an employment agreement or employment

21   relationship and that Uber. . .exclusively provid[es] an intermediary service to the Partner in return

22   for a Commission." (*Id.* at 6.3.2.)

23        *Fifth*, the Transportation Provider Agreement indicate that "nothing in the Agreement shall

24   create an employment relationship between Uber and the Partner and/or the Driver or create either of

25   them an agent of Uber.  The Partner acknowledges and agrees that he has no authority to bind Uber

26   and undertakes not to hold himself out and to procure that the Driver does not hold himself out, as an

27   agent or authorized representative of Uber." (*Id.* at 2.2.1.)  Further, each driver has their own

28   insurance in the event that riders bring claims against them.  (Uber India Decl. ¶ 17.)

* * *

Plaintiff has not named Yadav as a party to this suit.  (*See* Compl.)  Instead, she alleges that Uber U.S.—which neither facilitated Plaintiff's ride on December 5, 2014, nor has any relationship with Yadav—is nonetheless liable for Yadav's alleged crime.  (Compl. ¶¶ 60, 80.)  The Complaint seeks to hold Uber U.S. responsible for Yadav's alleged wrongs under vicarious-liability statute-law theories, including assault, battery, false imprisonment, intentional and negligent infliction of emotional distress, and general theories of fraud and negligence.  (*Id*. ¶¶ 122–174.)

## ARGUMENT

In addition to the grounds set forth in Uber's concurrently filed Rule 12(b)(6) motion to dismiss, Uber U.S. respectfully moves to dismiss the Complaint with prejudice for four independent reasons: (1) the User Terms' forum-selection clause requires dismissal pursuant to *Atlantic Marine Construction Co. v. U.S. Dist. Ct. for W.D. Tex.*, 134 S. Ct. 568 (2013); (2) irrespective of the forum-selection clause, the common law doctrine of *forum non conveniens* requires dismissal; (3) Rule 12(b)(7) independently compels dismissal, based on the absence of Yadav, a necessary and indispensable party; and (4) Rule 12(b)(3) requires dismissal for improper venue.

**I.     THE COURT SHOULD DISMISS THIS ACTION BASED ON THE BINDING AGREEMENT SELECTING THE NETHERLANDS AS THE PROPER FORUM**

Because the B.V. User Terms select the Netherlands as the forum for any dispute arising out of use of the App, this Court should dismiss this action.  *Adema Techs. Inc. v. Wacker Chemie AG*, 2014 WL 3615799, at *2 (N.D. Cal. July 22, 2014) ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.") (internal quotation omitted).  According to the Supreme Court, the selected forum "should be given controlling weight in all but the most exceptional cases."  *Atlantic Marine*, 134 S. Ct. at 581 (internal quotation omitted); *see also Monastiero, v. appMobi, Inc.*, 2014 WL 1991564, at *3 (N.D.Cal. May 15, 2014) ("In all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain.").

### A.     Governing Legal Standard

The existence of a valid forum-selection clause requires a reviewing court to apply a modified version of the traditional *forum non conveniens* analysis set forth in *Piper Aircraft Co. v. Reyno*, 454

U.S. 235, 241 n.6 (1981). *See Atlantic Marine*, 134 S. Ct. at 581.[6] This test requires the court to evaluate only the *Piper Aircraft* public-interest factors in considering whether to dismiss in deference to a forum-selection clause. *See id.* at 582. "The practical result is that forum-selection clauses should control except in unusual cases." *Id.* Further, the court must "deem the private-interest factors to weigh entirely in favor of the preselected forum," and give no weight to Plaintiff's choice of forum. *Id.* at 581 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17–18 (1972).

**B.   The User Terms Contain a Valid Forum-Selection Clause**

*1.   Applicability of the User Terms*

All of Plaintiff's claims arise from either her use, or Mr. Dabas's use on her behalf, of the App in India. Hence they fall within the scope of the Uber B.V. User Terms. (*See* Whelan Decl. Exs. 3 & 4 at 8–9 ("Any dispute, claim or controversy arising out of or relating to . . . the use of the Website, the Service or the Application . . . will be settled . . . .")).[7] Although Uber U.S. is not a signatory to Uber B.V.'s User Terms, Uber U.S. is nevertheless entitled to enforce the forum-selection clause under the circumstances presented here. "[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum-selection clauses." *Manetti–Farrow v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). Non-parties, such as Uber U.S.,

---

[6]   As discussed in Part II below, *Piper Aircraft* requires courts deciding *forum non conveniens* dismissal to evaluate both the convenience of the parties and various public interest considerations (commonly referred to as the "private" and "public" interest factors). Private interest factors include: (1) residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Lueck v. Sundstrand*, 236 F.3d, 1137, 1145 (9th Cir. 2001). Public interest factors include: (1) local interest of lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. *Id.*

[7]   The User Terms delineate the bounds of the service provided (and just as importantly, not provided), and what rights and duties, if any, an Uber entity might have had through its provision of the Uber mobile application to Plaintiff. (*See* Whelan Decl. Exs. 3 & 4.) Plaintiff alleges that she was a loyal user of the App in India. (*See* Compl. ¶ 7.) She alleges that Dabas used the App to obtain transportation services for her near New Delhi. (*See id.* ¶ 26.) Further, she claims that because Uber U.S. misrepresented its safety standards to her, and negligently failed in its duty to appropriately screen drivers (or "Transportation Providers" according to the language of the User Terms) like Yadav to protect its users, Uber U.S. put Plaintiff in a position to be assaulted by Yadav and proximately caused her injury. (*See id.* ¶¶ 130–138.) As a result, the entire alleged relationship between Plaintiff and any Uber entity is defined and circumscribed by the User Terms.

can enforce a contract containing a forum-selection clause "where the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum-selection clause applies to all defendants." *Id.*[8]

Because Jane Doe's claims arise from her or her friend's use of the App, they relate to the terms underlying that use, and they are subject to the choice-of-law and forum-selection provisions within the User Terms. *Manetti*, 858 F.2d at 514 (finding that forum-selection clause governed all of plaintiff's tort claims since they were related "in some way to rights and duties enumerated in the . . . contract."). Courts consistently agree that a forum-selection clause using the phrase "arising out of or relating to" should be construed to "include disputes between the parties having a significant relationship" to the contract "as well as disputes having their origin or genesis" in the contract. *Seagal v. Vorderwuhlbecke,* 162 F. App'x 746, 747–48 (9th Cir. 2006); *Newman v. Lifeline Sys., Co.*, at *8 (D. Ariz. July 7, 2009) (finding that "broad language" of forum-selection clause encompassed negligence action because "relationship between Plaintiff and Defendant came into existence solely because of the Agreement . . . Plaintiff's claim relates in some way to the rights and duties enumerated in the Agreement; . . . [and] plain language of the forum-selection clause—cover[ed] any actions 'relating to' the Agreement") (citations omitted); (*see also* Declaration of Maarten J. Drop ("Drop Decl.").)

Where, as here, the website or mobile application provides the user with notice and an opportunity to review user terms prior to registering for a service, those terms are fully enforceable. *See, e.g.*, *Swift v. Zynga Game Network*, 805 F. Supp. 2d 904, 911–12 (N.D. Cal. 2011) (enforcing arbitration clause in terms of service where "Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button"); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014) (same); *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834–35, 839 (S.D.N.Y. 2012); (Drop Decl. ¶¶ 14, 22).

---

[8]   As Uber U.S. explains in its concurrently-filed Rule 12(b)(6) motion, Plaintiff has named the wrong party. (Dkt. 29.) Therefore, the "alleged conduct" of Uber U.S. is "closely related to the contractual relationship at issue" because that alleged conduct has been misattributed to Uber U.S. and properly concerns Plaintiff's relationship to a distinct Uber entity. (*See id.*)

### 2.     *The Forum Selection Clause*

The User Terms, which are governed by Dutch law, select the Netherlands as the proper forum—and Dutch law as the applicable law—for this dispute:

> These User Terms are subject to the laws of the Netherlands.  Any dispute, claim or controversy arising out of or relating to these User Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Website, the Service or the Application (collectively "Disputes") will be settled exclusively by the competent court in Amsterdam, the Netherlands unless you notify Uber within one month after Uber invoking its right pursuant to this provision to commence court proceedings in Amsterdam, the Netherlands, that you demand settlement of the dispute, claim or controversy at hand before the relevant court competent by law."

(Whelan Decl. Exs. 3 & 4 at 8–9).  While the presumptive forum is the "competent court in Amsterdam, the Netherlands" (*see* Drop Decl. ¶¶ 9, 26–27.), the forum-selection clause grants Plaintiff an "opt out" right that permits her to demand, as an alternative to Amsterdam, resolution in "the relevant court competent by law."  But this does not alter the choice-of-law provision specifying "the law of the Netherlands" as the parties' agreed-upon choice of applicable law for resolution of this dispute.[9]  (*Id.* ¶¶ 25–26); *Atlantic Marine*, 134 S. Ct. at 575 (ordering dismissal pursuant to forum-selection clause designating multiple courts in Virginia).

Here, Plaintiff failed to select an alternative "relevant" and "competent" court under Dutch law within the specified one-month window, rendering Amsterdam the proper district in the Netherlands for the dispute.  (Drop Decl. ¶¶ 26–27 (Plaintiff's contractual right was to select an alternative Dutch court, otherwise Amsterdam becomes the forum)); *see also* § C.1, *supra* [discussing letter exchange with Plaintiff's counsel].  Even if Plaintiff had not waived her opt-out right, the forum-selection clause still forecloses suit in the United States, inasmuch a federal court in California is neither a "relevant" nor "competent" court within the meaning of Dutch law.  (Drop Decl. ¶ 28.)

In the expert opinion of Mr. Drop, the forum-selection clause in the User Terms is valid under Dutch law.  (*Id.* ¶ 22.)  Under U.S. law, forum-selection clauses "are prima facie valid" and must be enforced absent a strong showing "that enforcement would be unreasonable or unjust, or that the

---

[9]  The opt-out clause, written in conformity with Dutch law, allows Plaintiff to select another court within the Netherlands (outside of the Amsterdam district), but not a court outside of the Netherlands altogether.  (Drop Decl. ¶ 24.)

1    clause [is] invalid for such reasons as fraud or overreaching." *Bremen*, 407 U.S. at 18. Here,

2    enforcement of the forum-selection clause is neither unreasonable nor unjust.

3         The relevant parties' contractual choice of the Netherlands as a forum is eminently

4    reasonable. Uber B.V. contracts with thousands of non-U.S. riders and driver partners around the

5    world. (Uber B.V. Decl. ¶ 16.) It is reasonable for Uber B.V.'s principal place of business to

6    constitute the forum in which to consolidate litigation arising from its "far-flung operations." *See,*

7    *e.g.*, *Starlight Co. v. Arlington Plastics Mach., Inc.*, 2001 WL 677908, at *3 (N.D. Cal. June 8, 2001)

8    (enforcing forum-selection clause and acknowledging defendants' reasonable interest in

9    consolidating litigation from "far-flung operations" in Illinois, their principal place of business). It is

10   likewise reasonable that Uber B.V.—a corporation based in the Netherlands, and organized under the

11   law of the Netherlands—would require all riders with which it contracts to agree to resolve any

12   disputes in the Netherlands as a condition of using the company's services (which Uber B.V.

13   provides free of charge to users such as Plaintiff). (Uber B.V. Decl. ¶¶ 6, 7, 14–16, 21.)

14        **C.    The Public-Interest Factors Compel Dismissal**

15        Finally, the public-interest factors also support enforcement of the forum-selection clause.

16        • ***Burden on Local Courts, Juries, and the Public***. Litigating this matter in the U.S. would

17   impose substantial cost upon the parties, this Court and the U.S. public because of the lawsuit's

18   transnational nature. Most of the key witnesses reside overseas, and most of the relevant evidence is

19   located overseas. *See e.g.,* Sheila L. Birnbaum, *Foreign Plaintiffs and Forum Non Conveniens*, 16

20   BROOK. J. INT'L L. 241, 246–47 (1990) (noting difficulty of trying cases in U.S. courts where key

21   evidence is located abroad). Among other things, both parties will be required to retain foreign-law

22   experts, pay for costly translations of foreign legal provisions, and brook delays inhering in

23   international scheduling. Uber U.S. has already had to expend funds retaining Dutch and Indian law

24   experts and translating foreign legal provisions.

25        By contrast, this case has much more to do with the Netherlands than the United States.

26   Additionally, Dutch courts accept documents written in English and offer world-renowned fair and

27   impartial tribunals, which are often more efficient than U.S. courts and have greater capacity to deal

28   with complex multinational disputes. (Drop Decl. ¶¶ 10, 39, 41; *see also* ¶¶ 32, 36–38, 40.) Further,

the burden on this Court and a California jury would be substantial and unjustified, given how little this case has to do with the U.S. *See Randhawa v. Skylux Inc.*, 2013 WL 3354453, at *4 (E.D. Cal. July 3, 2013) (noting that where key facts underlying dispute were overseas and would impact citizens there, California's interest in suit was comparatively low and its citizens should not bear the burden of deciding the case).

   • ***Having Local Disputes Resolved At Home.***  Inasmuch as Uber B.V., a Dutch corporation, is the entity that contracted with all three of the relevant parties in India—Yadav, Plaintiff and Dabas—the Netherlands has a significant interest in having this suit resolved at home.  By contrast, this District's only conceivable interest in this lawsuit consists of Plaintiff's allegations about Uber U.S., which indisputably did not enter into a relevant contract with Yadav, Jane Doe, or Dabas.  *See* Factual Background § B, *supra*.  Even if Plaintiff disputes the User Terms as they apply to her, she cannot dispute that Yadav contracted with Uber B.V., or that Yadav had no relationship with Uber U.S.  *Cf.  SaleBuild, Inc. v. Flexisales, Inc.*, 2013 WL 6681498, at *4 (D. Nev. Dec. 17, 2013) (noting that "local interest in this lawsuit is low if not entirely non-existent" where "facts of the suit as alleged by the Plaintiffs turn on activities and business that took place in India, not within the borders of Nevada.").

   • ***Familiarity with the Law.***  The User Terms contain a binding choice-of-law provision, requiring application of Dutch law.  Applying U.S. law to this dispute not only would violate this choice-of-law provision, it would constitute an improper extraterritorial application of law.  *See Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1664 (2013) (discussing "danger of unwarranted judicial interference" in international context); *Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 4761733, at *6 (C.D. Cal. Apr. 12, 2012) (the "mere possibility that certain decisions related to. . .policies and practices" were made in California does not permit extraterritorial application of California law to events outside California"); (*see also* Dkt. 29 (concurrently filed Rule 12(b)(6) motion)).[10]  Even if Plaintiff argues that Dutch law does not apply, or that the User Terms do not apply to her case, a Dutch court is in a better position than a U.S. court to interpret in the first

_____

[10]   Plaintiff is hereby deemed to be on notice pursuant to Fed. R. Civ. P. 44.1.

1    instance the scope and applicability of the User Terms, including its choice-of-law provision

2    invoking Dutch law.  *BMR & Assocs., LLP v. SFW Capital Partners, LLC*, 2015 WL 1071123, at *11

3    (S.D.N.Y. Mar. 10, 2015) (noting that local U.S. court should not be burdened with dispute where

4    key facts and most evidence lay in India, and in light of choice of law provision dictating that Indian

5    law governed dispute).  Dutch courts are also accustomed to applying foreign law.  (Drop Decl. ¶ 36.)

6            Accordingly, from a public-interest standpoint, a Dutch court—and not a U.S. court—should

7    take the first shot at resolving this dispute (which implicates a Dutch corporation and involves Dutch

8    law and Dutch contract interpretation).  In light of the forum-selection clause and collective weight of

9    all public-interest considerations in favor of the Netherlands over the U.S., the Court should dismiss

10   this matter in favor of a Dutch forum.  *Atlantic Marine*, 134 S. Ct. at 574; *Adema Techs. Inc.*, 2014

11   WL 3615799 at *5 ("Other than California's interest in conduct that occurs within its borders,

12   Plaintiff has not identified . . . any special interest that brings this case into the realm of the

13   exceptional or the unusual.  Public interest factors will rarely defeat a transfer [or *forum non*

14   *conveniens*] motion.") (quotation omitted); *Russel v. De Los Suenos*, 2014 WL 1028882, at *5 (S.D.

15   Cal. Mar. 17, 2014) (Even in "cases [that] involve some interest on the part of the forum where the

16   suit was filed, congestion in the other court system, and an argument that the forum where the suit

17   was filed has an interest in applying its own law[,] [i]t is apparent that these factors are not enough to

18   outweigh the strong interest in enforcing a forum selection clause to which all parties agreed.").

19   **II.    IRRESPECTIVE OF THE FORUM SELECTION CLAUSE, THIS COURT SHOULD DISMISS THIS
         ACTION PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS***

20           Even if the forum-selection clause were somehow not dispositive, the doctrine of *forum non*

21   *conveniens* independently requires dismissal.  This Complaint asks a U.S. court to assign blame to a

22   U.S. citizen, for: (1) an injury an Indian plaintiff suffered (2) in India, (3) allegedly perpetrated by

23   another Indian citizen with whom Uber U.S. has absolutely no relationship, (4) based on agreements

24   with a Dutch company.  Given that the key parties, witnesses, and evidence principally reside in the

25   Netherlands or India, and largely beyond the jurisdictional reach of this Court, this Court is

26   undeniably an inconvenient forum to try this matter.  This is especially true where, as here, criminal

27   proceedings against Yadav are ongoing in India, which (unlike U.S. criminal law) could yield

28   compensation for Plaintiff under Indian law.  *See* Declaration of Nakul Dewan ("Dewan Decl.") ¶¶ 9,

25–26; *Lueck*, 236 F.3d at 1147 (affirming *forum non conveniens* dismissal and noting that legal proceedings in country where injury occurred made it "all the more clear that the private interest factors weigh in favor of dismissal.").   Nor does there appear to be any way in which this action could proceed against Uber U.S. in the United States, consistent with basic principles of due process. *See* U.S. CONST. amend. XIV, § 1; CAL. CONST. art. I, § 7.

### A.        Governing Legal Standard

A court should dismiss under *forum non conveniens* where: (1) there is an available adequate alternative forum in which the matter can be adjudicated and (2) the balance of the *Piper Aircraft* factors favors dismissal.  An alternate forum is "available" if the defendant is subject to service of process in, or agrees to be subject to, that forum's jurisdiction, and the forum provides an adequate remedy to the prevailing party.  *Piper Aircraft,* 454 U.S. at 254 n.22.  Then "if the balance of [private and public] conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."  *Lueck*, 236 F.3d at 1145.[11]

Private-interest factors include: (1) residence of the parties and the witnesses; (2) forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) cost of bringing witnesses to trial; (6) enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *See id.*  Public-interest factors include: (1) local interest in the lawsuit; (2) court's familiarity with the governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) costs of resolving a dispute unrelated to this forum.  *See id.*

### B.        Either the Netherlands or India Would Constitute a Better Forum than the U.S.

Both the Netherlands and India are "available" and "adequate" alternative fora for this litigation. Both have much closer ties to the relevant parties and claims asserted in the Complaint than does the U.S.  Just as venue over a federal action can lie in more than one judicial district, so venue

---

[11]  For the reasons set forth in this motion, Uber U.S. believes that the proper subject of this suit, Yadav, is already subject to jurisdiction in Plaintiff's home country, India.  But to the extent that this Court deems it necessary and considers Uber U.S. a proper party to this dispute, Uber U.S. is willing to stipulate that it will submit to jurisdiction in either the Netherlands or India, for purposes of this civil dispute only.  Uber U.S. reserves all rights and defenses, including but not limited to its right to continue to argue that it is not the proper party.

over a multinational dispute can lie in more than one country.  This Court need not decide between the two; Plaintiff can choose where to "re-file."  *See, e.g., Warn v. M/Y Maridome*, 961 F. Supp. 1357, 1380 (S.D. Cal. 1997), *aff'd*, 169 F.3d 625 (9th Cir. 1999); *Vivendi S.A. v. T-Mobile USA, Inc.*, 2008 WL 2345283, at *15 (W.D. Wash. June 5, 2008), *aff'd*, 586 F.3d 689 (9th Cir. 2009).[12]

Here, Plaintiff is an Indian citizen who alleges an assault in India at the hands of another Indian citizen, who is himself the subject of Indian criminal proceedings, and who contracted with Dutch company Uber B.V.—***not Uber U.S.***  (Compl. ¶¶ 7, 56; Uber India Decl. ¶ 19; Uber BV Decl. ¶ 12, Ex. 5).)  Most or all of the evidence concerning Plaintiff's injury, as well as any witnesses with relevant knowledge concerning the incident, are located outside of the U.S., primarily in India and in The Netherlands.  The sole bases for a relevant relationship between Plaintiff, her friend and Yadav, on the one hand, and any Uber entity, on the other hand, are the agreements that Yadav entered into with Dutch company, Uber B.V., and the Uber B.V. User Terms.[13]

### 1. The Netherlands is An Adequate Alternative Forum

The Netherlands, widely recognized as an international hub offering citizens from all over the world a fair and efficient process, is an adequate alternative forum.  (Drop Decl. ¶¶ 30–32.)  Dutch courts would afford Plaintiff adequate remedies if she prevailed, and they would treat her fairly.  *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991) (adequacy depends on foreign court's ability to litigate subject matter of dispute, not on existence of identical cause of action or availability of pre-trial discovery and jury trial); *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 666 (9th Cir. 2009); (Drop Decl. ¶¶ 10, 37–38, 43–48; *see also id.* ¶¶ 30–31, 44, 48.)  Likewise, Plaintiff has adequate remedies at law in the Netherlands.  (*Id.* ¶¶ 44, 46–47.)  U.S. courts have recognized on multiple occasions that the Netherlands provides an

---

[12] While a U.S. plaintiff's choice of forum merits deference, the U.S. Supreme Court has held that "a foreign plaintiff's choice deserves less deference."  *Piper Aircraft*, 454 U.S. at 256; *see also Lueck*, 236 F.3d at 1144; *In re Air Crash over the Mid-Atlantic on June 1, 2009*, 760 F. Supp. 2d 832, 847 (N.D. Cal. 2010).

[13] Plaintiff bases her choice of forum on extremely slender reeds.  *First*, she alleges that she relied on Uber U.S.'s website, without acknowledging that the User Terms also incorporates her use of the website.  (Whelan Decl. Exs. 3 & 4 at 1.)  *Second*, she makes conclusory assertions that Uber U.S. set key policies in the U.S. that are relevant to the driver screening process.  These allegations are woefully insufficient to rebut the collective weight of the many public and private factors dictating that this case should proceed in the Netherlands or India.

1    adequate alternative forum.  *See, e.g.*, *Potomac Capital Inc. Corp. v. Koninklijke Luchtvaapt*

2    *Maatschapplij N.V.*, 1998 WL 92416, at *5 (S.D.N.Y. Mar. 4, 1998) (collecting cases).

3              **2.    *India is an Adequate Alternative Forum***

4         India—the country where the alleged harm occurred and where Plaintiff, Yadav and Dabas

5    reside—also constitutes an adequate alternate forum.  Indian courts afford adequate remedies for

6    claims such as Plaintiff's.  (*See* Dewan Decl. ¶¶ 16–26, 42–48); *Lueck,* 236 F.3d at 1144 (foreign

7    forum adequate "unless it offers no practical remedy for the plaintiff's complained of wrong").  The

8    Indian criminal prosecution currently underway against Yadav has the additional feature of offering

9    compensatory relief to victims; this relief is markedly unlike the U.S., where tort damages are

10   generally available only in civil proceedings.  (*See* Dewan Decl. ¶¶ 25–26.)  U.S. federal courts have

11   likewise recognized that the Indian legal system is an adequate forum.  *See, e.g.*, *Advanta Corp. v.*

12   *Dialogic Corp.*, 2006 WL 1156385, at *4–7 (N.D. Cal. May 2, 2006) (dismissing in favor of Indian

13   forum because Indian court could admit foreign law experts' testimony if needed under its own

14   evidence laws, injury occurred in India, and material witnesses and evidence were located in India).

15        **C.    The private and public interest factors favor dismissal**

16        In addition to the existence of at least two adequate alternative fora, both the private- and

17   public-interest factors militate in favor of *forum non conveniens* dismissal.

18              **1.    *Private factors***

19        **• *Residence of the Parties and Witnesses***.  None of the key parties or individuals central to

20   this lawsuit either reside in the U.S., or undertook any relevant action on U.S. soil.  To the contrary,

21   Plaintiff (who suffered the alleged injury), Dabas (who allegedly ordered the ride on his phone),

22   Yadav (the alleged assailant), and Uber B.V. (the Uber entity that actually contracted with Plaintiff,

23   Dabas, and Yadav), all reside outside the United States.  (*See* Compl. ¶¶ 23, 24; Uber B.V. Decl.

24   ¶¶ 9, 13; Uber India Decl. ¶ 14.)  The only U.S. entity is Uber U.S. (the named defendant), but as

25   discussed in our concurrently filed Rule 12(b)(6) motion, Uber U.S. is the wrong defendant.  Also,

26   most of the percipient witnesses whose testimony would be central to resolving any factual disputes

27   in this case reside outside the U.S. and are outside the jurisdiction of this Court.  In addition to Yadav

28   and Dabas, these witnesses include: the Indian police who investigated Plaintiff's allegations; the

1  Indian officials (among them, the Registering Authority of the Taxi Unit in Uttar Pradesh, the Delhi

2  Police, and the Department of Transport in Delhi) who approved Yadav's driver's license and

3  commercial taxi registration before he could register to use the App; any doctors who examined

4  Plaintiff after the alleged attack; Yadav's Indian insurance carrier; Uber B.V.'s and Uber India's

5  employees; other potential witnesses to the alleged event; and affiliates of Yadav or Plaintiff.  (Uber

6  B.V. Decl. ¶ 9; Uber India Decl. ¶¶ 7, 14, 16–22.)

7       • ***The Forum's Convenience to the Litigants***.  Across the ocean and many time zones away

8  from both the Netherlands and India, California is an exceedingly inconvenient forum for most of the

9  parties and potential witnesses.[14]  *See Piper Aircraft*, 454 U.S. at 256; *see also Neo Sack, Ltd. v.*

10  *Vinmar Impex, Inc.*, 810 F. Supp. 829, 835 (S.D. Tex. 1993) (granting dismissal in favor of Indian

11  forum, noting that "Neo Sack's counsel has recognized the difficulties inherent in obtaining evidence

12  from Indian residents. . .[and has] referenc[ed] problems that have arisen from their client's presence

13  in India, including delays necessitated by obtaining visas and making travel plans, communications

14  difficulties, and slow transit time").

15       • ***Access to Physical Evidence and Other Sources of Proof***.  The key documents and sources

16  of proof most relevant to this dispute, which are almost certainly at issue during the ongoing criminal

17  proceeding against Yadav, are based in India—not the U.S.  Such documents include, for example,

18  evidence detailing what occurred on the date of Plaintiff's alleged injury and the subsequent

19  investigation, Plaintiff's medical records, Yadav's driving and insurance records, and other relevant

20  evidence collected by the authorities in India.  Likewise, many evidentiary custodians are outside the

21  reach of this Court's subpoena power, and even if the parties could obtain relevant documents from

22  willing custodians, there would remain challenges under the evidentiary rules.  It is highly unlikely

23  that much relevant evidence exists in the United States, much less in this District, as opposed to the

24  Netherlands or India.  *Cf. Neo Sack*, 810 F. Supp. at 836 ("Although some of the witnesses and

25  documents relating to the proof . . . are located in the United States, this factor alone is insufficient to

26  require that the action be litigated in Texas. . ..Because most of the witnesses and documents will

27
28  ---
[14]  A Google search indicates that one can travel from New Delhi to Amsterdam in a single 9-hour flight, while travel from New Delhi to San Francisco requires at least a 19-hour flight.

Memo of Pts. And Auths. ISO Uber's FNC/12(b)(7)/Rule 12(b)(3) Mot. to Dismiss – Case No. 15-cv-00424

come from India, it would be more convenient for these witnesses and less costly for the parties to litigate this matter in India. . . .").  Further, in both Dutch and Indian courts, the parties will have access to discovery mechanisms to obtain evidence.  (Drop Decl. ¶ 43; Dewan Decl. ¶¶ 50–52.)

• ***Witness Access***.  Yadav and Plaintiff are both citizens and residents of India.  (Compl. ¶ 45.) The employees of Uber B.V. and Uber India—who serve as the direct interface for all riders and drivers in India—all reside in the Netherlands, India, and other non-U.S. countries.  Uber B.V. Decl. ¶ 9; Uber India Decl. ¶¶ 7, 20.)  Courts in both the Netherlands and India have procedures to compel witnesses, documents, and other evidence.  (Drop Decl. ¶ 43; Dewan Decl. ¶¶ 50–52.)  Any potential witnesses to the alleged incident or crucial moments following that incident—such as police officers, doctors, and other eyewitnesses–are likely to be Indian citizens who reside in India, beyond this Court's jurisdiction.  (*See* Uber India Decl. ¶ 22.)  Percipient witnesses with relevant knowledge about Yadav and Plaintiff are likely to reside in India, where the criminal proceeding about this very issue is in progress.  (*See id.* ¶¶ 19–22.)  In fact, other than suing Uber U.S., *Plaintiff's Complaint does not implicate a single witness located in the United States*.[15]

• ***The Cost of Bringing Witnesses to Trial***.  Even if some witnesses could voluntarily travel to the U.S. to testify, the logistical difficulties of arranging their travel and obtaining testimony understandable to a California jury would render a U.S. trial an exercise in inefficiency.  Further, there would be significant costs and delays associated with transporting foreign witnesses and evidence, hiring translators and foreign expert witnesses, and obtaining travel visas.  (Uber India Decl. ¶ 21.) *See Neo Sack, Ltd.*, 810 F. Supp. at 835 ("[A]ssuming the Indian witnesses could be brought to Texas for trial, it is likely that language barriers would prevent an expeditious trial.").

• ***Other Considerations***.  Another private factor that the Ninth Circuit has specifically recognized is "the desire for an expeditious trial, a goal that is advanced by [a party's] ability to join

---

[15]  It is difficult to imagine how a trial could reasonably proceed in this District, much less be fair to Uber U.S., when this Court would lack jurisdiction to compel most witnesses to travel to the U.S. to testify.  *See* Fed. R. Civ. P. 45(c)(1) (imposing geographic limitations on compulsion of witnesses).  Uber U.S. would be forced to rely on the extremely cumbersome and time-consuming process of obtaining most relevant evidence through the Hague Convention, to the extent the Convention even allows for it.  *See* Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444.

1    third-party defendants who otherwise would lie beyond the U.S. court's jurisdiction." *Contact*

2    *Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1451–52 (9th Cir. 1990).  Here there are

3    multiple potential third-party defendants whom Uber U.S. cannot join in this action.

4                    *2.        Public factors*

5             As discussed above at § I.C, both the Netherlands and India have a much stronger interest

6    than does the United States in hearing Plaintiff's claims, given that the claims arise from Dutch

7    contracts between a Dutch entity and Indian citizens, and concern an injury that allegedly occurred

8    entirely in India, and was allegedly perpetrated and suffered by citizens of India.  As such, this case

9    bears strong parallels to *Piper Aircraft*, in which the Supreme Court held that Scotland had the

10   strongest interest in providing a forum for litigation where the accident occurred in Scotland, all

11   decedents were Scottish, and all potential plaintiffs were Scottish or English, even though the aircraft

12   involved in the accident was manufactured in the U.S.  *See* 454 U.S. at 242.

13            Another public factor is the burden this lawsuit would impose on the Court in having to

14   review contracts requiring interpretation of Dutch law and analyze numerous Indian regulations put at

15   issue by Plaintiff's complaint.  Forcing a U.S. court to interpret and apply foreign law is another

16   factor militating in favor of dismissal.  *See Lueck*, 236 F.3d at 1148 n.6 (affirming that "choice of law

17   determination weighs in favor of dismissal" where court "would likely be required to interpret and

18   apply New Zealand law, law with which it is unfamiliar") (internal quotation omitted).

19            This case would also impose an unfair burden on U.S. jurors.  "Jury duty is a burden that

20   ought not to be imposed upon the people of a community which has no relation to the litigation."

21   *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-9 (1947).  This is a complex matter in which an Indian

22   plaintiff has asserted tort claims arising from an injury that allegedly was perpetrated by an Indian

23   citizen, occurred entirely within India, and from her use of an App provided by a Dutch entity.

24   Northern California jurors would have to endure hours of expert testimony regarding the application

25   of foreign law to Plaintiff's claims, apply foreign law to foreign facts, and assess appropriate

26   monetary damages for plaintiff's claims of emotional harms while accounting for cultural differences.

27   The burden that this case would impose on this Court and jurors from this District is unwarranted

28   under the circumstances here.  "[T]he American interest in this accident is simply not sufficient to

justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *Piper Aircraft*, 454 U.S. at 261.

In addition, while "[a]dministrative considerations such as docket congestion and whether trial in the other forum will occur quicker are given little weight in this circuit," this factor too weighs in favor of dismissal here. *Fireman's Fund Ins. Co. v. Nat'l Bank for Coops.*, 1993 WL 341274, at *7 (N.D. Cal. Aug. 27, 1993). The tremendous task of summoning, assembling, and translating evidence and witness testimony from the various foreign jurisdictions will greatly increase the time necessary to proceed with this case in the U.S. On the other hand, the foreign fora are capable of resolving Plaintiff's claims in a timely fashion. (*See, e.g.*, Drop Decl. ¶¶ 41–42; Dewan Decl. ¶¶ 58–60.) A criminal proceeding against Yadav is already underway in India, and Plaintiff could seek compensatory relief through that proceeding. (*See* Dewan Decl. ¶¶ 25–26.)

In short, Plaintiff, Yadav, Uber B.V., Uber India, most relevant witnesses and evidence are all located outside the U.S. Put simply, *all* of the *forum non conveniens* private and public interest considerations point to two adequate alternative fora with a much greater interest in the litigation. Accordingly, the Court should dismiss this case pursuant to the doctrine of *forum non conveniens*.

## III. THE COURT SHOULD DISMISS THIS MATTER PURSUANT TO RULE 12(B)(7)

This case is about an alleged sexual assault, and the alleged assailant, Yadav, is a "necessary and indispensable party" to this litigation. Because he cannot be joined in this action, the failure to join him constitutes an independent reason that this Court should dismiss the Complaint.

### A. Governing Legal Standard

Rule 12(b)(7) permits court to dismiss a complaint if a plaintiff fails to join a necessary and indispensable party. Rule 19 sets forth a three-step process for determining whether a party is "necessary and indispensable."[16] *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999). *First,* the court must determine whether the absent party is "necessary." *Second,* if the absent party is "necessary," the court must determine whether joinder is "feasible." *Third,* if joinder is not

---

[16] Rule 19 does not use the terms "necessary" or "indispensable," but courts still use these terms of art. A "necessary" party should be joined if "feasible," while an "indispensable" party is a "necessary" party that must be joined, even if such joinder destroys jurisdiction. *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n.5 (9th Cir. 2004).

"feasible," the court must decide whether the absent party is "indispensable" and whether in "equity and good conscience," the action cannot continue without the party. *Bowen*, 172 F.3d at 688 (internal citations omitted).  Pursuant to this three-step test, the Court should dismiss this action.

### B.    Yadav Is a Necessary and Indispensable Party

#### 1.    *Yadav is a Necessary Party*

To determine whether the absent party is "necessary," the court must consider: (1) whether complete relief can be afforded to the existing parties without joinder; or (2) whether the outside party's absence may (a) impair or impede its ability to protect its interest or (b) subject an existing party to a substantial risk of incurring double, multiple, or inconsistent obligations unless the outside party is joined.  *See* Fed. R. Civ. P. 19(a).

Yadav is a necessary party because he is "more than a key witness, but also an active participant in the allegations that are critical to the disposition of the litigation."  *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 906 (C.D. Cal. 2011); *In re Apple iPhone Antitrust Litig.*, 874 F. Supp. 2d 889, 900 n.24, 25 (N.D. Cal. 2012) (collecting cases following this rule).  Yadav's alleged crime constitutes the basis of Plaintiff's entire complaint.  (Compl. ¶ 7.)  According to the Complaint, Yadav alone allegedly submitted false documentation in order to use the Uber platform; he alone allegedly offered his transportation services to Plaintiff; and he alone allegedly assaulted her.  Inasmuch as Plaintiff seeks to hold Uber U.S. vicariously liable for Yadav's crimes, the resolution of Plaintiff's claims necessitate an inquiry into Yadav, his actions and background, the facts of the alleged assault, his relationship with Uber B.V., and the absence of any relationship between Yadav and Uber U.S., among other things.  Accordingly, Yadav is "more than a key witness whose testimony would be of inestimable value"; his presence in the case is "critical to the disposition of the important issues in the litigation."  *Encatto Ltd. v. Obscura Digital Inc.*, 2013 WL 394195, at *3 (N.D. Cal. Jan. 30, 2013) (dismissing for failure to join necessary and indispensable party).

Along these lines, because this action clearly implicates Yadav's interests, case law recognizes his right to defend himself.  Two key purposes of Rule 19 are to "protect the interests of absent parties . . . from multiple litigation, inconsistent judicial determinations or the impairment of interest or rights" and "to avoid multiple lawsuits regarding the same cause of action."  *Albers v.*

*PMP Access Fund Manager, LLC*, 2010 WL 2486369, at *3–4 (N.D. Cal. June 16, 2010).  Because Yadav was "actively involved in the conduct giving rise to the allegations at the heart of the [complaint]," *In re Toyota*, 785 F. Supp. 2d at 905, Yadav is necessary to the litigation, and failure to join him requires dismissal.  *Id.*

### 2. Joining Yadav in this Action is Infeasible.

Joinder of Yadav is infeasible because he is an Indian citizen living in India with no U.S. contacts, leaving him outside this Court's jurisdictional reach.  *International Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945); *EEOC. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  Moreover, joining Yadav in this action would defeat diversity jurisdiction, to the extent such jurisdiction currently exists.  *See Nike, Inc. v. Comercial Iberica*, 20 F.3d 987, 99091 (9th Cir. 1994) (28 U.S.C. § 1332(a) precludes jurisdiction where a foreign plaintiff sues a U.S. citizen and another foreign citizen, even if there are also citizen defendants).

### 3. Yadav is an Indispensable Party.

Where, as here, joinder is not "feasible," the court must decide whether the absent party is "indispensable" and whether in "equity and good conscience," the action cannot continue without the party.  *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1161 (9th Cir. 2002) (internal citations omitted).  This requires consideration of: (1) the extent to which a judgment rendered in the outside party's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment rendered in the outside party's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.  *See White v. Univ. of Calif.*, 765 F.3d 1010, 1027–28 (9th Cir. 2014).

As noted above, a judgment without Yadav poses a substantial risk of prejudicing all of the parties.  Yadav "not only has an interest in the controversy, but has an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."  *EEOC*, 400 F.3d. at 780 (quoting *Shields v. Barrow,* 58 U.S. 130, 139 (1855)).  Uber U.S. will likewise suffer prejudice from Yadav's absence, which will deprive Uber U.S. of access to evidence

Gibson, Dunn & Crutcher LLP

1  necessary to mount its defense.[17]  For these reasons the Supreme Court has recognized the courts' and

2  the public's interests "in settling disputes in wholes, whenever possible." *Encatto Ltd.*, 2013 WL

3  394195, at *4 (internal quotation omitted).  This cannot occur in the U.S., but can occur in the

4  alternative fora.  Dismissal of the action in the United States will not, by contrast, deprive Plaintiff of

5  an adequate remedy because, as discussed above, she can sue in either the Netherlands, or in India.

6  **IV.   THIS COURT SHOULD DISMISS THIS ACTION PURSUANT TO RULE 12(B)(3)**

7       Independent of the above arguments, the Court should dismiss under Rule 12(b)(3) because

8  venue is improper in this district.  In diversity cases such as this, venue is restricted to the

9  circumstances specified in 28 U.S.C §1391(a).  Plaintiff bears the burden of establishing that venue is

10  proper, *see Gamayo v. Match.com LLC*, 2011 WL 3739542, at *3 (N.D. Cal. Aug. 24, 2011), and she

11  cannot meet her burden of establishing any of the 28 U.S.C §1391(a) circumstances.

12       *First,* as described above, as well as in our concurrently filed Rule 12(b)(6) Motion, Plaintiff

13  has named the wrong defendant, Uber U.S., in this suit.  Accordingly, Uber U.S.'s residence in

14  California does not create an appropriate venue for this action.  28 U.S.C. § 1391(a).  *Second,*

15  Plaintiff's claim arises from alleged events that occurred in India.  Plaintiff has no basis to claim that

16  a substantial part of the events or omissions giving rise to the claim occurred here.  Accordingly,

17  venue does not lie in any U.S. district within the meaning of 28 U.S.C § 1391(a).

18  **CONCLUSION**

19       Uber U.S. respectfully requests that this Court dismiss the Complaint, with prejudice.

20

21  Respectfully submitted, this 6th day of April, 2015.

22  By:  /s/ Michael Li-Ming Wong_____

23       Michael Li-Ming Wong
        Perlette Michèle Jura

24       Priyanka Rajagopalan
        Joseph Tartakovsky

25       *Attorneys for Defendant Uber Technologies, Inc.*

26  [17] To compel evidence from overseas sources, Uber U.S. may need to resort to international treaties, which can be "notoriously inefficient" and "a difficult and time-consuming—if not altogether

27  futile—endeavor."  *See, e.g., In re Air Crash*, 893 F. Supp. 2d 1020, 1032 (C.D. Cal. 2011) (noting limitations of Hague Convention as evidence-gathering mechanism), *amended in part on*

28  *other grds*, 2011 WL 2183972 (C.D. Cal. May 16, 2011), *aff'd*, 504 F. App'x 573 (9th Cir. 2013).