1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10

11                                          | No. 15-cv-00424-SI

JANE DOE,                                   | **DECLARATION OF BHAVIK RATHOD IN SUPPORT**
12                                          | **OF DEFENDANT'S MOTION TO DISMISS PURSUANT**
            Plaintiff,                      | **TO (1) FORUM SELECTION CLAUSE; (2) *FORUM***
13                                          | ***NON CONVENIENS*; (3) FED. R. CIV. P. 12(B)(7);**
     v.                                     | **AND (4) FED. R. CIV. P. 12(B)(3)**
14
UBER TECHNOLOGIES, INC.,
15
            Defendant.
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF BHAVIK RATHOD

I, Bhavik Rathod, declare as follows:

### QUALIFICATIONS

1. I am over the age of 18 and I submit this declaration at the request of Uber Technologies, Inc. ("Uber U.S."). I have personal knowledge of each fact stated in this declaration.

2. I am the General Manager of Bangalore, India for Uber India Systems Private Limited ("Uber India"). I live and work in Bangalore, India. My duties include overseeing all operations of Uber India in Bangalore. I also participate in and support operations of Uber India in New Delhi.

3. I am offering this declaration in order to provide the parties and the Court with information. Unless otherwise stated, I have direct knowledge of the matters discussed herein. If called upon to testify, I would state as follows. I reserve all jurisdictional objections and do not submit Uber India to the jurisdiction of U.S. courts in either this or any other action.

**Uber India**

4. Uber India is an indirect affiliate of Uber B.V. Uber India is organized and exists under the laws of India, with its registered office located at India, Lv. 13 Platinum Techno Park. Plot No. 17/18 Sector 30A, Vashi, Navi Mumbai - 400705, Maharashtra. Attached as Exhibit 1 is a true and correct copy of the Uber India Certificate of Incorporation.

5. Uber India is responsible for marketing and support related to the App in India.

6. Uber India has its own board of directors, which meets on a regular basis or acts by written consent. Uber India keeps separate corporate records from Uber B.V. and Uber U.S.

7. Uber India has more than 50 employees, all of whom live and work in India and work to provide support services to Uber B.V., in India. Neither Uber U.S. nor Uber B.V. exercises supervisory control over the Uber India staff. For example, Uber India has the power to hire and fire employees and determine salaries.

8. Uber India does not conduct business in the United States, nor does it maintain any offices or other facilities in the United States.

Gibson, Dunn &
Crutcher LLP

**Uber India's Responsibilities**

9.    Uber India provides certain local support services for Uber B.V., including collecting and remitting payment from users and driver partners.  On Uber B.V.'s behalf, Uber India collects payments from riders for transportation services provided by driver partners in India, remits the rider payments (less a service fee) to the driver partners, and remits the service fee to Uber B.V.  Uber India does not remit any payment to Uber U.S. for any purpose.

10.   Uber India maintains separate bank accounts from Uber B.V. and Uber U.S.  These bank accounts are used, among other things, to handle payments to independent transportation providers, payments to Uber India employees, and lease payments for office space.

11.   Uber India—not Uber U.S. or Uber B.V.—is responsible for screening driver partners in India who wish to arrange rides using the App.  All drivers who wish to use the App in India must provide proper documentation to Uber India demonstrating their qualifications to drive in the region and must agree to the Uber B.V. Transportation Provider Agreement.  The documentation that Uber India requires its driver partners to produce is issued by the local Indian regulatory authority and financial institutions.

12.   Uber India does not, however, have the power or authority to enter into, amend, or negotiate the conditions of driver partner contracts and rider contracts.  Uber India works only with the form agreements and terms provided by Uber B.V., which is the entity that contracts directly with both the driver partners and the riders in India.

13.   When driver partners apply to utilize the App in India, they arrive at the local Indian office nearest to them with paper copies of their documentation, at which point an Uber India employee scans them and returns the hard copies to the driver partners.  The scans of the paperwork are stored on a database that is owned by Uber B.V., for which I am informed Uber B.V. pays Uber U.S. a licensing fee to maintain.

**Partner Driver Shiv Kumar Yadav and Ongoing Criminal Proceedings**

14.   Shiv Kumar Yadav is a citizen of India.  I am informed and believe that prior to his arrest, Mr. Yadav was a self-employed, independent taxi driver who used the App to receive requests for

transportation services.  I am informed and believe that Mr. Yadav resides in India, where he is currently in judicial custody.

15. Uber India performed the safety screening for Mr. Yadav before he was allowed to sign up to utilize the App as a driver.  On or about June 26, 2014, Mr. Yadav brought his government-issued documentation to Uber India's New Delhi office, and Uber India employees scanned his documentation, uploaded it to the Uber B.V. database and returned the hard copies to Mr. Yadav.

16. Mr. Yadav's government-issued documentation appeared to be current and in order.  According to Mr. Yadav's driver's license, which was issued by the state of Uttar Pradesh, before he approached Uber India to apply to utilize the App, he was already a commercially licensed taxi driver.  In fact, Mr. Yadav was a taxi driver licensed by the Registering Authority of the Taxi Unit in Uttar Pradesh.  I am further informed and believe that Mr. Yadav had been driving a taxi in New Delhi for several years prior to signing up as a driver.  In order for Mr. Yadav to have been a taxi driver licensed by the Registering Authority of the Taxi Unit in Uttar Pradesh and to have registered his commercial vehicle with the Department of Transport in Delhi, Mr. Yadav had to first undergo a screening and evaluation by the police department.  Since Mr. Yadav apparently had valid registration for his commercial vehicle and was a licensed taxi driver, in the eyes of the Delhi police force and both the Uttar Pradesh and Delhi Departments of Transport, Mr. Yadav was a fully licensed and qualified professional driver.

17. Each driver who applies to utilize the App must demonstrate proof of insurance.  Mr. Yadav's proof of commercial insurance coverage indicated that he had insurance with New India Assurance Co. Ltd. ("New India"), an Indian government-owned insurance company located at 1215 Naurang House, 21, Kasturba Gandhi Mang, New Delhi.  To my knowledge, New India has no operations in the United States.

18. Mr. Yadav utilized the App to arrange rides on the "uberX" platform, which is an affordable service available in New Delhi only to commercially licensed, professional drivers like Mr. Yadav.  Mr. Yadav ran a professional driving business; he registered at least two separate

vehicles with Uber India, and employed and oversaw other drivers, who at his direction, drove Mr. Yadav's cars and received transportation requests on the uberX platform.

19. I am aware that there are currently ongoing criminal proceedings against Mr. Yadav in India as a result of the alleged incident on December 5, 2014. As soon as Uber India was informed by the police of the alleged incident on December 5, 2014, Mr. Yadav's access to the Uber platform to receive ride requests was terminated immediately.

20. When the police went to Uber India's offices in New Delhi to investigate in the immediate aftermath of the incident involving Jane Doe, there were a number of employees who responded to their requests. All of these employees were employed by Uber India and all reside in India. None of the employees who were located in New Delhi and who responded to the incident involving Jane Doe were Uber U.S. employees.

21. It would be extremely difficult for these individuals (and any relevant evidence) to be transported to the U.S. to testify at trial. These individuals would have to obtain travel visas because many of them are not otherwise authorized to visit the United States.

22. To my knowledge, none of the doctors or police inspectors or other potential witnesses related to the incident of December 5, 2014, are based in the United States or subject to jurisdiction in the United States.

Gibson, Dunn &
Crutcher LLP

1    I declare under penalty of perjury under the laws of the United States of America and the State of

2    California and the laws of India that the above is true and correct.

3

4        Executed by me in Bangalore, India this 6th day of April 2015.

5

6        By:

7        _____

8             Bhavik Rathod

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**Rathod Decl. Exhibit 1**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

# MEMORANDUM

# AND

# ARTICLES OF ASSOCIATION

# OF

# UBER INDIA SYSTEMS PRIVATE LIMITED

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***



## प्रारुप 1
## पंजीकरण प्रमाण-पत्र

कॉर्पोरेट पहचान संख्या : U74120MH2013FTC247008          2013 - 2014

मैं एतद्द्वारा सत्यापित करता हूँ कि मैसर्स

Uber India Systems Private Limited

का पंजीकरण, कम्पनी अधिनियम 1956 (1956 का 1) के अंतर्गत आज किया जाता है और यह कम्पनी प्राइवेट लिमिटेड है।

यह निगमन-पत्र आज दिनांक सोलह अगस्त दो हजार तेरह को  मुंबई में जारी किया जाता है।

---

# Form 1
# Certificate of Incorporation

Corporate Identity Number : U74120MH2013FTC247008     2013 - 2014
I hereby certify that Uber India Systems Private Limited is this day incorporated under the Companies Act, 1956 (No. 1 of 1956) and that the company is private limited.

Given at Mumbai this Sixteenth day of August Two Thousand Thirteen.

Registrar of Companies, Maharashtra, Mumbai
कम्पनी रजिस्ट्रार, महाराष्ट्र, मुंबई

*Note: The corresponding form has been approved by  RAJENDER SINGH MEENA, Deputy Registrar of Companies and this certificate has been digitally signed by the Registrar through a system generated digital signature under rule 5(2) of the Companies (Electronic Filing and Authentication of Documents) Rules, 2006.
The digitally signed certificate can be verified at the Ministry website (www.mca.gov.in).

---

कम्पनी रजिस्ट्रार के कार्यालय अभिलेख में उपलब्ध पत्राचार का पता :
Mailing Address as per record available in Registrar of Companies office:
Uber India Systems Private Limited
Regus Business Platinum Centre Pvt. Ltd., Level 13, Platinum Techno Park, Plot No.17/18,
Sec-30A, Vashi,
Navi Mumbai - 400705,
Maharashtra, INDIA



### THE COMPANIES ACT, 1956

### COMPANY LIMITED BY SHARES

### MEMORANDUM OF ASSOCIATION

#### OF

### UBER INDIA SYSTEMS PRIVATE LIMITED

I.   The name of the Company is **UBER INDIA SYSTEMS PRIVATE LIMITED**.

II.  The registered office of the Company will be situated in the state of Maharashtra, within the jurisdiction of Registrar of Companies, Maharashtra at Mumbai.

III. The objects for which the Company is established are:

### A.   THE MAIN OBJECTS OF THE COMPANY TO BE PURSUED BY THE COMPANY ON ITS INCORPORATION:

1.   To establish and provide online transaction tools or applications, software development centres, digitalizing the documents, to design, develop, manufacture in India for trading between clients as indenting agent or clients of associated indenting agents to provide marketing and consulting support for the development and expansion of on-demand services, such as car booking services, via mobile devices and web based requests that pertain to the market in India and everything that is related thereto or to act as internet service providers, content development of internet, web hosting, web sites design, domain name services, server farms, e-mail services, e-commerce and other business.

2.   To incorporate, participate in, conduct the management of other companies and enterprises; render administrative, technical, economic or managerial services to other companies, persons or enterprises; to acquire, dispose of, manage and exploit real and personal property, including any patent rights, marks, copyrights, permits, trademarks, formulae, license, lease concessions, and other intellectual and industrial property rights conferring any exclusive or limited rights to use, or any secret or other information as to any invention which may seem capable of being used for any of the purposes of the Company or the acquisition of which may seen directly or indirectly to the benefit of the Company and to use, exercise, develop or grant licenses in respect of or otherwise turn to account the property or information so required.

### B.   THE OBJECTS INCIDENTAL OR ANCILLIARY TO THE ATTAINMENT OF MAIN OBJECT:

3.   To negotiate for and enter into agreement/s and contract with companies, in India or outside India or collaborate with foreign companies, firms and individuals for getting and obtaining technical knowhow and assistance for the consulting, marketing research for finance, management, organization matters for attainment of the objective of the Company.

1

4.   To enter into collaboration whether with foreign or India firms, companies or individuals for technical know-how or otherwise as may be convenient and to pay for the same either in cash or in shares.

5.   To act as principals, agents, contractors, trustees, or otherwise and by though trustees, agents or otherwise and either alone or in conjunction with other and to do all such other things as are incidental of as the Company may thing conductive to the attainment of the objects of the Company.

6.   To enter into agreements and contracts with Indian or foreign individuals, companies or other organization for technical, financial or any other assistance for carrying out all or any of the objects of the Company.

7.   To apply for purchase or otherwise acquire, protect, prolong and renew any processes and know how patents.

8.   To amalgamate or merge with any other company whose objects are or include objects similar to those of the Company, by sale or purpose (for fully or partly paid up shares or otherwise) of all or a controlling interest in the shares or stock of this or any such other company as aforesaid or in other manner.

9.   To hire, train, supply or cause to be supplied skilled drivers, employees, materials, articles, goods and things of any kind and descriptions for or in connection of any kind and description for all kinds and in this connection to undertake the objectives of the Company.

10.   To purchase, take on lease or in exchange get transferred or otherwise acquire any rights or privileges whether belonging to individual, firms, associations, trust, companies whatever situates and the property, business and goodwill appertaining thereto, respectively which is necessary or convenient for the proposes of the Company's business.

11.   To subscribe for, acquire, hold and sell, or otherwise deal in shares, stocks debentures, or other securities of any other company, having objects altogether or in partly similar to those of the Company.

12.   To adopt such means of making known the activities if the Company as may seem expedient and in particular by advertising in any media including radio and/or television or by the purchase, exhibition of reproduction of works by the publication of books and pictures or by greeting concessions, prizes, rewards and services free or at reduced rate or in such other manner whether similar to the above or as the company may them desirable.

13.   To issue debentures, debenture-stock, bonds, obligations and securities of all kinds and to frame, constitute and secure the same, as may seem expedient to the board of directors of the Company with full power to make the same transferable by delivery or by instrument or transfer or otherwise, and either perpetual or terminable and wither perpetual or terminable and either redeemable or otherwise and to changes or secure the same by trust deed or otherwise, on the undertaking of the Company or upon any specific property and rights, present and future of the Company (including its uncalled capital) or otherwise howsoever.

14.    To guarantee the fidelity of persons filling or about to fill situation of trust, of confidence, and the due performance and obligations imposed on them by contract or otherwise and discharge by such persons of all or any of the duties.

15.    To register, apply for purchase otherwise acquire, sell, let, grant or turn to account any patents, letters brevets concession, license, inventions, trademarks, copyright, rights or privileges, subject to royalty or otherwise and whether exclusive or limited or any part or interest, in such patents, letters, brevets concessions, licenses, inventions, trademarks, copyrights, and privileges whether in India or any part of the world.

16.    To obtain or lease, license, buy, acquire, let, or sell land, building or to build and construct buildings for office or residence of the employees, directors and guests of the Company.

17.    To purchase or otherwise acquire, sell, exchange, mortgage charge, convert, turn to account dispose off and deal with property and rights of all kinds and deal in patents and license, share, stock, debentures, debentures-stock, securities, concessions, options, policies; debts and claim any interest in real or personal property and any claim against such property of against any persons or company and to carry on any business, concern or undertakings so acquired of found necessary of convenient for the purpose of the Company.

18.    To advance and lend money either with or without security and generally to persons, firms, associations, trusts, corporations, companies on such terms and conditions as the board of directors of the Company may think fit.

19.    To receive moneys, securities and valuable of all kinds on deposit at interest or otherwise or for custody.

20.    To create any depreciation fund or reserve fund, sinking fund, insurance fund and/or any other special funds or reserves, whether for depreciation or for repairing, improving, extending or maintaining any or the property of the Company or for redemption of debentures or redeemable preference shares or for any other purpose whatsoever conductive to the interest of the Company.

21.    To pay, satisfy or compromise any claims made against the Company, which it may seem expedient to the board of directors of the Company to pay, satisfy or compromise notwithstanding that the same may not be valid in law.

22.    To guarantee the payment of money unsecured or secured or payable under or in respect of debenture, bonds, debenture-stock, contracts, mortgages, charges, obligations and securities of any authority, supreme, municipal, local or otherwise, or if any person whatsoever whether corporate or non-corporate.

23.    To purchase, construct, take on lease or tenancy or in exchange, hire, take options over otherwise acquire any estate lands, building easements or other interest, rights in immovable properties and to bold concessions, licenses, privileges, claims, leases, options, which may appear to necessary or convenient for any of the business of the Company and to sell, lease, mortgage, hypothecate or otherwise dispose of or grant rights over any immovable belonging to the Company.

24.    To give donations or gift to persons or persons and to subscribe to contribute or otherwise to assist or to guarantee money to charitable, benevolent, religious, scientific, national,

public or other institution or objects which shall have any moral or other claims to support or aid by the Company whether by the reason of locality of operation or public and general utility or otherwise provided. However, in case of any such donation, subscription, contribution made or give to anyone, the said shall be subject to and in accordance with the provisions of any law for the time being in force and application thereto.

25. To remunerate the employees of the Company and others for services rendered and also out of and in proportion to the profits of the Company or otherwise as may be thought fit.

26. To take part in the supervision and control of the business or operation of any subsidiary company or of any other company in which the Company is or may be interested, and to form, constitute and promote or join in promoting companies, association and undertaking of all kinds.

27. To invest and deal with the money of the company not immediately required in immovable properties, shares, stocks, bonds, debentures, obligations of other securities of any company of associations or in government securities in India or abroad or in current or deposit account with a bank or on the mortgage of immovable properties of any tenure or on the pledge or moveable property or in any other manner as may from time to time be determined by board of directors of the Company for the time being and form time to time shall or vary all such investments and execute all assignments, transfer receipts, and documents that may be necessary in that behalf.

28. To amalgamate, enter into foreign or Indian technical and/or financial collaboration, partnership or into any arrangement for sharing or dealing profits, union of interest, co-operations, joint venture, reciprocal concession or otherwise with any persons, firm, corporation or government and to lend money, guarantee the contracts or otherwise assign any such persons firm or company and to take or otherwise acquire and hold shares or securities of any such persons, firm or companies, to sell, hold, reissue with or without guarantee or otherwise deal with same.

29. To purchase charter, hire or otherwise acquire vehicles for the business of the Company.

30. To acquire and take over as a going concern by purchase of on lease and to undertake to carry on the whole or any part of the business together with the goodwill and trade name, property, rights, and liabilities of any person or persons, firm or any company carrying on business, any part of the purposes of which is within the object of the Company or which the Company is authorized to carry on and pay for the same by share, debenture, debenture-stock, bonds, cash or otherwise and to conduct and carry on or liquidate and windup any business.

31. To establish and maintain agencies branches or appoint representatives, agents, canvassers, agents in India or abroad for any one or more of the objects of the Company and to regulate and discontinue the same.

32. To sell, sub-let, mortgages, lease, manage, develop, exchange, dispose for or transfer the business, immovable or movable property, and undertaking of the Company or any part thereof or any part of the property, rights and concessions of the Company in such manner and upon such terms and conditions and for such consideration as the board of directors of the Company, for the time being may think fit to accept and in particular for cash, shares,

4

debenture share, debenture, debenture-stock, bonds, cash or securities of any other company having objects similar to those of the Company .

33.    To receive, rise or borrow money from time for any of the purpose of the Company by bond, debentures or promissory notes or by taking credit, in a or opening current accounts with any individuals or firm or with any bank or bankers and whether with or without giving any security, goods or other articles or by mortgaging, pledging, changing, hypothecating or selling or receiving advance, or the sale of any lands. Building and machinery, goods assets or revenue of the Company, presents or future, including its uncalled capital or by the issue of debenture debenture-stock, perpetual or otherwise including debenture or debenture-stock convertible into shares of this or any other company or to convey the same absolutely or in truest and give lenders powers of sale and other powers as may be expedient and to purchase, redeem or pay off such securities.

34.    To invite and receive or without any such invitation receive any gifts of immovable or movable property and offerings or voluntary donations or bequests and legacies either from a shareholder of the Company or from any other persons for all or any of the objects of the Company with or without any special conditions provided such receipts or the conditions attached are not inconsistent with or derogatory to any of the objects of the Company.

35.    To undertake the payment of all rents and performance of all converts, conditions and agreements contained in and reserved by any lease may be granted or assigned to or be otherwise acquired by the Company.

36.    To form, constitute and promote or join in promoting companies, associations and undertaking of all kinds.

37.    To undertake and execute any trusts, the undertaking whereof may seem desirable either gratuitously or otherwise, and/or to make donations to any persons, company or association and to subscribe or guarantee money for any national, international, charitable, benevolent, educational, public object, activity, exhibition of trade show, which may be the objects of the Company or in the interest of its member or for the welfare of the staff.

38.    To open accounts current or overdraft with any banks and to deposit money therein to draw and endorse cheque on and to withdraw moneys from such accounts and generally operate upon same (whether overdraft or not) as may be required for any of the objects of purposes of the Company.

39.    To acquire from any person, firm or body corporate or unincorporated, whether in India or elsewhere, technical information, know-how, processes, engineering, manufacturing and operating date, plans, layout and blue prints useful for the design, erection and operation of any equipment required for the business of the company and to acquire any grant or license and other rights and benefits in the foregoing matters and things.

40.    To draw, make, issue, accept, transfer and endorse, discount, execute and negotiate, promissory notes, hundies, bills of exchange, cheque, draft, bills of lading letters of credits, delivery orders documents railway or transport receipts, warehouse keeper's certificate and other negotiable or transferable or commercial or mercantile instruments connected with the business of the Company.

41. To give guarantee for the performance of discharge of moneys by any persons, firms and companies or government of the state and to give indemnities.

42. To insure or cause to insure any of the persons, properties, undertaking, contracts, guarantee or obligations or profits of the Company of ever nature and kind in any manner whatsoever.

43. To be interested in, promote and undertake the formation and establishment of such institutions, associations, chamber of commerce of other bodies, industrial trading or manufacturing within the objects of the Company as may be considered to be conducive to the profit and interest of the Company.

44. To place, to reserve or to distribute as bonus share among the member or otherwise to apply any moneys received by way of premium on shares, or debentures issued at a premium by the Company and any moneys received on forfeited shares and moneys arising from the sale by the Company of forfeited shares.

45. To refer any dispute, claim or demand by against the Company to arbitration and observe and perform the awards.

46. To employ experts to investigate and to examine into the conditions, prospects, value, character and circumstances of business concerns and circumstance of business concerns and undertakings and of any assets, property or rights.

47. To promote and provide aidin any company or companies, subsidiary or otherwise, for the purpose of acquiring all or any of the property, undertaking, rights, and liabilities of such company and to be interested in or take or otherwise acquire, purchase, hold, sell or otherwise dispose of shares, debentures and other securities in or of any such company or any other company, for all or any of the objects of the Company and to subsidies or otherwise assist any such company and to undertake to management of other work, duties and business of any such company on such terms and conditions as may be arranged.

48. To enter into any arrangement and to take all necessary or proper steps with government or with other authorities supreme, national, local, municipal or otherwise of any place in which the Company may have interest and carry on any negotiations or operations for the purpose of directly carrying out the objects of the Company or effecting any modification in the constitution of the Company or furthering the interests of its member and to oppose any such steps taken by the other company, firm or persons, which may be considered likely directly to prejudice the interests of the Company or its member and to promote or assist the promotion  whether directly or indirectly, of any legislation which may appear to be in the  interest of the Company and to oppose and resist whether directly or indirectly legislation which may seem disadvantages to the Company and to obtain from any such government, authority or any company, any character, contracts, decrease, rights, agents, loans, privileges or concessions which the company may think fit or desirable to obtain and to carry out, exercise and comply with any such arrangements, characters, contracts, decrease, rights, privileges or concessions.

49. To establish, provide, maintain and conduct or otherwise subsidies research laboratories and experimental stations, workshops for scientific and technical researches, experiments and tests of all kinds and to promote studies and research both scientific and technical investigation and invention by providing colleges, schools and other institutions for training,

lectures, meetings and conferences and by providing the remuneration of scientific or technical professors, or teachers and by providing for the award of exhibitions, scholarships, prizes, grants and bursaries to students or otherwise and generally to encourage, promote and reward studies, researches, investigations, experiments, tests and inventions of any kind that may be considered likely to assist by business which the company is authorized to carry on.

50.    To undertake, carry out, promote and sponsor or assist any activity for the promotion and growth of national economy and for discharging social and moral responsibilities of the company to the public or any Section of the public as also any activity likely to promote national welfare or to undertake any activity of conversion of natural resource or social, economic or moral uplift of the public or any section of the public and without prejudice to the generality of the foregoing, and in such manner by such means from time to undertake carry put, promote and sponsor any activity for publication of any books, literature, newspapers or for organizing lectures of seminars, likely to advance objects of the Company or for giving merit awards, scholarships, loans or any other assistance to deserving student or other scholars or persons to enable them to prosecute their studies or academic pursuits or researches Studies or academic pursuits or researches studies or academic pursuits or researches or to take up establishment of any medical research centre, to collect information and advises on modern techniques for treatment of diseases for the benefits of the rural areas either by itself or through any  to the rural areas either by itself or through any of the agencies and for establishing, conducting or assisting any institution, fund, trust, having any one of the aforesaid objects as one of its objects by giving donations or otherwise in any other manner in order to implement any of the above mentioned objects or purposes, transfer without consideration or the provisions of the Companies Act, 1956 divest the ownership of any property of the company to or state government or any public institutions.

51.    To undertake, carry out, promote and sponsor rural development including any program for promoting the social and economic welfare of or the uplift of the public in any rural area and to incur any expenditure on any program or rural development and to assist execution and promotion thereof either directly or through an independent agency or in any other manner.

52.    To purchase or take license or otherwise acquire any patents, patent rights, inventions, privileges, monopolies, concessions or process and the like and any other rights, or powers, conferring any exclusive or non-exclusive or limited right to use any secret or other information as to any invention available for use in connection with any of the objects of the Company.

53.    To aid, pecuniary or otherwise, any association or movement, having for an objects the solution, settlement or surmounting of industrial or labour problems or troubles or the promotions of industry or trade.

54.    To advance money, in connection with the main business either with or without security and give credit, to such persons (including Government) and upon such terms and conditions as the Company may think fit, to attain the main objects of the Company provided that the Company shall not carry on banking business within the meaning of Banking Regulations, Act, 1949.

55.    To provide for welfare of the directors, ex-directors, employees or ex-employees of the Company of its predecessors in business and the wives and families of the dependents or connections of such persons by building of houses, or by grants of money, pensions,

gratuities, non-contributory pension or superannuating funds, funds allowances, bonuses, awards, profit sharing or other schemes or trusts and by providing or contributing towards places of instruction and recreation, hospitals and dispensaries, medical and other attendance, maintain and grant scholarship monies to any persons for technical study and education in India and elsewhere in the world which may be necessary or useful for any of the objects of the Company.

56.     To pay out of the funds of the Company, all expenses of and incidental to the issue of subscription of the shares of loans or capital including brokerage, underwriting or other commission or obtaining applications for or placing or guaranteeing the placing of shares or any expenses attending the issue of any debentures, debenture-stock and other securities of the Company and also all expenses attending the issue of any circular or notices, and the printing, stamping, circulating, proxies and forms to be filled up by the members of the company.

57.     To exercise all or any of its corporate powers, rights and privileges and to conduct its business in all or any of its branches in the union of India and in any or all states, territories, processions and dependencies thereof in any or all foreign countries and for this purpose appoint manager, against, either on salary and commission and to have maintain, and to discontinue, such number of offices and agencies there in as may be convenient.

58.     To negotiate, lease, underwriting contracts, mortgage, equity participations, cash credits working and other financial facilities for banks, financial institutions and government or semi-government bodies.

59.     To borrow or raise or secure the payment of money or to receive money or deposit at interest, or otherwise in such manner as the board of directors may think fit and in particular, by the issue of debentures stock, convertible into shares of this or any other company and in security of any such money so borrowed, raised or received to mortgage, pledge, or charge the whole or any part of the property, assets or revenue of the Company, present and future including its uncalled capital and to purchase, redeem or pay off an such securities.

60.     To obtain any governmental approval or order for obtaining all powers and authorities necessary or expedient to carry out or extend any of the objects of the Company or for any other purpose which may seem expedient and to oppose any proceeding or applications which seem calculated directly or indirectly to prejudice the Company's interest.

61.     To pay all or any expenses incurred in connection with the promotion, formation, incorporation and establishment of the company or to contract with any persons, firm or company to pay the same and to pay commission to brokers and other for underwriting, placing, selling, or guaranteeing the subscription of any shares, debentures, debenture-stock of securities of the Company.

62.     To promote and form and to be interested in and take, hold and dispose of shares in any other company having objects similar altogether or in part to those of the company and subsidies or assist any such company financially or otherwise by issuing or subscribing for and issue of shares, stocks, debentures, debentures-stock or other securities of such company. To transfer any property of this company and transfer any property of this acquire, hold and dispose of shares, debentures and other securities in or of any such company.

63. To adopt such means of making know the products and services of the Company of any other company, firm, person, as may seem expedient and in particular by advertising in the press by granting prizes, reward and donations.

64. To establish agents and correspondents in India and elsewhere for sales and purchases and to regulate and discontinue the same.

65. To pay for any properties, rights privileges acquired by the Company, share or debentures of this company, or partly in shares or debentures and partly in cash, or otherwise and to give shares or stock or debentures of the Company in exchange for shares or stock or debenture of any other company.

66. To remunerate any person or company or services rendered or to be rendered in placing or assisting to place or guaranteeing the placing of any shares in the Company's capital or any debentures, debentures-stock or any securities of the company or in or about the formation or promotion of the acquisition of the property by the Company or the conduct of its business.

67. To contribute to charitable and other funds whether directly or indirectly relating to business of the Company or not for welfare of the employees.

68. Subject to provisions of the Companies Act, 1956 as amended to distribute any of the property of the company among the members in specie or kind in the event of winding up.

69. To open bank accounts of any type including overdraft account and to operate the same in the ordinary course of business.

70. To subscribe or guarantee money for charitable or benevolent objects of for any exhibitions or for any public, general or useful objects and to make donation to such person and such cases as the Company may consider conductive to the attainment or any of the objects of the Company or otherwise expedient.

71. Subject to the provisions of the Section 314 of the Companies Act, 1956 to pay for any rights or property acquired by the company and or remunerate any person, firm or body corporate rendering services to the Company either by cash payment or by allotment to him or them of shares or securities of the Company as paid up in full.

72. To do all such other things at may be deemed incidental or conducive for the attainment of the main objects.

**C.    OTHER OBJECTS (NOT INCLUDED IN (A) & (B) ABOVE): NIL**

IV.    The liability of the members is limited.

V.    (a)    The authorised capital of the Company is Rs 5,00,000/- (Rupees Five lakhs only) divided into 50,000 (fifty thousand) equity shares of Rs 10/- (Rupees Ten only) each.

(b)    The minimum paid-up capital of the Company shall be Rs. 1,00,000/- (Rupees One lakh only).

*************

9

We the several persons, whose names and addresses are subscribed hereunder, are desirous of being formed into a company in pursuance of this Memorandum of Association and we respectively agree to take the number of shares in the capital of the Company set opposite our respective names.

| No | Name, Address, Description And Occupation of Subscribers | Number of Shares agreed to be taken by each Subscriber | Signature of Subscribers | Signature, Name, Addresses, Description And Occupation of Witness |
|---|---|---|---|---|
| 1. | Uber International Holding B.V. Barbara Strozzilaan 201, 1083 HN Amsterdam, The Netherlands<br><br>Through Ryan Allan Graves S/o Eric Graves Authorised through Board Resolution dated 17 May 2013<br><br>Residing at 501, Octavia St. 11, San Francisco, California 94102-4329, USA<br><br>Occupation: Business | 45,000 (Forty five thousand) | Sd/- | Witness to Both the Subscribers: Phatchany Phanyanourong D/o Terry Phanyanourong Residing at: 1609, Franklin Street #4, San Francisco, CA 94109 Occupation: Secretary |
| 2. | Uber International B.V. Barbara Strozzilaan 201, 1083 HN Amsterdam, The Netherlands<br><br>Through Travis Cordell Kalanick Authorised through Board Resolution dated 17 May 2013<br><br>Residing at 3800, 16th St. 11, San Francisco, CA 94114, USA<br><br>Occupation: Business | 5,000 (Five thousand) | Sd/- | |
| | | 50,000 (Fifty thousand) | | |

Place: San Francisco, CA, USA
Dated: 03 July 2013

## THE COMPANIES ACT, 1956
## COMPANY LIMITED BY SHARES

## ARTICLES OF ASSOCIATION
## OF
## UBER INDIA SYSTEMS PRIVATE LIMITED

### I. Preliminary

1. Subject headings hereto shall not affect the construction hereof and in these presents, unless repugnant to the meaning or context thereof.

2. Unless repugnant to the context or meaning thereof, the following words shall have the respective meaning ascribed to them hereunder:

   (a) **"Act"** means the Companies Act, 1956 and statutory modifications thereof;

   (b) **"Articles"** means these articles of association of the Company, including the amendments made from time to time;

   (c) **"Board"** means the board of Directors of the Company;

   (d) **"Company"** means **Uber India Systems Private Limited**;

   (e) **"Director"** means any of the directors of the Company and includes persons occupying the position of a director in any other manner;

   (f) **"Electronic Mode"** means video conference facility i.e. audio-visual electronic communication facility employed which enables all persons participating in the meeting (Board and/or committee of Directors and/or general meeting) to communicate concurrently with each other without an intermediary and to participate effectively in the meeting (Board and/or committee of Directors and/or general meeting).

   (g) **"in writing"** or **"written"** means and includes words printed, lithographed, represented or reproduced in any mode or in any visible form;

   (h) **"Member"** means the registered holder of one or more shares;

   (i) **"Memorandum"** means the memorandum of association of the Company including the amendments made thereto from time to time;

   (j) **"Regulations"** means the regulations contained in Table A to the Act; and

   (k) **"Seal"** means the common seal of the Company.

   Words imparting **"singular"** shall include **"plural"** and vice versa, words imparting **"Masculine Gender"** shall include **"All other Genders"** and words imparting **"Persons"** shall include **"Bodies Corporate"**.

1

3.      Unless the context otherwise requires, words and expressions contained in these Articles shall bear the same meaning as in the Act or any statutory modification thereof in force at the date at which these Articles become binding on the Company.

4.      The Regulations contained in **Table "A"** in the First Schedule to the Act (hereinafter referred to as **Table "A"**), shall apply to the Company except in so far as otherwise expressly or by necessary implication excluded altered or modified herein below. In the event of any inconsistency between the provisions of Table A and these Articles of Association of the Company, as amended from time to time, the provisions of these Articles shall prevail.

## II. PRIVATE COMPANY

5.      The Company is a private limited company within the meaning of Section 3(1)(iii) of the Companies Act, 1956 and accordingly:

(a)  restricts  the right to transfer its shares, if any;

(b)  limits the number of its Members to 50 (fifty) not including-

(i)   persons who are in the employment of the Company; and

(ii)  persons who, having been formerly in the employment of the Company, were Members of the Company while in that employment and have continued to be Members after the employment ceased,

provided that where 2 (two) or more persons hold 1 (one) or more shares in a company jointly, they shall, for the purposes of this definition, be treated as a single Member;

(c)  prohibits any invitation to the public to subscribe for any shares in, or debentures of, the Company;

(d)  prohibits any invitation or acceptance of deposits from persons other than its Members, Directors or their relatives:

## III. SHARE CAPITAL

6.  (a)  The authorised share capital of the Company shall be as given in the Clause V of the Memorandum and as altered from time to time.

(b)  The minimum paid-up capital of the Company shall be Rs 1,00,000/- (Rupees One lakh only).

(c)  The Company in its general meeting may, from time to time by ordinary resolution, increase the authorised share capital of the Company by the creation of new shares, such increase to be of such aggregate amount and to be divided in to shares of such respective amounts as the resolution shall prescribe and attach thereto respectively such preferential, qualified or special rights, privileges and conditions in such manner as may be permitted for the time being.

## IV. SHARES

7. (a) The shares shall be under the control and disposal of the Board who may allot or otherwise dispose of the same to such persons and on such terms as the Board think fit and with full power to give to any person the option to call for any shares either at par or at a premium and for such consideration as the Directors think fit. The Directors shall, subject to the approval of the shareholders through an ordinary resolution at a general meeting, have the power, from time to time, to increase and to consolidate or divide the shares in the original or any additional capital into different classes and attach thereto at their discretion any preferential, deferred or other special rights, privileges, conditions or restrictions as to dividends, capital, voting or otherwise, as may be determined by or in accordance with the provisions hereof and to vary, modify or abrogate any such right, privilege, or condition, or restriction in such manner as may for the time being be permitted in accordance with the provisions hereto or the legislative provisions for the time being in force.

   (b) The allotments of shares shall be made by the Board at its meetings only by passing resolutions.

   (c) Fully paid up shares may also be allotted to minors through their guardian.

   (d) Notwithstanding anything contained in these Articles, subject to Section 77A, 77AA and 77B of the Act, the Board may, when and if thought fit buy back such of the Company's own shares or securities as it may think necessary, subject to such limits, upon such terms and conditions, and subject to such approvals, as may be permitted by law.

8. The Directors may also allot and issue shares in the capital of the Company, in full or part payment, for any property sold or transferred, goods or machineries supplied or for services rendered to the Company in or about the formation of the Company or in the conduct of its business and any such shares shall be issued as fully paid up.

9. If any shares stand in the name of 2 (two) or more persons the person first named in the Register of Members shall as regards receipt of dividend, bonus or service of notice and all or any other matters connected with the Company, except voting at meetings and the transfer of shares, be deemed the sole holder thereof but joint-holders of shares shall be severally as well as jointly liable for the payment of all installments and calls in respect of such shares and for all incidents thereof according to the Company's regulations.

10. Subject to the provisions of Section 80 of the Act, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the Company are liable, to be redeemed on such terms and in such manner as the Company before the issue of the shares may, by special resolution, determine.

11. The Company shall have the power to reduce the share capital in the manner provided in Section 100 to 105 of the Act or any statutory modifications thereof.

12. The Company shall have the power, subject to and in accordance with the provisions of Section 79A of the Act and other relevant regulations in this regard from time to time, to issue sweat equity shares to its employees and/or Directors on such terms and conditions and in such manner as may be prescribed by law from time to time.

## IV. CERTIFICATE OF SHARES

13.     Every person, whose name is entered as a Member in the Register of Members shall be entitled to receive within 3 (three) months after allotment or within 2 (two) months after the receipt of application for registration of transfer or within such other period as the condition of issue shall provide, 1 (one) certificate for all his shares with payment of the applicable stamp duty or any other amount as the Board may determine for every certificate after the first share certificate.

14.     The certificates of title to shares and duplicates thereof, where necessary, shall be issued under the Seal of the Company in accordance with the provisions of Section 84 of the Act and the rules thereunder.

15.     The certificate of shares registered in the names of 2 (two) or more persons shall, unless otherwise directed by them, be delivered to the person first named on the Register or Members.

16.     Save as herein otherwise provided, the Company shall be entitled to treat the registered holder of a share as the absolute owner thereof, and accordingly no person shall be recognized by the Company as holding any share upon trust and the Company shall not be bound by or recognise any equitable, contingent, future, or partial interest in any fractional part of a share or (except only as by the statute or under order of court) any other right in respect of any share except an absolute right to the entirely thereof as the registered holder.

17.     Subject to the Companies (Issue of Share Certificates) Rules, 1960, certificates of Shares shall be issued under the seal of the Company as signed by two Directors and Secretary or some other person appointed by the Board for the purpose. Every certificate of shares shall bear the name of the member and denote the number of shares in respect of which it is issued and amount paid thereon.

## V. CALLS ON SHARES

18.     The Directors may, from time to time make such calls as they think fit, upon the members in respect of all monies unpaid on their shares and subject to, if any, special terms upon which any shares may have been issued. All the calls shall be made on a uniform basis on shares falling under the same class.

19.     A call be deemed to have been made at the time when the resolution of Board authorising the call was passed and may be required to be paid by installments at the discretion of the Directors or on such subsequent date as shall be determined by the Directors.

## VI. TRANSFER AND TRANSMISSION OF SHARES

20.     The Company shall cause a Register of Members to be maintained in accordance with Section 150 of the Act with details of shares as required by law.

21. (a) A Member intending to sell any share or shares shall give notice of his intention to the Board, who shall offer any such shares to all the Members and may thereupon find 1 (one) or more Members willing to purchase the same. This shall be done within 1 (one) month of receipt of such notice.

     (b) In case there is more than 1 (one) purchaser, each shall be entitled to purchase the shares in proportion to their holding in the Company on the date of such notice.

4

(c)  The price payable for the purchase of shares, unless otherwise agreed, in such case shall be their fair value. This value will be determined by the Board.

(d)  In case the Directors fail to find a purchaser within the period specified in sub-clause (a) above, the Members intending to sell his/their shares shall, at any time within 3 (three) months afterwards, be at liberty to do so on such price as he/they consider proper and the Directors shall, subject to their right to decline such registration under Section 111 of the Act, register transfer of such shares.

(e)  The right of pre-emption set out in clauses (a) to (d) of this Article shall not be enforced in case of transmission or transfer of shares from any Member of the Company to another Member or to a Member's spouse or child or children or his/her legal heirs.

22.  (a)  Any person becoming entitled to any share as a consequence of the death, lunacy, bankruptcy or insolvency of any shareholder or by any lawful means other than by a transfer in accordance with these presents, may, with the consent of the Directors (which they shall not be under any obligation to give) upon producing such evidence in respect his/her/its title as the Directors may require, either be registered as a shareholder in respect of such shares or may, subject to the regulations relating to transfer of shares contained in these presents, transfer such shares to some other person.

(b)  Every transmission of a share shall be verified in such manner as the Directors may require and the Company may refuse to register any transmission until such verification is complete or until or unless an indemnity be given to the Company with regard to such registration, which the Directors, at their discretion, shall consider sufficient, provided nevertheless that there shall not be any obligation on the Company or the Directors to register any transmission upon an indemnity as aforesaid being provided.

(c)  A fee not exceeding the prescribed amount may be charged in respect of the transfer or transmission to the same party for any number of shares of any class or denomination subject to such maximum on any one transfer or transmission as may from time to time be fixed by the Directors. Such maximum may be a single fee payable on any one transfer or on transmission of any number of shares of one class or denomination or may be on a scale varying with the number of shares of any one class comprised in one transfer or transmission or may be fixed in any other manner as the Directors may at their discretion determine. The Directors in their absolute discretion may reduce or waive any fee payable.

23.  (a)  An application for the registration of the transfer of shares may be made either by the transferor or the transferee.

(b)  For the purpose of sub-clause (a) of this Article, notice to the transferee shall be deemed to have been duly given if sent by prepaid post to the transferee at the address given in the instrument of transfer and shall be deemed to have been delivered in the ordinary course of post.

(c)  It shall not be lawful for the Company to register a transfer of any shares unless a proper instrument of transfer has been duly stamped and executed by the transferor and/or the transferee, as required by the Board and has been delivered to the Company along with the share certificates, provided that upon proof to the satisfaction of the Board of the Company of the instrument of transfer being signed by the transferee and bearing the stamp required by an

5

instrument of transfer, the Board may register the transfer on such terms as to indemnity and/or otherwise as the Board may think fit.

(d) If the Company refuses to register the transfer of any shares, the Company shall within 2 (two) months from the date on which the instrument of transfer was lodged with the Company send to the transferee and the transferor notice of such refusal.

(e) Nothing in clause (c) of this Article shall prejudice the power of the Company to register as a shareholder any person to whom the right to any share has been transmitted by the operation of any law.

(f) Nothing in this Article shall prejudice any power of the Company to refuse to register the transfer of any shares. The instrument of transfer shall, after registration, be retained by the Company and shall remain in its custody. All instruments of transfer which the Board has declined to register shall, on demand, be returned to the persons depositing such instruments.

24.     No person shall exercise any rights or privileges of shareholders until such person shall have paid all sums (whether in respect of call or otherwise) for the time being due in respect of the shares held by him or due in any manner whatsoever to the Company.

25.     The provisions of these Articles shall *mutatis mutandis* apply to the transfer of or the transmission by operation of law of, the right to the debentures of the Company.

26.     The Company shall incur no liability or responsibility whatsoever in consequence of its registering or giving effect to any transfer of shares made or purported to be made by any apparent legal owner thereof (as shown or appearing on the Register of Members) to the prejudice of persons having or claiming any equitable right, title or interest to or in the same shares notwithstanding that the Company may have had notice of such equitable right, title or interest, or notice prohibiting registration of such transfer and may have entered such notice or referred thereto in any book of the Company and the Company shall not be bound or required to attend or give effect to any such notice which may be given to it by any equitable right, title or interest, or be under any liability whatsoever for refusing or neglecting to do so, though it may have been entered or referred to in some book of the Company; but the Company shall nevertheless be at liberty to regard and attend to any such notice and give effect thereto if the Board shall so think fit.

**VII. GENERAL MEETINGS**

27. (a) The Company shall hold every year an Annual General Meeting in accordance with Section 166 and Section 210 of the Act.

(b) The Board shall convene a general meeting of the Company by giving not less than 7 (seven) days' notice in writing.

(c) The quorum for the general meeting of the Company shall be 2 (two) Members present in person.

(d) Section 173 of the Act shall not apply to the Company in respect of a general meeting of the Company.

(e) A Member of the Company entitled to attend and vote at any general meeting of the Company shall be entitled to appoint another person, who need not be a Member of the Company, as his proxy to attend and vote in his place.

(f) The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed or notarially certified copy of that power or authority, shall be deposited at the registered office of the Company not less than 48 (forty eight) hours before the time for holding the meeting or adjourned meeting of the Company at which the person named in the instrument proposes to vote, or, in the case of a poll, not less than 24 (twenty four) hours before the time appointed for the taking of the poll; and in default the instrument of proxy shall not be treated as valid.

(g) An instrument appointing a proxy shall be in either of the forms in Schedule IX of the Act or a form as near thereto as circumstances admit.

(h) A vote given in accordance with the terms of an instrument of proxy shall be valid, notwithstanding the previous death or insanity of the principal or the revocation of the proxy or of the authority under which the proxy was executed, or the transfer of the shares in respect of which the proxy is given:

Provided that no intimation in writing of such death, insanity, revocation or transfer shall have been received by the Company at its office before the commencement of the meeting or adjourned meeting of the Company at which the proxy is used.

(i) The chairman of the Board shall be chairman of the general meetings of the Company. In case of equality of votes, whether on a show of hands or a poll, the chairman of the meeting of the Company at which the show of hands takes place or at which the poll is demanded, shall be entitled to a second or casting vote.

(j) No Member shall exercise any voting rights in respect of any shares registered in his name on which any calls or other sums presently payable by him have not been paid or in regard to which the Company has exercised any right  or lien.

(k) Members may participate in a general meeting of the Company under the provisions of the Act through electronic mode. The notice of the meeting of the Company must inform the Members regarding availability of participation through video conference, and provide necessary information to enable shareholders to access the available facility of videoconferencing.

(l) In a general meeting of the Company, where Members are allowed to participate through electronic mode, the quorum as required under Section 174 of the Act as well as chairman of the meeting shall have to be physically present at the place of meeting.

**VIII. DIRECTORS**

28. (a) The business of the Company shall be managed by the Directors who may exercise all such powers of the Company as are not restricted by the Act or any statutory modification thereof for the time being in force or by these Articles.

(b) The number of Directors shall not be less than 2 (two) and not more than 12 (twelve).

(c) The Directors shall not be required to hold any qualification shares in the Company.

(d)  The following shall be the first Directors of the Company.

    1.  Mr Ryan Allan Graves

    2.  Mr Travis Cordell Kalanick

(e)  Subject to the provisions of the Act, if any Director, being willing, shall be called upon to perform extra services for the purposes of the Company and the Company shall remunerate such Director by such fixed sum or percentage of profits or otherwise as be determined by the Directors and such remuneration may be either in addition to or in substitution for any other remuneration to which he may be entitled.

(f)  Subject to provisions of Section 313 of the Act, the Board may appoint any person to act as an alternate Director for a Director and such appointee, whilst he holds office as an alternate Director, shall be entitled to notice of meetings of the Board and to attend and vote thereat accordingly, but he shall *ipso facto* vacate office if and when the absentee Director returns.

(g)  Subject to Section 260 of the Act, the Board shall have power at any time, and from time to time, to appoint a person as an additional Director, provided the number of Directors and additional Directors together shall not at any time exceed the maximum strength fixed for the Board by these Articles.

(h)  The Board may, subject to the Act, appoint 1 (one) or more of the Directors' to the office of managing Director, joint managing Director or whole-time Director or executive Director for such period of time as it may deem fit. The Board may also fix the remuneration payable to them and such other terms and conditions as it think fit. Such appointees shall not, while holding such office, be subject to retirement by rotation at the annual general meetings of the Company.

(i)  The managing Director, joint managing Director or whole-time Director or executive Director shall, subject to the superintendence, control and direction of the Board, exercise all the powers exercisable by them, within the provisions of the Act.

(j)  The Directors shall not retire by rotation.

(k)  The Director shall respectively cause minutes of all proceedings of general meetings of the Company and of all proceedings at meetings of the Board or of committees of the Board to be duly entered in the book to be maintained for that purpose in accordance with Section 193 of the Act.

(l)  The Company may by ordinary resolution, of which special notice has been given in accordance with the provisions of Section 190 of the Act, remove any Director including the managing Director, if any, before the expiration of the period of his office, notwithstanding anything contained in these Articles or in any agreement between the Company and such Director.

(m)  If the Director appointed by the Company in general meeting, vacates office as a Director before his term of office expires in the normal course, the resulting casual vacancy may be filled up by the Board at a meeting of the Board, but any person so appointed shall retain his office so long only as the vacating Director would have retained the same if vacancy had not occurred, provided that the Board may not fill such a vacancy by appointing thereto any person who has been removed from the office of Director under Article 28(l) above.

(n) Section 283 of the Act shall apply regarding the vacation of office by Director. A Director shall also be entitled to resign from the office of Directors from such date as he may specify while so resigning.

(o) The Board may, subject to the provision of the Act, from time to time delegate any of their powers to committee consisting of such member or members as they think fit and may from time to time revoke such delegation. Any committee so formed shall in the exercise of the powers so delegated, conform to any regulation that may from time to time be imposed upon it by the Directors.

(p) The meeting and proceedings of any such committee of the Board consisting of 2 (two) or more members shall be governed by the provisions herein contained.

### IX. PROCEEDINGS OF THE BOARD

29. (a) The quorum necessary for the transaction of the business of Directors shall be a minimum of 2 (two) Directors or $1/3^{rd}$ (one third) of the total number of Directors, whichever is higher, subject to Section 287 of the Act.

(b) Subject to Section 285 of the Act, a meeting of the Board shall be held at least once in every 3 (three) months and at least 4 (four) such meetings shall be held in each calendar year. The Directors may meet together for the discharge of the business, adjourn and otherwise regulate their meetings and proceedings as they think fit. Subject to the provisions of the Act, the Directors may participate in a meeting of the Board/committee of Directors through Electronic Mode. Provided, every Director shall attend the meeting of the Board/committee of Directors personally at least one meeting a financial year of the Company.

(c) Notice of every meeting of the Board shall be given in writing to every Director for the time being in India and at his usual address in India to every other Director. The notice of the meeting must inform the Directors regarding availability of participation through video conference, and provide necessary information to enable directors to access the available facility of videoconferencing. The notice of the meeting shall also seek confirmation from the Director as to whether he/she will attend the meeting physically or through Electronic Mode and shall also contact the contact number(s)/email addresses of the secretary/designated officer to whom the Director shall confirm in this regard. In the absence of any confirmation from the Director, it will be presumed that he/she will physically attend the Board meeting.

(d) Subject to Section 289 of the Act, no resolution shall be deemed to have been duly passed by the Board or by a committee thereof by circulation, unless the resolution has been circulated in draft, together with the necessary papers, if any, to all the Directors or to all the Members of the committee and has been approved by majority of such of them as are entitled to vote on the resolution.

(e) All acts done by a Director shall be valid, notwithstanding that it may be afterwards discovered that his appointment was invalid by reason of any defect or disqualification or had terminated by virtue of any provisions contained in the Act or in these Articles. Provided that this Article shall not give validity to acts done by a Director after his appointment has been shown to the Company to be invalid or to have terminated.

(f)  The Directors shall receive out of the funds of the Company a sum as the Board may from time to time determine for every meeting attended by him. The Directors shall also be entitled to be paid traveling, hotel and other reasonable expense incurred in connection with their attendance at Board meetings or any committee thereof or otherwise in the execution of their duties as Directors.

## X. SEAL

30.  The Board shall provide for the safe custody of the Common Seal. The Common Seal shall not be affixed to any instrument except by the authority of the Board and in the presence of at least one of the Directors who shall sign every instrument to which the seal of the Company shall be so affixed, subject to Article 17 thereof.

## XI. CAPITALISATION

31.  Subject to the provisions of the Act:

(a)  The Company may, at any general meeting, resolve that any moneys, investments or other assets forming part of the undivided profits of the Company (including profits or surplus moneys arising from realization of any capital assets of the Company) standing to the credit of the reserve fund or any other fund of the Company or in the hands of the Company and available for dividend or representing the premiums received on the issue of shares, and standing to the credit of the share premium account of the Company be capitalized in accordance with the provisions of the Act by distribution by way of dividend, or as permitted by law, among the holders of the shares of the Company or any of them on the footing that they become entitled thereto as capital in accordance with the respective rights and interests and in proportion to the amount paid or credited as paid thereon, of paid up shares, debentures or debenture stock, bonds or other obligations of the Company.

(b)  For the purpose of giving effect to any such resolution the Directors may settle any difficulty which may arise in regard to the distribution or payment as aforesaid as they think expedient and in particular they may issue fractional certificates and generally may make such arrangement for the acceptance, allotment and sale of such shares, debentures, debenture-stock bonds or other obligations and fractional certificates or otherwise as they may think fit and may make cash payments to any holders of shares on the footing of the value so fixed in order to adjust rights and may vest any shares, debentures, debenture-stock, bonds or other obligations in trustees upon such trusts for adjusting such rights as may seem expedient to the Directors. When deemed requisite, a proper contract shall be filed with the authorities in accordance with the Act and the Board may appoint any person to sign such contract on behalf of the holders of the shares of the Company which have been issued prior to such capitalization and such appointment shall be effective.

## XII. SECRECY

32.  Subject to the provisions of the Act, every manager, auditor, trustee, Member of committee, officers, servant, agent, accountant or other person employed in the business of the Company shall, if so required by the Board, before entering upon his duties, sign a declaration pledging himself to observe strict secrecy respecting all transactions of the Company with its customers and the state of account with individuals and in matters relating thereto and shall by such declaration pledge himself not to reveal any of the matters which may come to his knowledge in

the discharge of his duties except when required to do so by the Directors or by any general meeting or by the law of country and except so far as may be necessary in order to comply with any of the provisions of these presents and the provisions of the Act.

### XIII. BORROWING POWERS

33.   Subject to Section 58A and Section 292 of the Act and regulations made there under and directions issued by the Reserve Bank of India, the Directors shall have the power, from time to time and at their discretion, to borrow, raise or secure the payment of any sum of money for the purpose of the Company in such manner and upon such terms and conditions in all respects as they think fit and in particular by the issue of debenture or bonds of the Company or by mortgage or charge upon all or any of the properties of the Company both present and future including its uncalled capital for the time being.

### XIV. OPERATION OF BANK ACCOUNT

34.   The Directors shall have the power to open bank accounts, to sign cheques on behalf of the Company and to operate all bank accounts of the Company and to receive payments, make endorsements, draw and accept negotiable instruments, hundies and bills or may authorise any other person or persons to exercise such powers.

### XV. BALANCE SHEET AND PROFIT AND LOSS ACCOUNT

35.   The Directors shall lay before each annual general meeting of the Company, the profit and loss account for the financial year of the Company and balance sheet made up to the end of the financial year only and audited by a qualified auditor under the provisions of the Act.

### XVI. AUDIT

36. (a) The first auditor of the Company shall be appointed by the Board within 1 (one) month from the date of incorporation of the Company and the auditors so appointed shall hold office until the conclusion of the first annual general meeting.

   (b) At each annual general meeting, the Company shall appoint an auditor to hold office from the conclusion of that meeting until the conclusion of the next annual general meeting.

   (c) The remuneration of the auditor may be fixed by the Company in the general meeting or in such manner as the Company in the general meeting may determine. In case of an auditor appointed by the Board his remuneration shall be fixed by the Board.

   (d) The Board may fill any casual vacancy in the office of the auditors.

### XVII. INDEMNITY

37.   Subject to the provisions of and so far as may be permitted by law, every Director, auditor, company secretary or other officer of the Company shall be entitled to be indemnified by the Company against all costs, charges, losses, expenses and liabilities incurred by him or her in the execution and discharge of his duties or in relation thereto including any liability incurred by him in defending any proceedings, civil or criminal, which relate to anything done or omitted or alleged to have been done or omitted by him as Director, auditor, company secretary or officer of the Company in which he is not found guilty of any negligence, default, breach of duty

11

misfeasance or breach of trust or in which he is acquitted or in connection with any statute for relief from liability in respect of any such act or omission in which relief is granted to him by a court of competent jurisdiction.

## XVIII. WINDING UP

38.   The Company shall be wound up and the assets available for distribution among the Members as such be insufficient to repay whole of the paid up capital, such assets shall be distributed so that as nearly as may be the losses shall be borne by the Members in proportion to the capital paid up or which ought to have been paid at the commencement of the winding up on the share held by them respectively. And if in a winding up, the assets available for distribution among the Members are more than sufficient to repay the whole of the capital paid up at the time of commencement of winding up, the excess shall be distributed amongst the Members in proportion to the paid up capital at the time of commencement of the winding up or which ought to have been paid upon the shares held by them respectively. This Article is to be without prejudice to the rights of the holders of shares issued upon special terms and conditions.

We, the several persons, whose names, and addresses and descriptions are hereunder subscribed, are desirous of being formed into a Company, in pursuance of these **Articles of Association**:

| Name, Address,  Description And Occupation of Subscribers | Signature of Subscribers | Signature, Name, Addresses, Description  And  Occupation of Witness |
|---|---|---|
| (1) Uber International Holding B.V.<br>    Barbara Strozzilaan 201,<br>    1083 HN Amsterdam,<br>    The Netherlands<br><br>Through Ryan Allan Graves<br>S/o Eric Graves<br>Authorised through Board Resolution<br>dated 17 May 2013<br><br>Residing at<br>501, Octavia St. 11, San Francisco,<br>California 94102-4329, USA<br><br>Occupation: Business | Sd/- | Witness to Both the Subscribers: Phatchany Phanyanourong<br>D/o Terry Phanyanourong<br>Residing at:  1609, Franklin Street #4,<br>San Francisco, CA  94109<br>Occupation:  Secretary |
| (2) Uber International B.V.<br>    Barbara Strozzilaan 201,<br>    1083 HN Amsterdam,<br>    The Netherlands<br><br>Through Travis Cordell Kalanick<br>S/o Donald Kalanick<br>Authorised through Board Resolution<br>dated 17 May 2013<br><br>Residing at<br>3800, 16th  St. 11, San Francisco,<br>CA  94114, USA<br><br>Occupation: Business | Sd/- | |

Place:  San Francisco, CA, USA
Dated: 03 July 2013

13